Joshua Prince, Esq.
Attorney Id. No. 306521
Civil Rights Defense Firm, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(888) 202-9297 ext 81114
(610) 400-8439 (f)
Joshua@CivilRightsDefenseFirm.com

Adam Kraut, Esq.
Attorney Id. No. 318482
Firearms Policy Coalition
1215 K Street, 17th Floor
Sacramento, CA 95814
(916) 476-2342
Akraut@fpclaw.org

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIO SUAREZ;** | : | Civil Rights Complaint |
| **DANIEL R. BINDERUP;** | : | 42 U.S.C. § 1983 |
| **DANIEL F. MILLER;** | : | |
| **FIREARMS POLICY** | : | Civil Action No. _____ |
| **COALITION, INC.; and,** | : | |
| **SECOND AMENDMENT** | : | |
| **FOUNDATION,** | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| **v.** | : | |
| | : | |
| **COL. ROBERT EVANCHICK,** | : | |
| Commissioner of Pennsylvania | : | |
| State Police | : | |
| Defendant | : | |

## COMPLAINT

COME NOW Plaintiffs Julio Suarez, Daniel Binderup, Daniel Miller, Firearms Policy Coalition, Inc., and Second Amendment Foundation, on behalf of themselves and those similarly situated, by and through their attorneys, Joshua Prince of Civil Rights Defense Firm, P.C., and Adam Kraut of Firearms Policy Coalition, and complain of Defendant Robert Evanchick as follows:

## INTRODUCTION

1.  The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. CONST. AMEND. II. When the People, by enacting that amendment, enshrined in their Nation's fundamental charter the right to "carry weapons in case of confrontation" for the "core lawful purpose of self-defense," *District of Columbia v. Heller*, 554 U.S. 570, 592, 630 (2008), they did not mean to leave the freedom to exercise that right at the mercy of the very government officials whose hands they sought to bind. No, "[t]he very enumeration of the right takes out of the hands of government . . . the power to

decide on a case-by-case basis whether the right is *really worth* insisting upon." *Id*.

2.  In *Heller*, the U.S. Supreme Court held that to "bear arms" includes the "carry [of a firearm] ... in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person." 554 U.S. at 584.

3.  Plaintiffs Julio Suarez, Daniel R. Binderup, Daniel Miller, and the similarly situated members of Plaintiffs Firearms Policy Coalition, Inc., and Second Amendment Foundation, have a fundamental, constitutionally guaranteed right to carry loaded, operable firearms on their person, outside their homes, while in public and in motor vehicles, for lawful purposes including immediate self-defense.

4.  Plaintiffs wish to exercise their fundamental, constitutionally guaranteed right to carry loaded and unloaded, operable firearms on their person, outside their homes, while in public and in motor vehicles, for lawful purposes including immediate self-defense. But because of the Defendant's laws and policies they have been and continue to actively enforce today, they cannot.

5.    The Commonwealth of Pennsylvania generally bars the transportation and carrying of loaded firearms by ordinary citizens in public for self-defense unless they first acquire a license to carry a firearm under 18 Pa.C.S. § 6109 ("LTCF"). 18 Pa.C.S. § 6106.

6.    That is especially so during declared states of emergency, when the Commonwealth further prohibits all carry of firearms in public unless a person has a valid LTCF. 18 Pa.C.S. § 6107. Because of three declarations of emergency by Governor Tom Wolf, Pennsylvania has been in a state of emergency since 2018.

7.    And because Governor Wolf vetoed an act passed by the Commonwealth's Legislature, House Bill 1747 ("HB 1747"), that would have lifted the carry ban under Section 6107, despite an express opportunity to change the State's policy in this limited regard, the Commonwealth's state-of-emergency-based ban on firearms is firmly fixed into the regulatory scheme.

8.    Unless a law-abiding person has a valid LTCF, he or she is further specifically prohibited from carrying firearms in the City of Philadelphia ("Philadelphia") under State law. 18 Pa.C.S. § 6108.

9.     State and local governments, whether legislatively or by executive decree, cannot simply suspend the Constitution. Authorities may not, by decree or otherwise, enact and/or enforce a suspension or deprivation of constitutional liberties.

10.    Adding further insult to constitutional injury, should an unlicensed person be convicted for exercising his rights by carrying a handgun in public, he would lose his Second Amendment rights under federal law.

11.    Indeed, Defendant's laws, regulations, policies, and enforcement practices individually and collectively prevent law-abiding adults like Plaintiffs from exercising their fundamental, individual right to bear loaded, operable handguns outside the home through oppressive criminal statutes combined with a licensing system that is both required and closed to Plaintiffs and adults like them.

12.    Defendant's laws, regulations, policies, and enforcement practices thus violate the right to keep and bear arms expressly protected under the Second and Fourteenth Amendments to the United States Constitution.

## PARTIES

13.   Plaintiff Julio Suarez ("Mr. Suarez") is a natural person, over the age of twenty-one, a citizen of Spring Grove, Pennsylvania and the United States, and a member of Firearms Policy Coalition and the Second Amendment Foundation.

14.   Plaintiff Daniel Binderup ("Mr. Binderup") is a natural person, over the age of twenty-one, a citizen of Manheim, Pennsylvania and the United States, and a member of Firearms Policy Coalition and the Second Amendment Foundation.

15.   Plaintiff Daniel Miller ("Mr. Miller") is a natural person, over the age of twenty-one, a citizen of Bristol, Pennsylvania and the United States, and a member of Firearms Policy Coalition and the Second Amendment Foundation.

16.   Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a 501(c)(4) non-profit organization incorporated under the laws of Delaware, with a place of business in Sacramento, California. The purposes of FPC include defending and promoting the People's rights—especially the fundamental, individual Second Amendment right to keep and bear arms—advancing individual liberty, and

restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC's members reside both within and outside Pennsylvania. FPC represents its members and supporters—who include gun owners, prospective gun owners, licensed firearm retailers, and others— and brings this action on behalf of itself, its members, including the named Plaintiffs herein, and supporters who possess all the indicia of membership. FPC's members have been adversely and directly harmed by Defendant's enforcement of the laws, regulations, policies, practices, and customs challenged herein. Because of Defendant's enforcement of the laws, regulations, policies, practices, and customs challenged herein, FPC has and continues to suffer a diversion of resources to identify and/or counteract the unlawful actions, as well as a frustration of the organization's mission.

17.     Plaintiff Second Amendment Foundation ("SAF") is a nonprofit educational foundation incorporated in 1974 under the laws of Washington with its principal place of business in Bellevue,

Washington. SAF is a 501(c)3 under Title 26 of the United States Code. SAF's mission is to preserve the individual constitutional right to keep and bear arms through public education, judicial, historical and economic research, publishing, and legal action programs focused on the civil right guaranteed by the Second Amendment to the U.S. Constitution. SAF has members and supporters nationwide, including in Pennsylvania. SAF brings this action on behalf of itself, its members, and supporters who possess all the indicia of membership, who seek to exercise their right to carry loaded firearms outside their homes for self-defense in case of confrontation. SAF has been adversely and directly harmed in having expended and diverted organizational resources to defend the fundamental rights of its members and supporters, against Defendant's laws, policies, and enforcement practices, including through this action.

18. Defendant Colonel Robert Evanchick ("Evanchick") is the head and Commissioner of the Pennsylvania State Police ("PSP"). As Commissioner of the PSP, Defendant Evanchick, in addition to being responsible for assisting the Pennsylvania Governor in

enforcing the laws of the Commonwealth of Pennsylvania, is responsible for the implementation, execution, and administration of the laws, regulations, customs, practices, and policies of the PSP and the Commonwealth, inter alia, in relation to the Uniform Firearms Act, 18 Pa.C.S. § 6101, et seq., and the Pennsylvania Instant Check System ("PICS"). As Commissioner of the PSP, Defendant Evanchick is presently enforcing the Commonwealth's laws, regulations, customs, practices, and policies complained of in this action, including the Commonwealth's laws on the keeping and bearing of firearms especially, but not limited to, in public places and on public roads and in other public places. Defendant Evanchick is sued in his official capacity.

## JURISDICTION AND VENUE

19.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, which confer original jurisdiction on federal district courts to hear suits alleging the violation of rights and privileges under the United States Constitution.

20.  This action for violation of Plaintiffs' constitutional rights is brought under 42 U.S.C. § 1983 and seeks declaratory and

injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, as well as attorneys' fees pursuant to 42 U.S.C. § 1988.

21.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as Defendant and his PSP are headquartered in Harrisburg, Pennsylvania, and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in the Middle District of Pennsylvania.

## STATEMENT OF FACTS

### *The Commonwealth's Unconstitutional Regulatory Scheme*

22.  The foregoing paragraphs are incorporated herein as if set forth in full.

23.  The Commonwealth of Pennsylvania generally allows individuals to openly carry firearms[1] without a license. But Pennsylvania has broadly criminalized the carrying of loaded concealed firearms in

---

[1] Under the Uniform Firearms Act ("UFA"), the term "firearm" is generally defined to mean "[a]ny pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. The barrel length of a firearm shall be determined by measuring from the muzzle of the barrel to the face of the closed action, bolt or cylinder, whichever is applicable." 18 Pa.C.S. § 6102.

public and in motor vehicles by ordinary citizens unless they have a valid LTCF under 18 Pa.C.S. § 6109.

24.   LTCFs are issued "for the purpose of carrying a firearm concealed on or about one's person or in a vehicle throughout [the] Commonwealth."

25.   Except as provided in 18 Pa.C.S. § 6106(a)(2), "any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree." 18 Pa.C.S. § 6106(a)(1).

26.   "A person who is otherwise eligible to possess a valid license under this chapter but carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license and has not committed any other criminal violation commits a misdemeanor of the first degree." 18 Pa.C.S. § 6106(a)(2).

27.   Pennsylvania further prohibits the "carry[ing of] a firearm upon the public streets or upon any public property during an emergency proclaimed by a State or municipal governmental executive" unless they possess a valid LTCF. 18 Pa.C.S. § 6107.[2]

28.   Pennsylvania has been under a constant state of emergency, proclaimed by Governor Tom Wolf, since January 10, 2018.[3]

29.   Pennsylvania has been under an additional state of emergency, proclaimed by Governor Wolf, related to COVID-19 since March 6, 2020.[4]

30.   Because of those proclamations by Governor Wolf, 18 Pa.C.S. § 6107 additionally and currently restricts the Plaintiffs, and all those similarly situated, from transporting or carrying firearms in

---

[2] 18 Pa.C.S. § 6107 further provides that the term "firearm" "includes any weapon that is designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any weapon," a substantially broader definition than that found in 18 Pa.C.S. § 6102.

[3] *See* https://www.governor.pa.gov/newsroom/governor-wolf-declares-heroin-and-opioid-epidemic-a-statewide-disaster-emergency and https://www.governor.pa.gov/newsroom/gov-wolf-signs-8th-opioid-disaster-declaration-renewal-vows-continued-concerted-efforts.

[4] *See* https://www.governor.pa.gov/newsroom/gov-wolf-signs-covid-19-disaster-declaration-to-provide-increased-support-for-state-response.

public, and upon public streets and public property, even for lawful purposes, including self-defense.

31.   Governor Wolf vetoed an act passed by the Commonwealth's Legislature, House Bill 1747,[5] that would have lifted the carry ban under Section 6107.

32.   Moreover, the State's statutes further provide that: "No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless: (1)  such person is licensed to carry a firearm; or (2)  such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license)." 18 Pa.C.S. § 6108.

33.   The City of Philadelphia is the only "city of the first class," 53 P.S. § 101 (defining city of the first class to be those which contain a population of one million or more), with a population of approximately ~1,584,000 in 2010.[6]

---

[5] The text of House Bill 1747 is online at https://bit.ly/pa-hb1747. Gov. Wolf's veto message is online at https://bit.ly/pa-hb1747-veto.
[6] U.S. Census Bureau QuickFacts for Philadelphia, Pennsylvania, online at https://www.census.gov/quickfacts/philadelphiacitypennsylvania.

34.     Arrest and prosecution for unlawfully carrying a firearm under the Commonwealth's statutes could result in serious penalties, including one's imprisonment, loss of liberty, fines, and losing Second Amendment rights for life.[7]

35.     Thus, law-abiding individuals like Plaintiffs, Plaintiff FPC's and SAF's similarly situated members and supporters, and other law-abiding, typical adults can only transport and carry loaded firearms in the Commonwealth and City of Philadelphia if they have a LTCF.

---

[7] *See* 18 Pa.C.S. §§ 6106(a)(1) (making it a felony of the third degree for an individual to carry a firearm concealed on or about his person, except in his place of abode or fixed place of business without a LTCF) and 6106(a)(2) (grading the same offense as a misdemeanor of the first degree if the individual is eligible to receive a LTCF and has not committed any other criminal violations). *See also* 18 Pa.C.S. § 106(b)(6) (classifying a misdemeanor of the first degree as punishable by a term of imprisonment "of which is not more than five years"), 18 U.S.C. § 921(a)(20) (defining "crime punishable by imprisonment for a term exceeding one year" to include a state law misdemeanor punishable by *more than* two years imprisonment), and 18 U.S.C. § 922(g)(1) (making it unlawful for anyone convicted of a crime punishable for a term exceeding one year to possess firearms or ammunition). A violation of 18 Pa.C.S. §§ 6107 and 6108, pursuant to 18 Pa.C.S. § 6119, is a misdemeanor of the first degree, for which a conviction would prohibit the Plaintiffs, and those similarly situated, from being able to purchase, possess, and utilize firearms and ammunition, pursuant to 18 U.S.C. § 922(g)(1).

36.    The Commonwealth has laws restricting access to and possession of firearms by prohibited persons it could enforce with respect to specific proscribed conduct. *See generally* 18 Pa.C.S. § 6105.

### *Plaintiff Suarez*

37.    Plaintiff Suarez:

    a.    Is a United States citizen;

    b.    Is over the age of 21;

    c.    Is not under indictment;

    d.    Has never been convicted of a felony or misdemeanor crime of domestic violence;

    e.    Has only once been convicted of a crime punishable by more than one (1) year;

    f.    Is not a fugitive from justice;

    g.    Is not an unlawful user of, or addicted to, any controlled substance;

    h.    Has not been adjudicated a mental defective or been committed to a mental institution;

    i.    Has not been discharged from the Armed Forces under dishonorable conditions;

j.   Has never renounced his citizenship; and,

k.   Is not the subject of a restraining order relating to an intimate partner.

38.   In 1990, Plaintiff Suarez was convicted of a violation of Md. Ann. Code art.27 § 36B(b) (1990)[8] ("Section 36B(b)") for carrying a handgun without a license, for which he received one-year probation, as well as 180 days imprisonment and a $500 fine, both suspended. *See Binderup*, 836 F.3d at 340.

39.   A violation of Section 36B(b) was a misdemeanor punishable by up to three years imprisonment, which triggered the prohibition of 18 U.S.C. § 922(g)(1), which prohibits an individual from purchasing and possessing firearms and ammunition, if the individual has "has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year."

40.   Plaintiff Suarez was also convicted of a misdemeanor crime of driving under the influence in Maryland state court.[9]

---

[8] Md. Ann. Code art.27 § 36B(b) is now codified without substantive change at Md. Code Ann., Crim. Law § 4-203.

[9] This conviction did not trigger the prohibition found in 18 U.S.C. § 922(g)(1). *See* Binderup, 836 F.3d at 340. ("Eight years later, he was convicted again in a Maryland state court, this time for the state-law

41.   Plaintiff Suarez has never been charged with nor convicted of any other misdemeanor or felony offense. *See*, Exhibit A.

42.   Furthermore, 18 Pa.C.S. § 6105(b) prohibits an individual from purchasing and possessing firearms in the Commonwealth, if the individual has been convicted of certain specific offenses.

43.   In relation to the state law prohibition, on August 31, 2009, pursuant to 18 Pa.C.S. § 6105(d), Judge John Kuhn, President Judge of the Court of Common Pleas of Adams County, Pennsylvania, granted Plaintiff Suarez's petition for relief; thereby, restoring Plaintiff Suarez's rights, under the laws of the Commonwealth, to "possess, use, control, sell, transfer or manufacture" firearms. A copy of the August 31, 2009 Order is attached hereto and incorporated herein as Exhibit B.

44.   As the Court of Common Pleas of Adams County lacked the authority to relieve Plaintiff Suarez's disability pursuant to 18 U.S.C. § 922(g)(1), Plaintiff Suarez brought a Second Amendment challenge, where on February 18, 2015, U.S. District Court Judge

_____

misdemeanor of driving under the influence of alcohol. Only the first of the convictions was subject to § 922(g)(1).").

William W. Caldwell sustained, in part, Plaintiff Suarez's challenge[10] (*Suarez v. Holder*, 255 F.Supp.3d 573, (M.D. Pa. 2015)), finding that it was unconstitutional to deny him, in perpetuity, his right to keep and bear arms as a result of being convicted of a crime punishable by more than one year, which was thereafter affirmed by the en banc Third Circuit in *Binderup*, 836 F.3d at 356-57.

45. Plaintiff Suarez lawfully owns and possesses rifles, shotguns, and handguns.

46. In November of 2017, concerned for his and his family's safety and desiring to be able to protect himself and his family by lawfully carrying a firearm for self-defense and desiring to be able to lawfully transport firearms beyond the limitations contained in 18 Pa.C.S. §§ 6106 – 6108 Plaintiff Suarez attempted to obtain a license to carry firearms and was denied.

47. As Plaintiff Suarez was unaware of any putative disability, he filed a Pennsylvania Instant Check System Challenge Form, to which it is believed the Pennsylvania State Police responded on or

---

[10] This Court granted the Defendants' motion to dismiss with respect to Count One of the complaint.

about November, 2017, stating that he was denied, for his 1990 conviction for "handgun on person: carry/wear" in the State of Maryland under 18 Pa.C.S. § 6109(e).[11] A copy of the January 29, 2018 letter from PSP upholding its initial denial is attached hereto and incorporated herein as Exhibit C.

48.   The pertinent statutory text of 18 Pa.C.S. § 6109(e)(1)(viii) is virtually verbatim the statutory text of 18 U.S.C. § 922(g)(1), which the Third Circuit has already held was unconstitutional as applied to Plaintiff Suarez. *Cf.* 18 Pa.C.S. § 6109(e)(1)(viii) declaring that an individual is prohibited, where the individual "has been convicted of a crime punishable by imprisonment for a term exceeding one year" with 18 U.S.C. § 922(g)(1), declaring that an individual is prohibited, where the individual "has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year."

49.   It is Plaintiff Suarez's present intention and desire to carry loaded, operable firearms, including a handgun, on his person and

---

[11] Plaintiff Suarez is unable to locate this correspondence; however, Plaintiff Suarez does have the later response from the PSP upholding his denial which cites that basis.

in motor vehicles, in public for all lawful purposes including self-defense and in case of confrontation, without being subjected to criminal sanction and the loss of his liberty and rights under Defendant's laws and to procure a license to carry firearms to lawfully do as much.

50.    Plaintiff Suarez also desires to be able to lawfully transport all of his firearms within the Commonwealth, without restriction, including, but not limited to, being able to:

a.    During an emergency proclaimed by a State or municipal governmental executive:

    i.    Purchase a firearm from a Federal Firearm Licensee and transport that unloaded firearm, while on the public streets and public property, to:

        A. His home or other place of abode;

        B. To another Federal Firearm Licensee;

        C. A range or other location providing for target shooting;

        D. A place of business;

        E. A friend's house; and,

F. A place where he desires to hunt;

ii.   With an unloaded firearm, travel on the public streets and public property from any of the locations specified in ¶ 50, a., i., *supra,* to:

A. A range or other location providing for target shooting;

B. A Federal Firearm Licensee;

C. A place of business;

D. A place of abode;

E. A friend's house; and,

F. A place where he desires to hunt;

iii.   With an unloaded firearm, while traveling on the public streets and public property, stop for a bathroom breaks, food, coffee, or to pick up or drop off a friend, when going to or from any of the locations specified in ¶¶ 50, a., i. and ii, *supra;*

b.   In the absence of an emergency proclaimed by a State or municipal governmental executive, with an unloaded

firearm, stop for a bathroom breaks, food, coffee, or to pick up or drop off a friend, when going to or from:

    i.  A range;

    ii.  Target shooting;

    iii.  A place of purchase to his home or place of business;

    iv.  A place of repair, sale or appraisal;

    v.  A place of abode or business to another; and,

    vi.  A place where he desires to hunt;

c.    In the absence of an emergency proclaimed by a State or municipal governmental executive, with an unloaded firearm, travel throughout the Commonwealth to and from lawful places, where he may otherwise lawfully possess and carry a firearm, including, but not limited to:

    i.  Friends' houses;

    ii.  Businesses; and,

    iii.  From a successful hunt to a business that processes/butchers the successfully taken game; and,

d.    Regardless of whether during or in the absence of an emergency proclaimed by a State or municipal governmental

22

executive, travel in a mode of transportation and carry on the public streets and public property throughout the Commonwealth a loaded firearm to protect himself and his family.

51. Thus, as a result of his isolated 1990 conviction—for which he was granted state relief in 2009 and federal relief in 2015—Defendant's active enforcement and contention that Plaintiff Suarez is prohibited from obtaining a license to carry firearms by operation of 18 Pa.C.S. § 6109(e), subjects Plaintiff Suarez to 18 Pa.C.S. §§ 6106 – 6108, which restricts his right to lawfully carry and transport firearms throughout this Commonwealth, including for purposes of self-defense, as well as to and from the aforementioned locations and activities.

52. Plaintiff Suarez is a responsible, law-abiding, peaceable citizen with no history of violent behavior or other conduct that would suggest he poses any threat or danger. *See*, *Binderup*, 836 F.3d at 356 (declaring "Nor is there any evidence in the record to show why people like [Plaintiff Suarez] remain potentially irresponsible after many years of

apparently responsible behavior. Without more, there is not a substantial fit between the continuing disarmament of [Plaintiff Suarez] and an important government interest.").

53.   Plaintiff Suarez desires to carry loaded, operable firearms, including a handgun, on his person and in motor vehicles, in public for all lawful purposes including self-defense and in case of confrontation, without being subjected to criminal sanction and the loss of liberty and rights under Defendant's laws and further desires to obtain a license to carry firearms to lawfully do as much.

### *Plaintiff Binderup*

54.   Plaintiff Binderup:

e.  Is a United States citizen;

f.  Is over the age of 21;

g.  Is not under indictment;

h.  Has never been convicted of a felony or misdemeanor crime of domestic violence;

i.  Has only once been convicted of a crime punishable by more than one (1) year;

    j.  Is not a fugitive from justice;

    k.  Is not an unlawful user of, or addicted to, any controlled substance;

    l.  Has not been adjudicated a mental defective or been committed to a mental institution;

    m. Has not been discharged from the Armed Forces under dishonorable conditions;

    n.  Has never renounced his citizenship; and,

    o.  Is not the subject of a restraining order relating to an intimate partner.

55.   In 1997, Plaintiff Binderup pled guilty to a violation of 18 Pa.C.S. § 6301 (corruption of a minor), as a result of a consensual sexual relationship with a seventeen-year-old employee at his bakery and for which, he received three years of probation, a $300.00 fine, plus court costs and restitution. *See*, Exhibit D and *Binderup*, 836 F.3d at 340.

56.   As corruption of a minor is a misdemeanor of a first degree, pursuant to 18 Pa.C.S. § 106(b)(6), it could have been punished by up to five years in jail, which triggered the prohibition of 18 U.S.C.

§ 922(g)(1), which prohibits an individual from purchasing and possessing firearms and ammunition, if the individual has "has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year."

57. Furthermore, 18 Pa.C.S. § 6105(b) prohibits an individual from purchasing and possessing firearms in the Commonwealth, if the individual has been convicted of corruption of a minor.

58. In relation to the state law prohibition, on June 1, 2009, pursuant to 18 Pa.C.S. § 6105(d), Judge Howard Knisely of the Court of Common Pleas of Lancaster County, Pennsylvania, granted Plaintiff Binderup's petition for relief; thereby, restoring Plaintiff Binderup's rights, under the laws of the Commonwealth, to "possess, use, control, sell, transfer or manufacture" firearms. A copy of the June 1, 2009 Order is attached hereto and incorporated herein as Exhibit E.

59. As the Court of Common Pleas of Lancaster County lacked the authority to relieve Plaintiff Binderup's disability pursuant to 18 U.S.C. § 922(g)(1), Plaintiff Binderup brought a Second Amendment challenge, where on September 25, 2014, U.S.

District Court Judge James Knoll Gardner sustained Plaintiff Binderup's challenge (*Binderup v. Holder*, 13-CV-06750, 2014 WL 4764424 (E.D. Pa. Sept. 25, 2014)), finding that it was unconstitutional to deny him, in perpetuity, his right to keep and bear arms as a result of being convicted of a crime punishable by more than one year, which was thereafter affirmed by the en banc Third Circuit in *Binderup*, 836 F.3d at 356-57.

60. Plaintiff Binderup has never been charged with nor convicted of any other misdemeanor or felony offense. *See*, Exhibit D.

61. Plaintiff Binderup lawfully owns rifles, shotguns, and handguns.

62. In March of 2018, concerned for his and his family's safety and desiring to be able to protect himself and his family by lawfully carrying a firearm for self-defense and desiring to be able to lawfully transport firearms beyond the limitations contained in 18 Pa.C.S. §§ 6106 – 6108 Plaintiff Binderup attempted to obtain a license to carry firearms and was denied.

63. As Plaintiff Binderup was unaware of any putative disability, he filed a Pennsylvania Instant Check System Challenge Form, to which the Pennsylvania State Police responded on March 23,

2018, stating that he was denied, as his 1997 conviction for corruption of a minor was putatively prohibiting under 18 Pa.C.S. § 6109(e)(1)(viii), as a crime punishable by imprisonment for a term exceeding one year. A copy of the March 23, 2018 letter is attached hereto and incorporated herein as Exhibit F.

64.    The pertinent statutory text of 18 Pa.C.S. § 6109(e)(1)(viii) is virtually verbatim the statutory text of 18 U.S.C. § 922(g)(1), which the Third Circuit has already held was unconstitutional as applied to Plaintiff Binderup. *Cf.* 18 Pa.C.S. § 6109(e)(1)(viii) declaring that an individual is prohibited, where the individual "has been convicted of a crime punishable by imprisonment for a term exceeding one year" with 18 U.S.C. § 922(g)(1), declaring that an individual is prohibited, where the individual "has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year."

65.    It is Plaintiff Binderup's present intention and desire to carry loaded, operable firearms, including a handgun, on his person and in motor vehicles, in public for all lawful purposes including self-defense and in case of confrontation, without being subjected to

criminal sanction and the loss of his liberty and rights under Defendant's laws and to procure a license to carry firearms to lawfully do as much.

66.   Plaintiff Binderup also desires to be able to lawfully transport all of his firearms within the Commonwealth, without restriction, including, but not limited to, being able to:

a.   During an emergency proclaimed by a State or municipal governmental executive:

   i.   Purchase a firearm from a Federal Firearm Licensee and transport that unloaded firearm, while on the public streets and public property, to:

      A. His home or other place of abode;

      B. To another Federal Firearm Licensee;

      C. A range or other location providing for target shooting;

      D. A place of business;

      E. A friend's house; and,

      F. A place where he desires to hunt;

ii. With an unloaded firearm, travel on the public streets and public property from any of the locations specified in ¶ 66, a., i., *supra,* to:

A. A range or other location providing for target shooting;

B. A Federal Firearm Licensee;

C. A place of business;

D. A place of abode;

E. A friend's house; and,

F. A place where he desires to hunt;

iii. With an unloaded firearm, while traveling on the public streets and public property, stop for a bathroom breaks, food, coffee, or to pick up or drop off a friend, when going to or from any of the locations specified in ¶¶ 66, a., i. and ii, *supra*;

b. In the absence of an emergency proclaimed by a State or municipal governmental executive, with an unloaded firearm, stop for a bathroom breaks, food, coffee, or to pick up or drop off a friend, when going to or from:

      i.  A range;

     ii.  Target shooting;

    iii.  A place of purchase to his home or place of business;

    iv.  A place of repair, sale or appraisal;

     v.  A place of abode or business to another; and,

    vi.  A place where he desires to hunt;

c.    In the absence of an emergency proclaimed by a State or municipal governmental executive, with an unloaded firearm, travel throughout the Commonwealth to and from lawful places, where he may otherwise lawfully possess and carry a firearm, including, but not limited to:

      i.  Friends' houses;

     ii.  Businesses; and,

    iii.  From a successful hunt to a business that processes/butchers the successfully taken game; and,

d.    Regardless of whether during or in the absence of an emergency proclaimed by a State or municipal governmental executive, travel in a mode of transportation and carry on the public streets and public property throughout the

Commonwealth a loaded firearm to protect himself and his family.

67. Thus, as a result of his isolated 1997 conviction—for which he was granted state relief in 2009 and federal relief in 2014—Defendant's active enforcement and contention that Plaintiff Binderup is prohibited from obtaining a license to carry firearms by operation of 18 Pa.C.S. § 6109(e)(1)(viii) subjects Plaintiff Binderup to 18 Pa.C.S. §§ 6106 – 6108, which restricts his right to lawfully carry and transport firearms throughout this Commonwealth, including for purposes of self-defense, as well as to and from the aforementioned locations and activities.

68. Plaintiff Binderup is a responsible, law-abiding, peaceable citizen with no history of violent behavior or other conduct that would suggest he poses any threat or danger. *See*, *Binderup*, 836 F.3d at 356 (declaring "Nor is there any evidence in the record to show why people like [Plaintiff Binderup] remain potentially irresponsible after many years of apparently responsible behavior. Without more, there is not a substantial fit between the

continuing disarmament of [Plaintiff Binderup] and an important government interest.").

69.     Plaintiff Binderup desires to carry loaded, operable firearms, including a handgun, on his person and in motor vehicles, in public for all lawful purposes including self-defense and in case of confrontation, without being subjected to criminal sanction and the loss of liberty and rights under Defendant's laws and further desires to obtain a license to carry firearms to lawfully do as much.

### *Plaintiff Miller*

70.     Plaintiff Daniel Miller:

   a.   Is a United States citizen;

   b.   Is over the age of 21;

   c.   Is not under indictment;

   d.   Has never been convicted of a felony or misdemeanor crime of domestic violence;

   e.   Has only once been convicted of a crime punishable by more than one (1) year;

   f.   Is not a fugitive from justice;

g.  Is not an unlawful user of, or addicted to, any controlled substance;

h.  Has not been adjudicated a mental defective or been committed to a mental institution;

i.  Has not been discharged from the Armed Forces under dishonorable conditions;

j.  Has never renounced his citizenship; and,

k.  Is not the subject of a restraining order relating to an intimate partner.

71.  In 1998, Plaintiff Daniel Miller pled guilty to 18 Pa.C.S. § 4904(a)(2) (unsworn falsifications to authorities)[12] and 75 Pa.C.S. § 7122(3) (use of an altered PennDOT window tint exemption certificate) as a result of his use of the altered certificate during a court proceeding, for which he received a year of probation plus court costs and restitution. *See*, Exhibit G and *Miller*, 356 F.Supp.3d at 476.

---

[12] As noted by the court in *Miller*, this offense is "a misdemeanor of the third degree punishable by not more than one year of imprisonment" and therefore, Plaintiff Daniel Miller's conviction for it neither triggered a state nor federal prohibition. 356 F.Supp.3d at 476, fn. 4.

72.   Unlike Plaintiff Binderup's conviction, a conviction for use of an altered PennDOT window tint exemption certificate is not a crime that prohibits the individual under state law, *i.e.* 18 Pa.C.S. § 6105. *See*, *Miller*, 356 F.Supp.3d at 476, fn. 3.

73.   However, as use of an altered PennDOT window tint exemption certificate is a misdemeanor of a first degree, pursuant to 18 Pa.C.S. § 106(b)(6), it could have been punished by up to five years in jail, which triggered the prohibition of 18 U.S.C. § 922(g)(1), which prohibits an individual from purchasing and possessing firearms and ammunition, if the individual has "has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year."

74.   As a result, Plaintiff Daniel Miller brought a Second Amendment challenge, where on September 25, 2014, U.S. District Court Judge Eduardo Robreno sustained Plaintiff Daniel Miller's challenge (*Miller*, 356 F.Supp.3d at 485), finding that it was unconstitutional to deny him, in perpetuity, his right to keep and bear arms as a result of being convicted of a crime punishable by more than one year.

75.   Plaintiff Miller has never been charged with nor convicted of any other misdemeanor or felony offense, prior to or since that charging in 1998. *See*, Exhibit G and *Miller*, 356 F.Supp.3d at 476 (declaring that Plaintiff Daniel Miller "has had a spotless record ever since.")

76.   Plaintiff Miller lawfully owns and possesses rifles, shotguns, and handguns.

77.   In April of 2019, concerned for his and his family's safety and desiring to be able to protect himself and his family by lawfully carrying a firearm for self-defense and desiring to be able to lawfully transport firearms beyond the limitations contained in 18 Pa.C.S. §§ 6106 – 6108, Plaintiff Miller attempted to obtain a license to carry firearms and was denied.

78.   As Plaintiff Miller was unaware of any putative disability, he filed a Pennsylvania Instant Check System Challenge Form, to which the Pennsylvania State Police responded on June 24, 2019, stating that he was denied, as his 1998 conviction for use of an altered PennDOT window tint exemption certificate was putatively prohibiting under 18 Pa.C.S. § 6109(e)(1)(viii), as a crime

punishable by imprisonment for a term exceeding one year. A copy of the June 24, 2019 letter is attached hereto and incorporated herein as Exhibit H.

79.   The pertinent statutory text of 18 Pa.C.S. § 6109(e)(1)(viii) is virtually verbatim the statutory text of 18 U.S.C. § 922(g)(1), which the Third Circuit has already held was unconstitutional as applied to Plaintiff Miller. *Cf.* 18 Pa.C.S. § 6109(e)(1)(viii) declaring that an individual is prohibited, where the individual "has been convicted of a crime punishable by imprisonment for a term exceeding one year" with 18 U.S.C. § 922(g)(1), declaring that an individual is prohibited, where the individual "has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year."

80.   It is Plaintiff Miller's present intention and desire to carry loaded, operable firearms, including a handgun, on his person and in motor vehicles, in public for all lawful purposes including self-defense and in case of confrontation, without being subjected to criminal sanction and the loss of his liberty and rights under

Defendant's laws and to procure a license to carry firearms to lawfully do as much.

81. Plaintiff Miller also desires to be able to lawfully transport all of his firearms within the Commonwealth, without restriction, including, but not limited to, being able to:

    a.    During an emergency proclaimed by a State or municipal governmental executive:

        i.    Purchase a firearm from a Federal Firearm Licensee and transport that unloaded firearm, while on the public streets and public property, to:

          A. His home or other place of abode;

          B. To another Federal Firearm Licensee;

          C. A range or other location providing for target shooting;

          D. A place of business;

          E. A friend's house; and,

          F. A place where he desires to hunt;

ii.   With an unloaded firearm, travel on the public streets and public property from any of the locations specified in ¶ 81, a., i., *supra,* to:

    A. A range or other location providing for target shooting;

    B. A Federal Firearm Licensee;

    C. A place of business;

    D. A place of abode;

    E. A friend's house; and,

    F. A place where he desires to hunt;

iii.   With an unloaded firearm, while traveling on the public streets and public property, stop for a bathroom breaks, food, coffee, or to pick up or drop off a friend, when going to or from any of the locations specified in ¶¶ 81, a., i. and ii, *supra*;

b.   In the absence of an emergency proclaimed by a State or municipal governmental executive, with an unloaded firearm, stop for a bathroom breaks, food, coffee, or to pick up or drop off a friend, when going to or from:

      i.      A range;

      ii.      Target shooting;

      iii.      A place of purchase to his home or place of business;

      iv.      A place of repair, sale or appraisal;

      v.      A place of abode or business to another; and,

      vi.      A place where he desires to hunt;

c.      In the absence of an emergency proclaimed by a State or municipal governmental executive, with an unloaded firearm, travel throughout the Commonwealth to and from lawful places, where he may otherwise lawfully possess and carry a firearm, including, but not limited to:

      i.      Friends' houses;

      ii.      Businesses; and,

      iii.      From a successful hunt to a business that processes/butchers the successfully taken game; and,

d.      Regardless of whether during or in the absence of an emergency proclaimed by a State or municipal governmental executive, travel in a mode of transportation and carry on the public streets and public property throughout the

Commonwealth a loaded firearm to protect himself and his family.

82.  However, as a result of Defendant's active enforcement of 18 Pa.C.S. § 6109(e), Defendant is precluding Plaintiff Miller from obtaining a license to carry firearms and therefore subjecting Plaintiff Miller to the carry and transportation restrictions specified in 18 Pa.C.S. §§ 6106 – 6108, for which Defendant is also actively enforcing, and which criminalizes Plaintiff Daniel Miller's desired conduct to lawfully carry and transport firearms to and from the aforementioned locations and activities, as well as, for purposes of self-defense.

83.  Thus, as a result of his isolated 1998 conviction—for which he was granted federal relief in 2019—Defendant's active enforcement and contention that Plaintiff Miller is prohibited from obtaining a license to carry firearms by operation of 18 Pa.C.S. § 6109(e) and subjects to 18 Pa.C.S. §§ 6106 – 6108, which, in total, restricts his right to lawfully carry and transport firearms throughout this Commonwealth, including for purposes of self-defense, as well as to and from the aforementioned locations and activities.

84.   Plaintiff Miller is a responsible, law-abiding, peaceable citizen with no history of violent behavior or other conduct that would suggest he poses any threat or danger. *See*, *Miller*, 356 F.Supp.3d at 484 (declaring that the "Government has failed to demonstrate a substantial fit between disarming Miller and protecting the community from crime.").

85.   Plaintiff Miller desires to carry loaded, operable firearms, including a handgun, on his person and in motor vehicles, in public for all lawful purposes including self-defense and in case of confrontation, without being subjected to criminal sanction and the loss of liberty and rights under Defendant's laws and further desires to obtain a license to carry firearms to lawfully do as much.

### *The Controlling Constitutional Text, and the History and Tradition that Informs It*

86.   The United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. CONST. AMEND. II.

87.   The Fourteenth Amendment to the United States Constitution provides: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United

States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

88. The Second Amendment is fully applicable to the States through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *id.* at 805 (Thomas, J., concurring).

89. "The very enumeration of the right [to keep and bear arms] takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *Heller*, 554 U.S. at 634. "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Id.* at 634-35.

90. In *Heller*, the Supreme Court also held that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Heller*, 554 U.S. at 592.

91. This is " 'a natural right which the people have reserved to themselves, confirmed by the Bill of Rights,' " *Heller*, 554 U.S. at

594 (quoting A Journal of the Times: Mar. 17, NEW YORK JOURNAL, Supp. 1, Apr. 13, 1769).

92. And the meaning of the right during the founding-era—which the high court has commanded must still control today— "unambiguously" "refer[red] to the carrying of weapons outside of an organized militia." *Id.* at 584. It is clear that, "[a]t the time of the founding, as now, to 'bear' meant to "carry." *Id.*

93. *Heller* commands that the fundamental right to *bear* arms for self-defense and in case of confrontation—as part and parcel of "the natural right of resistance and self-preservation," *Heller*, 554 U.S. at 594—is of particular importance when it comes to ensuring citizens' ability to carry *handguns* for such purposes, because the court has explicitly recognized the handgun as "the quintessential self-defense weapon" in this country and that any complete prohibition against their carry and use is necessarily invalid. *Id.* at 629.

94. *Heller* mandates that the constitutionality of restrictions on the rights enshrined in the Second Amendment must be scrutinized under the text of the Constitution itself, looking to the history and

tradition to inform its original public meaning. The high court has directed the analysis be "guided by the principle that '[t]he Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary as distinguished from technical meaning.'" *Heller*, 554 U.S. at 576 (quoting *United States v. Sprague*, 282 U.S. 716, 731 (1931)). We look to "the historical background of the Second Amendment" because "it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right." *Id.* at 592.

95.   The U.S. Supreme Court in *Heller* held that to "bear arms" means to "wear, bear, or carry … upon the person or in the clothing or in a pocket, for the purpose … of being armed and ready for offensive or defensive action in a case of conflict with another person." *Heller*, 554 U.S. at 584 (quoting *Muscarello v. United States*, 524 U.S. 125, 143 (1998)) (internal quotations omitted).

96.   Throughout American history, arms carrying was a right as to all peaceable citizens. Sometimes, it was even a duty. *See e.g.*, David B. Kopel & Joseph G.S. Greenlee, *The Second Amendment Rights*

*of Young Adults*, 43 S. Ill. U. L.J. 495, 573–577, 587 (2019) (listing statutes requiring arms carrying by members of the general public to travel, work in the fields, work on roads and bridges, attend church, and attend court).

97. Historically, under the Constitution's relevant history and tradition, only dangerous persons have been acceptably deprived of the right to bear arms. Peaceable persons have always been free to carry arms for self-defense and other lawful purposes. The tradition of disarming violent and otherwise dangerous persons was practiced from medieval England through mid-20th century America, but there is no tradition of disarming nonviolent people like Plaintiffs Suarez, Binderup, and Miller. *See generally* Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Arms*, 20 WYO. L. REV. 249 (2020).

98. The tradition of disarming violent and dangerous persons was practiced from medieval England through mid-20th century America, but there is no tradition of disarming nonviolent people

like Plaintiffs Suarez, Binderup, and Miller, and those similarly situated. *Id.*

### *The Defendant's Impermissible Infringement of the Right to Bear Arms*

99. The foregoing paragraphs are incorporated herein as if set forth in full.

100. As detailed above, nothing in the text itself nor the applicable history or tradition of the Second or Fourteenth Amendments supports the infringement and burdens that the enforcement of Defendant's laws and policies impose on the ability of law-abiding citizens, like Plaintiffs and those similarly situated, to otherwise lawfully and peaceably transport and carry loaded and unloaded handguns for all lawful purposes, including self-defense in case of confrontation, in the exercise of their fundamental right to bear arms.

101. Defendant's enforcement of his laws, regulations, policies, and customs individually and collectively amount to a total ban on the right of Plaintiffs, Plaintiffs' members and supporters, and those who are similarly situated, to lawfully purchase a firearm at a Federal Firearms Licensee and carry or otherwise transport the

firearm, whether loaded or unloaded, while on the public streets and public property, to their homes, businesses, or other lawful locations specified in ¶¶ 50, 66, 81, *supra*.

102. Moreover, Defendant's enforcement of his laws, regulations, policies, and customs individually and collectively amount to a total ban on the right of Plaintiffs, Plaintiffs' members and supporters, and those who are similarly situated, to carry or otherwise transport a firearm, they already own or otherwise lawfully possess, whether loaded or unloaded, while on the public streets and public property, to a range or other location providing for target shooting, to their business, or other lawful locations specified in ¶¶ 50, 66, 81, *supra*.

103. Furthermore, Defendant's enforcement of his laws, regulations, policies, and customs individually and collectively amount to a total ban on the right of Plaintiffs, Plaintiffs' members and supporters, and those who are similarly situated, to bear loaded, operable handguns on their person in public for all lawful purposes including self-defense and in case of confrontation, in

public places, on public streets, sidewalks, and spaces, and in their motor vehicles.

104. Plaintiffs, Plaintiffs' members and supporters, and those similarly situated are forced to choose between compliance with the law in order to avoid prosecution which, if convicted, would result in a lifetime prohibition on the exercise of their Second Amendment right and "unlawfully" carrying a firearm for self-defense as guaranteed by the Second Amendment of the United States Constitution.

## COUNT ONE
## DEPRIVATION OF CIVIL RIGHTS
## RIGHT TO KEEP AND BEAR ARMS
## U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983
### (*Plaintiffs v. Defendant*)

105. The foregoing paragraphs are hereby incorporated herein as if set forth in full.

106. There is an actual and present controversy between the parties.

107. 42 U.S.C. § 1983 prohibits state actors from depriving a person of federal constitutional rights under color of state law.

108. The Second Amendment states that "the right of the people to keep and bear arms shall not be infringed."

109. The Supreme Court has held that the right to keep and bear arms is a fundamental right, the core of which is for self-defense. *Heller*, 554 U.S. at 581.

110. In *Heller*, the U.S. Supreme Court defined "bear arms" as to "wear, bear, or carry … upon the person or in the clothing or in a pocket, for the purpose … of being armed and ready for offensive or defensive action in a case of conflict with another person." 554 U.S. at 584.

111. In *McDonald*, the Supreme Court held that the Second Amendment is incorporated as applicable to the states through the Fourteenth Amendment. 561 U.S. at 791; *Id*. at 806 (Thomas, J., concurring).

112. The Supreme Court has made clear the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms as among those fundamental rights *necessary* (i.e., essential) to our system of ordered liberty, *McDonald*, 561 U.S. at 778, 791, and as a privilege and immunity of citizenship, *id*. at 805 (Thomas, J., concurring).

113. "The very enumeration of the [Second Amendment] right takes out of the hands of government … the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *Heller*, 554 U.S. at 635 (emphasis in original).

114. The Second Amendment is not a "second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees," *McDonald*, 561 U.S., at 780, and it cannot "be singled out for special—and specially unfavorable—treatment." *Id.* at 778–79.

115. Defendant's laws, policies, enforcement practices, and customs challenged herein that individually and collectively violate the constitutional right to bear arms are not longstanding, have no historical pedigree, and are not rooted in our Nation's traditions.

116. Defendant's laws, policies, and enforcement practices prevent law-abiding individuals not prohibited from possessing or acquiring firearms from, *inter alia*,

    a. lawfully purchasing a firearm at a Federal Firearms Licensee and carrying or otherwise transporting the firearm, whether loaded or unloaded, while on the public streets and

public property, to their homes, businesses, or other lawful locations specified in ¶¶ 50, 66, 81, *supra*;

b. carrying or otherwise transporting a firearm, they already own or otherwise lawfully possess, whether loaded or unloaded, while on the public streets and public property, to a range or other location providing for target shooting, to their business, or other lawful locations specified in ¶¶ 50, 66, 81, *supra*; and,

c.  carrying loaded, operable firearms on their person in public for all lawful purposes including self-defense and in case of confrontation, in public places, on public streets, sidewalks, and spaces, and in their motor vehicles.

117. Defendant's laws, policies, and enforcement practices are more extensive than necessary and are not the least restrictive means of addressing the transport and carriage of firearms by persons who are disqualified from exercising Second Amendment rights under state and/or federal laws.

118. In *Heller*, the Supreme Court declared unconstitutional the District of Columbia's laws that, *inter alia*, prevented Mr. Heller

from having a handgun on his person that was "operable for the purpose of immediate self-defense." 554 U.S. at 635.

119. By preventing individuals, like and including Plaintiffs, Plaintiffs' members and supporters, and others similarly situated to them, from bearing arms as they are constitutionally entitled, Defendant has violated the Plaintiffs' rights protected under the Second and Fourteenth Amendments and denied them those arms for the purpose of immediate self-defense and all lawful purposes.

120. Plaintiffs, and other individuals like them, have been and will continue to be subject to the Defendant's laws, policies, and enforcement practices which deny access to, exercise of, and violates their right to bear arms, including but not limited to the right to immediate self-defense in case of confrontation.

121. As detailed *supra*, nothing in the text itself nor the applicable history or tradition of the Second or Fourteenth Amendments supports the infringement and burdens that the enforcement of Defendant's laws and policies impose on the ability of law-abiding citizens, like Plaintiffs and those similarly situated, to otherwise lawfully and peaceably transport and carry loaded and unloaded

handguns for all lawful purposes, including self-defense in case of confrontation, in the exercise of their fundamental right to bear arms.

122. Defendant has and continues to enforce the Commonwealth's laws pertaining to the keeping and bearing of firearms, including 18 Pa.C.S. §§ 6106–6109.

123. Because of the Commonwealth's laws and Defendant Evanchick's enforcement of them, individual Plaintiffs, Plaintiff's similarly situated members and supporters, and other similarly situated individuals cannot acquire a LTCF or lawfully transport or carry a loaded or unloaded firearm on their person and in their motor vehicles, in public, for lawful purposes including self-defense.

124. But for the Commonwealth's laws and Defendant Evanchick's enforcement of them, individual Plaintiffs, Plaintiff's similarly situated members and supporters, and other law-abiding, typical individuals could apply for and be issued a LTCF.

125. Defendant's individual and collective enforcement of his laws, regulations, policies, and enforcement practices amount to a total ban on the right of Plaintiffs, Plaintiffs' members and supporters,

and those who are similarly situated to bear loaded, operable handguns on their person in public for all lawful purposes including self-defense and in case of confrontation, in public places, on public streets, sidewalks, and spaces, and in their motor vehicles.

126. Plaintiffs, Plaintiffs' members and supporters, and those similarly situated are forced into the untenable position of choosing between compliance with the law in order to avoid prosecution which, if convicted, would result in a lifetime prohibition on the exercise of their Second Amendment right and "unlawfully" transporting and carrying a firearm for self-defense as guaranteed by the Second Amendment of the United States Constitution.

127. Defendant's laws and enforcement policies, practices, and customs preventing legally and constitutionally eligible individuals from lawfully purchasing a firearm at a Federal Firearms Licensee and carrying or otherwise transporting the firearm, whether loaded or unloaded, while on the public streets and public property, to their homes, businesses, or other lawful locations specified in ¶¶ 50, 66,

81, *supra*, violates the enumerated, fundamental, individual right to bear arms.

128. Defendant's laws and enforcement policies, practices, and customs preventing legally and constitutionally eligible individuals from carrying or otherwise transporting a firearm, they already own or otherwise lawfully possess, whether loaded or unloaded, while on the public streets and public property, to a range or other location providing for target shooting, to their business, or other lawful locations specified in ¶¶ 50, 66, 81, *supra*, violates the enumerated, fundamental, individual right to bear arms.

129. Defendant's laws and enforcement policies, practices, and customs preventing legally and constitutionally eligible individuals from bearing loaded, operable handguns on their person in public for all lawful purposes including self-defense and in case of confrontation, in public places, on public streets, sidewalks, and spaces, and in their motor vehicles violates the enumerated, fundamental, individual right to bear arms.

130. Defendant has and will continue to enforce his laws, policies, practices, and customs against Plaintiffs, Plaintiffs' members and supporters and similarly situated persons.

131. Plaintiffs reasonably fear that Defendant will enforce against them his laws and Defendant's related enforcement policies, practices, and customs.

132. Plaintiffs thus seek declaratory and permanent injunctive relief, as this action involves matters of substantial public interest.

133. The Second and Fourteenth Amendments to the United States Constitution guarantee citizens of States their fundamental right to keep and bear arms, both in the home and in public places, including but not limited to while on public streets, sidewalks, and spaces or in a motor vehicle.

134. The keeping and bearing of arms is a fundamental right that is necessary to our system of ordered liberty, and is additionally a privilege and immunity of citizenship, protected by the Fourteenth Amendment.

135. The right to keep and bear arms includes, but is not limited to, the right of individuals to acquire, keep, carry, and transport loaded

and unloaded, operable handguns on their person in public for all lawful purposes including self-defense and in case of confrontation, in public places, on public streets, sidewalks, and spaces, and in their motor vehicles.

136. Plaintiffs Suarez, Binderup, and Miller are law-abiding citizens who are not disqualified from exercising their rights under the Second Amendment.

137. Plaintiffs Suarez, Binderup, and Miller desire to obtain a LTCF so that they would be exempt from the restrictions, criminal sanctions, and penalties imposed by Pa.C.S. §§ 6106–6108, and thus lawfully carry or otherwise transport a loaded or unloaded, operable handgun on their person, in public and in motor vehicles, for self-defense and all lawful purposes.

138. Plaintiffs Suarez, Binderup, and Miller meet all the eligibility requirements for the issuance of a LTCF except that of 18 Pa.C.S. § 6109(e)(1)(viii), which Defendant is enforcing against them and others like them.

139. Plaintiffs Suarez, Binderup, and Miller, Plaintiff's members and supporters, and those similarly situated to them, wish to exercise

their fundamental, individual right to bear arms and would, but for Defendant's laws, policies, and enforcement practices and reasonable fear of enforcement, including but not limited to arrest, prosecution, loss of liberty, and lifetime loss of their enumerated right to keep and bear arms should they be convicted of an offense under 18 Pa.C.S. §§ 6106, 6107, and/or 6108.

140. Defendant is, by and through his laws, regulations, policies, and enforcement practices, singling out the fundamental, individual right to keep and bear arms for "special—and specially unfavorable—treatment." *McDonald*, 561 U.S. at 779.

141. Plaintiffs Suarez, Binderup, and Miller, Plaintiff's members and supporters, and similarly situated members of the public who do not currently possess a valid LTCF, cannot lawfully carry or otherwise transport firearms in any manner (i.e., openly or concealed) nor engage in the various activities discussed *supra*.

142. Plaintiffs Suarez, Binderup, and Miller wish to, but have been forced to abstain from, carrying or otherwise transporting a loaded or unloaded, operable handgun on their person, in public and in motor vehicles, in case of confrontation, and for the purpose of

immediate self-defense, for fear of arrest, prosecution, incarceration, and/or fine under Defendant's laws and their enforcement of them.

143. Plaintiffs Suarez, Binderup, and Miller reasonably fear arrest and prosecution for exercising their rights by carrying or otherwise transporting a loaded or unloaded, operable handgun on their person outside the home, in public, because of the Defendant's laws, policies, and active enforcement of them.

144. Defendant is responsible for the formulation, issuance, and/or implementation of the Commonwealth's laws, policies, practices, and customs at issue in this case.

145. Defendant has enforced and continues to enforce the Commonwealth's laws, policies, customs, and practices against Plaintiffs and is in fact presently enforcing and threatening to enforce the challenged laws, policies, customs, and practices against Plaintiffs and others like them.

146. Plaintiffs FPC and SAF have an associational interest in defending and asserting the rights of their members and similarly

situated members of the public against Defendant's laws, policies, and enforcement practices.

147. Because of Defendant's enforcement of the laws, regulations, policies, practices, and customs challenged herein, FPC and SAF have suffered and continues to suffer a diversion of resources to identify and/or counteract the unlawful actions, as well as a frustration of their organization's mission.

148. Defendant's laws, policies, and enforcement practices target and impact normal, legally eligible adults who are constitutionally entitled to bear, carry, and lawfully use arms for all lawful purposes, including self-defense, in public.

149. Defendants, individually and collectively, and under color of State law at all relevant times, have deprived the fundamental constitutional rights, privileges, and immunities of citizenship of adult persons in the Commonwealth of Pennsylvania, including Plaintiffs Suarez, Binderup, and Miller, all similarly situated members and supporters of Plaintiff FPC and SAF, and all other similarly situated individuals, through their enforcement and implementation of the Commonwealth's laws and regulations.

150. Plaintiffs have incurred nominal damages, attorney fees, and costs as a direct result of Defendant's laws and policies, and their enforcement of them, as well as filing and prosecuting the present action.

151. 42 U.S.C. § 1983 creates a cause of action against state and local government actors who deprive individuals of federal constitutional rights under color of state law.

152. Defendant's laws, policies, practices, customs, and ongoing enforcement of them violate the rights of Suarez, Binderup, and Miller, Plaintiff's members and supporters, and similarly situated members of the public, are thus causing injury and damage actionable under 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests that this Honorable Court enter judgment in their favor and against Defendant, as follows:

a) A declaratory judgment that Defendant's laws, regulations, policies, enforcement practices, and actions individually and/or collectively prevent Plaintiffs, Plaintiffs' members and supporters,

and similarly situated individuals who are not disqualified from exercising Second Amendment rights, from carrying or otherwise transporting loaded and unloaded, operable firearms in public on their person and in their motor vehicles, for all lawful purposes including self-defense, and thus violate the right to keep and bear arms protected under Second and Fourteenth Amendments to the United States Constitution;

b)  An order permanently restraining and enjoining Defendant and his officers, agents, servants, employees, all persons in concert or participation with them, and all who have notice of the injunction, from enforcing Defendant's laws, regulations, policies, enforcement practices, and actions that individually and/or collectively prevent Plaintiffs, Plaintiff's members and supporters, and similarly situated individuals who are not disqualified from exercising Second Amendment rights, from carrying or otherwise transporting loaded and unloaded, operable firearms in public on their person and in their motor vehicles, for all lawful purposes including self-defense;

c)    All other and further legal and equitable relief, including injunctive relief, against Defendants as necessary to effectuate the Court's judgment, and/or as the Court otherwise deems just and equitable; and,

d)    Attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable law.

Respectfully Submitted,


Joshua Prince, Esq.
Attorney Id. No. 306521
CIVIL RIGHTS DEFENSE FIRM, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(888) 202-9297 ext 81114
(610) 400-8439 (f)
Joshua@Civilrightsdefensefirm.com

Adam Kraut, Esq.
Attorney Id. No. 318482
FIREARMS POLICY COALITION
1215 K Street, 17th Floor
Sacramento, CA 95814
(916) 476-2342
Akraut@fpclaw.org