## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIO SUAREZ, DANIEL** | : | |
| **BINDERUP, DANIEL MILLER,** | : | |
| **FIREARMS POLICY COALITION,** | : | |
| **INC.** *and* **SECOND AMENDMENT** | : | **No. 1:21-CV-0710** |
| **FOUNDATION,** | : | |
| **Plaintiffs** | : | **Judge Conner** |
| | : | |
| **v.** | : | **Electronically Filed Document** |
| | : | *Complaint Filed 04/16/21* |
| **ROBERT EVANCHICK,** | : | |
| **Defendant** | : | |

### DEFENDANT'S BRIEF IN SUPPORT OF
### HIS MOTION TO DISMISS THE COMPLAINT

Respectfully submitted,

**JOSH SHAPIRO**
**Attorney General**

By:   *s/ Alexander T. Korn*

**ALEXANDER T. KORN**
**Deputy Attorney General**
**Attorney ID 323957**

**Office of Attorney General**
**15th Floor, Strawberry Square**
**Harrisburg, PA 17120**
**Phone: (717) 712-2037**

**KAREN M. ROMANO**
**Chief Deputy Attorney General**
**Civil Litigation Section**

**akorn@attorneygeneral.gov**

**Date:  July 15, 2021**

**Counsel for Defendant**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ............................................................................1

PROCEDURAL HISTORY ..................................................................4

STATEMENT OF FACTS ...................................................................4

      A.    The Pennsylvania Laws Challenged By Plaintiffs ............................4

      B.    The Individual Plaintiffs ...................................................8

      C.    The Complaint .............................................................9

      D.    The History Of Pennsylvania's Uniform Firearms Act.....................10

      E.    Plaintiffs Overstate The Reach Of Pennsylvania's Firearm Laws .....12

STATEMENT OF QUESTIONS INVOLVED....................................................14

ARGUMENT....................................................................................15

I.     THE RIGHT TO BEAR ARMS PROTECTED BY THE SECOND AMENDMENT IS A LIMITED RIGHT ....................................................16

II.    PENNSYLVANIA'S FIREARM LAWS DO NOT REGULATE CONDUCT PROTECTED BY THE SECOND AMENDMENT................17

      A.    The Right To Bear Arms Does Not Include The Right To Carry Concealed Firearms Or To Transport Loaded Firearms In Vehicles..18

      B.    The Right To Bear Arms Does Not Include The Right To Carry Weapons On Public Property And Public Streets During Declared States Of Emergency For Purposes Other Than Self-Defense ..........20

      C.    The Right To Bear Arms Does Not Include The Right To Carry Weapons On Public Property And Public Streets In Highly Populated Cities With High Crime Rates.........................................23

III.   PENNSYLVANIA'S FIREARM LAWS SERVE A SUBSTANTIAL AND IMPORTANT INTEREST AND FIT REASONABLY WITH THAT INTEREST ................................................................................................24

CONCLUSION ................................................................................................26

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................15

*Bonidy v. U.S. Postal Serv.*,
790 F.3d 1121 (10th Cir. 2015)..................................................................25

*Clark v. City of Shawnee, Kansas*,
228 F. Supp. 3d 1210 (D. Kan. 2017) .................................................2, 19

*Commonwealth v. Lanzetti*,
97 Pa. Super. 126 (1929) ...........................................................................11

*Commonwealth v. McKown*,
79 A.3d 678 (Pa. Super. Ct. 2013) ...............................2, 10, 11, 12, 19

*Commonwealth v. Scarborough*,
89 A.3d 679 (Pa. Super. Ct. 2014) ...................................3, 14, 24, 25

*District of Columbia v. Heller*,
554 U.S. 570 (2008) ...........................................2, 4, 16, 19, 22, 23, 24

*Drake v. Filko*,
724 F.3d 426 (3d Cir. 2013)...............................3, 16, 17, 20, 21, 22, 24, 25, 26

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009)......................................................................15

*Henry v. Pechin*,
31 Pa. D. & C. 484 (Quar. Sess. 1937)......................................................11

*Kachalsky v. Cty. of Westchester*,
701 F.3d 81 (2d Cir. 2012) ........................................................................17

*Lara v. Evanchick*,
No. 2:20-CV-1582, 2021 WL 1432802 (W.D. Pa. Apr. 16, 2021) .......................
.........................................................................3, 4, 5, 10, 12, 13, 18, 22, 23

*McDonald v. City of Chicago, Ill.*,
   561 U.S. 742 (2010) ................................................................... 2, 16, 23

*Peterson v. Martinez*,
   707 F.3d 1197 (10th Cir. 2013)................................................................ 19

*Robertson v. Baldwin*,
   165 U.S. 275 (1897) ....................................................................... 2, 19

*United States v. Marzzarella*,
   614 F.3d 85 (3d. Cir. 2010) ............................................................. 2, 15, 24

*United States v. Masciandaro*,
   638 F.3d 458 (4th Cir.2011) ................................................................. 17

*Wright v. Commonwealth*,
   77 Pa. 470 (1875) ........................................................................... 11

## Statutes

18 Pa.C.S. § 6102 ................................................................................ 4

18 Pa.C.S. § 6106 ........................................................................ passim

18 Pa.C.S. § 6107 ........................................................................ passim

18 Pa.C.S. § 6108 ........................................................................ passim

18 Pa.C.S. § 6109 ........................................................................ passim

42 U.S.C § 1983.................................................................................. 1

U.S. Const. amend. II.......................................................................... 16

N.C.S.A. § 2C:58-3c(1) ....................................................................... 21

N.J. Admin. Code § 13.54-2.4(d)(1)........................................................ 23

## Rules

Fed. R. Civ. P. 12(b)(6)....................................................................... 15

Defendant Colonel Robert Evanchick ("Colonel Evanchick") hereby submits this brief in support of his motion to dismiss the Complaint in this action filed by Plaintiffs Julio Suarez ("Suarez"), Daniel R. Binderup ("Binderup"), Daniel F. Miller ("Miller" and, together with Suarez and Binderup, the "Individual Plaintiffs"), Firearms Policy Coalition, Inc. and Second Amendment Foundation.

## INTRODUCTION

Plaintiffs contend that the provisions of the Pennsylvania Uniform Firearms Act of 1995, 18 Pa.C.S. §§ 6101–6128 that prohibit people who have been convicted of certain crimes from obtaining a license to carry concealed firearms, and the limitations on concealed carry and transport that apply to people without a license, violate the Second Amendment to the United States Constitution. *See* 18 Pa.C.S. §§ 6106(a) and 6109(e)(1)(viii). Plaintiffs also challenge § 6107, which limits the unlicensed carrying of guns on public property and public streets during declared states of emergency by people who are not actively engaged in self-defense, and § 6108, which limits unlicensed carrying on the public property and public streets of Philadelphia. *See* 18 Pa.C.S. §§ 6107 and 6108. While Plaintiffs purport to assert a facial challenge to these laws under 42 U.S.C § 1983, Plaintiffs' claims fail because the Second Amendment is not implicated in this case. The Pennsylvania laws challenged by Plaintiffs are precisely the type of "presumptively lawful" and "longstanding" measures that that the Supreme Court

has consistently held do not violate the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570, 626-7 & 627 n.26 (2008); *see McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 778 (2010) (same).  This is true in two separate respects.

**_First_**, there is no Second Amendment right to carry concealed weapons in public or to transport loaded firearms in motor vehicles. *See Robertson v. Baldwin*, 165 U.S. 275, 281-282 (1897) ("the right of the people to keep and bear arms (article 2) is not infringed by laws prohibiting the carrying of concealed weapons"); *Clark v. City of Shawnee, Kansas*, 228 F. Supp. 3d 1210, 1232 (D. Kan. 2017) (there is "no Second Amendment right for members of the public to transport loaded and non-encased firearms in their vehicles without a concealed carry permit"); *Commonwealth v. McKown*, 79 A.3d 678, 690 (Pa. Super. Ct. 2013) ("We point out that neither the Second Amendment to the United States Constitution, nor the Pennsylvania Constitution, bestows on any person the right to carry a concealed firearm or transport a loaded firearm in a vehicle."). Accordingly, the licensing restriction in § 6109(e)(1)(viii) and the limitations on concealed carry and transport that apply to people without a license under § 6106 do not violate the Second Amendment because the statutes do not regulate "conduct falling within the scope of the Second Amendment's guarantee." *United States v. Marzzarella*, 614 F.3d 85, 89 (3d. Cir. 2010).

***Second***, the Third Circuit has held that there is no broad Second Amendment right to carry weapons on public property and public streets.  In *Drake v. Filko*, 724 F.3d 426, 433 (3d Cir. 2013), the Court discussed the "longstanding" and constitutional state law "tradition of regulating the public carrying of weapons for self-defense," including "historical bans on public carrying" altogether.  Since these historical bans on public carrying were constitutional, it necessarily follows that the more limited and location specific bans in §§ 6107 and 6108 – which only apply to people without a concealed carry license and only limit carrying on public streets and public property – are also constitutional.  *See Drake*, 724 F.3d at 433–34 (holding that a New Jersey law that limits the public carrying of handguns to those who could demonstrate a "justifiable need to do so" did not violate the Second Amendment); *Lara v. Evanchick*, No. 2:20-CV-1582, 2021 WL 1432802, at *12 (W.D. Pa. Apr. 16, 2021) (holding that § 6107 did not violate the Second Amendment because "[t]he limitations only apply to public streets and public property").  In addition, the limitations on public carrying in § 6107 only apply during declared states of emergency and do not apply to anyone who is actively engaged in self-defense.  Similarly, the limitations in § 6108 only apply to the public property and public streets of "the most populated city in the Commonwealth with a correspondingly high crime rate . . . ."  *Commonwealth v. Scarborough*, 89 A.3d 679, 686 (Pa. Super. Ct. 2014).  Laws like these that

"forbi[d]" the unlicensed "carrying of firearms in sensitive places" also do not implicate the Second Amendment. *Heller*, 554 U.S. at 626.

For these reasons, as described more fully below, the Court should grant Defendant's motion and dismiss the Complaint.

## PROCEDURAL HISTORY

Plaintiffs filed the Complaint in this action on April 16, 2021. *See* Doc. 1. Evanchick filed a motion to dismiss the Complaint on June 17, 2021. *See* Doc. 13.

## STATEMENT OF FACTS

### A.    The Pennsylvania Laws Challenged By Plaintiffs

Plaintiffs allege that 18 Pa.C.S. §§ 6106, 6107, 6108 and 6109 "collectively and through their interaction, violate their rights under the Second Amendment." *Lara v. Evanchick*, No. 2:20-CV-1582, 2021 WL 1432802, at *5 (W.D. Pa. Apr. 16, 2021); *see* Doc. 1 ¶¶ 122, 137. These laws are part of Pennsylvania's Uniform Firearms Act and regulate the carrying of "firearms" in public and in vehicles. "Firearms" are defined as:

> Any pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches.

18 Pa.C.S. § 6102. We begin with an examination of the text of each of the laws challenged by Plaintiffs.

1.      18 Pa.C.S. § 6106

Section 6106(a) makes it a crime to carry a concealed firearm outside of

one's home or business or in one's vehicle without a license:

> (1) Except as provided in paragraph (2), any person who
> carries a firearm in any vehicle or any person who carries
> a firearm concealed on or about his person, except in his
> place of abode or fixed place of business, without a valid
> and lawfully issued license under this chapter commits a
> felony of the third degree.
>
> (2) A person who is otherwise eligible to possess a valid
> license under this chapter but carries a firearm in any
> vehicle or any person who carries a firearm concealed on
> or about his person, except in his place of abode or fixed
> place of business, without a valid and lawfully issued
> license and has not committed any other criminal
> violation commits a misdemeanor of the first degree.

18 Pa.C.S. § 6106(a).

However, "Section 6106(b) excepts a broad range of persons and activities

from the licensure requirement" in subsection (a) (*Lara*, 2021 WL 1432802, at *5),

including the following:

> (4) Any persons engaged in target shooting with a
> firearm, if such persons are at or are going to or from
> their places of assembly or target practice and if, while
> going to or from their places of assembly or target
> practice, the firearm is not loaded. . .
>
> (8) Any person while carrying a firearm which is not
> loaded and is in a secure wrapper from the place of
> purchase to his home or place of business, or to a place of
> repair, sale or appraisal or back to his home or place of
> business, or in moving from one place of abode or

business to another or from his home to a vacation or
recreational home or dwelling or back . . .

(9)   Persons licensed to hunt, take furbearers or fish in
this Commonwealth, if such persons are actually hunting,
taking furbearers or fishing as permitted by such license,
or are going to the places where they desire to hunt, take
furbearers or fish or returning from such places. . .

18 Pa.C.S. § 6106(b).

2.    18 Pa.C.S. § 6107

Section 6107(a) limits the carrying of firearms on public streets and public
property during declared states of emergency.   *See* 18 Pa.C.S. § 6107(a).
However, the limitations in § 6107(a) do not apply to people "(1) Actively engaged
in a defense of [their] life or property from peril or threat" or "(2) Licensed to carry
firearms under section 6109 (relating to licenses)" or "exempt from licensing under
section 6106(b) (relating to firearms not to be carried without a license)."   *Id*.  The
word "firearm" in the context of § 6107 "includes any weapon that is designed to
or may readily be converted to expel any projectile by the action of an explosive or
the frame or receiver of any weapon."   18 Pa.C.S. § 6107(c).  Pennsylvania has
been under a state of emergency since 2018 due to the ongoing opioid epidemic.
*See* Doc. 1 ¶ 28.  "Pennsylvania has been under an additional state of emergency,

proclaimed by Governor Wolf, related to COVID-19 since March 6, 2020." *Id*. at ¶ 29.[1]

    3.    18 Pa.C.S. § 6108

Section 6108 is titled "Carrying firearms on public streets or public property in Philadelphia" and provides:

> No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:
> (1)  such person is licensed to carry a firearm; or
> (2)  such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

18 Pa.C.S. § 6108.  "The City of Philadelphia is the only 'city of the first class[.]'" Doc. 1 ¶ 33.

    4.    18 Pa.C.S. § 6109

Section 6109 sets forth the process and standard for obtaining a license to carry a concealed firearm.  *See* 18 Pa.C.S. § 6109(a) ("A license to carry a firearm shall be for the purpose of carrying a firearm concealed on or about one's person or in a vehicle throughout this Commonwealth.").  Most Pennsylvania residents who desire a license "shall make application with the sheriff of the county in which

---

[1]    On June 10, 2021, the General Assembly passed a concurrent resolution to end the Disaster Emergency.  Pa. Legislature ends Gov. Wolf's pandemic disaster emergency declaration, PennLive, https://www.pennlive.com/news/2021/06/pa-legislature-ends-gov-wolfs-pandemic-disaster-emergency-declaration.html.

[t]he[y] resid[e]. . . ." 18 Pa.C.S. § 6109(b).  Residents of Philadelphia must apply

with the city's chief of police.  *See id*.  Section 6109(e) lists several disabilities that

disqualify individuals from obtaining a concealed carry license.  In this case the

relevant restriction is contained is § 6109(e)(1)(viii), which provides:

> A license shall not be issued to . . . [a]n individual who is
> charged with or has been convicted of a crime punishable
> by imprisonment for a term exceeding one year except as
> provided for in section 6123 (relating to waiver of
> disability or pardons).

18 Pa.C.S. § 6109(e)(1)(viii).  After receiving an application the sheriff must

conduct a background investigation into the applicant to determine whether any of

the disabilities in § 6109(e) apply.  *See* 18 Pa.C.S. § 6109(d).  The sheriff must

issue a license if, after completing the investigation, "it appears that the applicant is

an individual concerning whom no good cause exists to deny the license."  18

Pa.C.S. § 6109(e).

## B.    The Individual Plaintiffs

The Individual Plaintiffs are Pennsylvania residents that have each been

previously convicted of a criminal offense punishable by a term of imprisonment

of more than one year:

- Suarez was convicted in Maryland of carrying a handgun without a
  license, which offense was punishable by up to three years
  imprisonment (*see* Doc. 1 ¶¶ 38-39);

- Binderup was convicted of having unlawful sexual contact with a minor, which offense was punishable by up to five years imprisonment (*see id*. at ¶¶ 55-56);

- Miller was convicted of making unsworn falsification to authorities and using an altered window tint exemption certificate, the latter of which was an offense punishable by up to five years imprisonment. *See id*. at ¶¶ 71-73.

As a result, the Individual Plaintiffs are disqualified from obtaining a concealed carry license under § 6109(e)(1)(viii).   Plaintiffs allege that the Individual Plaintiffs "meet all the requirements for the issuance of a [concealed carry license] except that of § 6109(e)(1)(viii). . . ." Doc. 1 ¶ 138.

The Individual Plaintiffs can restore their eligibility to obtain a license under § 6123 if they obtain a pardon from the Governor of the state in which they were convicted or otherwise have their convictions overturned.  *See* 18 Pa.C.S. § 6123. The Individual Plaintiffs do not allege that they have made any efforts to obtain such relief before bringing this lawsuit.  In addition, while Plaintiffs purport to challenge § 6108, which restricts the unlicensed carrying of weapons on the public property and public streets of Philadelphia, Plaintiffs do not allege that any of the Individual Plaintiffs reside in Philadelphia, work in Philadelphia, spend substantial time in Philadelphia or face any security threats in Philadelphia.

## C.    The Complaint

Plaintiffs allege that the Individual Plaintiffs "desire to obtain a [concealed carry license] so that they" may "lawfully carry or otherwise transport a loaded or

unloaded, operable handgun on their person, in public and in motor vehicles, for self-defense and all lawful purposes."  Doc. 1 ¶ 137.  Thus, "[t]he real essence of Plaintiffs' claims centers upon the fact that they cannot obtain a concealed-carry license because of their" prior criminal convictions "under the limitations of Section 6109, and to some extent, Section 6107" and Section 6108 "limits what they can do, vis-à-vis firearms, without a license."  *Lara*, 2021 WL 1432802, at *11.

### D.    The History Of Pennsylvania's Uniform Firearms Act

Pennsylvania has long restricted the possession and use of firearms in public through various statutory measures, some of which predate the signing of the Declaration of Independence in 1776.   *See, e.g., Commonwealth v. McKown*, 79 A.3d 678, 700 (Pa. Super. Ct. 2013) ("Laws regulating the carrying of firearms predate the earliest incarnation  of the Pennsylvania Constitution") (Fitzgerald, J., concurring); Act of Dec. 24, 1774, 8 St. L. 410, Ch. 705, 1 Sm. L. 421, Ch. 703 (banning public discharge of firearms "at or near New Year's Day"); Act of Aug. 26, 1721, 3 St. L. 254, Ch. 246 (prohibiting the carrying of a gun or hunting on lands other than on one's own land without license or permission).  At least by 1864, Pennsylvania had enacted a law prohibiting the carrying of concealed deadly weapons, including firearms.

> This tradition ["of bans on concealed carry of firearms"
> dates] back to 1813 and the following decades, at least

10

in some Southern and border states, as well as in Indiana, and by the end of the 19th century the constitutionality of such bans had become pretty broadly accepted.' Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and a Research Agenda,* 56 UCLA L. Rev. 1443, 1516 (2009) (footnotes omitted).

*McKown*, 79 A.3d at 697 n. 4 (Fitzgerald, J., concurring) (alterations in original).

In *Wright v. Commonwealth*, 77 Pa. 470, 471 (1875), the Supreme Court of Pennsylvania held that an 1864 law that banned the malicious carrying of concealed weapons in Schuylkill County "has no protection under the 21st section of the Bill of Rights, saving the right of the citizens to bear arms in defense of themselves and the state."   A similar law was later passed in 1875.   *See Commonwealth v. Lanzetti*, 97 Pa. Super. 126, 127 (1929) ("The Act of 18th of March, 1875, P.L. 33, provides, 'Any person within this Commonwealth who shall carry any fire-arms … or any other deadly weapon, concealed upon his person, with the intent therewith unlawfully and maliciously to do injury to any other person, shall be deemed guilty of a misdemeanor; etc.'").   Pennsylvania subsequently enacted its first Uniform Firearms Act in 1931 "to regulate and license the  sale, transfer, and possession of certain firearms, prescribing penalties, etc."  *Henry v. Pechin*, 31 Pa. D. & C. 484 (Quar. Sess. 1937) (*citing* the Uniform Firearms Act of June 11, 1931, P. L. 497, 18 P.S. § 1585).   The Act has since been amended on several occasions and its current iteration was enacted in

1995.   As explained by Justice Fitzgerald, "the modern Pennsylvania license requirement" that Plaintiffs seek to challenge in this case "has been codified" in Pennsylvania law "for more than eighty years."   *McKown*, 79 A.3d at 698 (Fitzgerald, J. concurring).

### E.   Plaintiffs Overstate The Reach Of Pennsylvania's Firearm Laws

As described above, Plaintiffs assert that §§ 6106-6109, collectively and through their interaction, deprive people of rights secured by the Second Amendment.   However, "[a]n examination of the challenged provisions, individually and read together, shows that the prohibitions effectuated are not as broad as have been characterized by Plaintiffs."  *Lara*, 2021 WL 1432802, at *5.

*First*, the licensure requirement and restrictions in § 6106 only apply to "firearms," which are defined as short-barreled weapons such as handguns.   In addition, § 6106 only prohibits the concealed carrying of firearms without a license and the transportation of firearms in motor vehicles when drivers are engaged in unauthorized activities.   Thus, the statute does not prohibit people from carrying guns other than firearms concealed on their persons while outside of their homes or in their vehicles.   Nor does the statute limit the open carrying of firearms or any other weapons in public or in vehicles when drivers are engaged in an authorized activity, including traveling to or from a shooting range, gun shop or hunting trip.

*Second*, while § 6107 limits the open carrying of firearms without a license during declared states of emergency, these "limitations are location-specific and apply only to public streets and property." *Lara*, 2021 WL 1432802, at *6.

> Further, the plain language of Section 6107 carves out two classes of exceptions from its limitation on open-carry for: (1) "[those] actively engaged in a defense of that person's life or property from peril or threat; and (2) all of those exceptions in Section 6106(b) (permitting concealed carry without a license)."

*Id*. (quoting 18 Pa. C.S. § 6107(a)(1)–(2)) (alterations in original).  Thus, the plain language of § 6107 "include[s] an exception permitting" the Individual Plaintiffs and anyone else in Pennsylvania without a concealed carry license "to use guns in self-defense." *Id*. at *12 n.7.

*Third*, the limitations in § 6108 are even more location-specific and apply only to the public property and public streets in Philadelphia.  The legislative purpose of this provision is twofold:

> First, as the most populated city in the Commonwealth with a correspondingly high crime rate, the possession of a weapon on a city street, particularly the brandishing of a weapon, can invoke a fearful reaction on behalf of the citizenry and the possibility of a dangerous response by law enforcement officers.  Second, a coordinate purpose is to aid in the efforts of law enforcement in the protection of the public; in Philadelphia, the police are empowered to arrest an individual for overtly carrying a firearm without first determining if it is licensed or operable.

*Commonwealth v. Scarborough*, 89 A.3d 679, 687-88 (Pa. Super. Ct. 2014).  The limitations in § 6108 do not apply to people with a concealed carry license or those who are exempt from licensing under § 6106(b).

**Fourth**, the licensing disabilities in § 6109(e)(1)(viii) only apply to people convicted of crimes that are punishable by a term of imprisonment by up to one year or more; they do not apply to people convicted of lesser offenses.   In addition, the language of the statute exempts people who obtain a pardon from the Governor or otherwise have their convictions overturned.   Thus, the restrictions do not apply to the millions of first time offenders that are eligible for and successfully complete Accelerated Rehabilitative Disposition or other diversion programs.

## STATEMENT OF QUESTIONS INVOLVED

I.   Do Plaintiffs fail to state a Second Amendment claim when the conduct regulated by the Pennsylvania laws challenged by Plaintiffs falls outside the scope of the Second Amendment's guarantee?

Suggested answer:  yes.

II.   Do Plaintiffs fail to state a Second Amendment claim when Pennsylvania undoubtedly has a significant, substantial and important interest in protecting its citizens' safety and there is a reasonable fit between that interest and the Pennsylvania laws challenged by Plaintiffs?

Suggested answer:  yes.

## ARGUMENT

The Complaint should be dismissed for "failure to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).[2]  The Third Circuit applies a "two-pronged approach" to facial challenges of state laws under the Second Amendment.  *United States v. Marzzarella*, 614 F.3d 85, 89 (3d. Cir. 2010).  "First, we ask whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee.  If it does not, our inquiry is complete."  *Id*. (internal citation and footnote omitted).  If it does, then courts should evaluate the law by applying "intermediate scrutiny."  *Id*. at 97.

Here, Plaintiffs' Second Amendment claims fail because the conduct regulated by the laws challenged by Plaintiffs is not within the scope of the Second Amendment.  In addition, the challenged laws withstand intermediate scrutiny because they serve a "substantial or important interest" and fit reasonably with that interest.  *Id*. at 98.  The Complaint should be dismissed for both of these separate and independent reasons.

---

[2]    "The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  "[A] District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Id*. at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

I.      **THE RIGHT TO BEAR ARMS PROTECTED BY THE SECOND AMENDMENT IS A LIMITED RIGHT**

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  In *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008), the Court held "that the Second Amendment conferred an individual right to keep and bear arms."  In *McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010), the Court held that the right to keep and bear arms applies to the states via the Due Process Clause of the Fourteenth Amendment.  However, the Court did not hold in either case that the right was absolute or anywhere near as broad as Plaintiffs assert in this case.  To the contrary, *Heller* found that "[l]ike most rights, the right secured by the Second Amendment is not unlimited."  554 U.S. at 626.

> [N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

554 U.S. at 626-27.  The Court "repeat[ed] those assurances" in *McDonald*.  561 U.S. at 786.

"Taken together, these cases made clear that 'Second Amendment guarantees are at their zenith within the home.'"  *Drake v. Filko*, 724 F.3d 426, 430

(3d Cir. 2013) (quoting *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 89 (2d Cir. 2012)).  "Outside of the home, however, we encounter the 'vast terra incognita' recognized by the Fourth Circuit in *United States v. Masciandaro*, 638 F.3d 458, 475 (4th Cir.2011)."  *Id.*  As such, the Third Circuit has "decline[d] to definitively declare that the individual right to bear arms for the purpose of self-defense extends beyond the home," and has "instead recognize[d] that the Second Amendment's individual right to bear arms <u>may</u> have some application beyond the home."  *Id.* at 431 (emphasis in original).[3]

## II.  PENNSYLVANIA'S FIREARM LAWS DO NOT REGULATE CONDUCT PROTECTED BY THE SECOND AMENDMENT

The Pennsylvania laws Plaintiffs purport to challenge in this case regulate the carrying of concealed firearms in public and the transport of loaded firearms in vehicles.  They also regulate the unlicensed carrying of weapons on public

---

[3]     Contrary to *Heller*, *McDonald* and *Drake*, Plaintiffs assert in this case that the Second Amendment applies unequivocally beyond the home and is essentially unbounded:

> The right to keep and bear arms includes, <u>but is not limited to</u>, the right of individuals to acquire, keep, carry, and transport loaded and unloaded, operable handguns on their person in public for all lawful purposes including self-defense and in case of confrontation, in public places, on public streets, sidewalks, and spaces, and in their motor vehicles.

Doc. 1 ¶ 135 (emphasis added).

property and public streets during declared states of emergency by people who are not actively engaged in self-defense and unlicensed carrying on the public property and public streets of Philadelphia.   Plaintiffs' claims fail because the conduct regulated by these laws is not protected by the Second Amendment.

**A.      The Right To Bear Arms Does Not Include The Right To Carry Concealed Firearms Or To Transport Loaded Firearms In Vehicles**

Plaintiffs assert that they "have a fundamental, constitutionally guaranteed right to carry loaded, operable firearms on their person, outside their homes, while in public and in motor vehicles, for lawful purposes including immediate self-defense," and that §§ 6106 and 6109 are unconstitutional to the extent that they interfere with that right.   Doc. 1 ¶ 3.   Thus, the crux of Plaintiffs' claims is "that Section 6109 limits the issuance of a concealed carry permit to individuals" convicted of certain criminal offenses "and Section 6106 criminalizes concealed carry and transport without a license."   *Lara*, 2021 WL 1432802, at *11. Plaintiffs' claims fail because the Second Amendment does not protect the carrying of concealed weapons or the transport of loaded firearms.

Section 6109(a) states expressly that "[a] license to carry a firearm shall be for the purpose of carrying a firearm concealed on or about one's person or in a vehicle throughout this Commonwealth."   18 Pa.C.S. § 6109(a).   But neither purpose is safeguarded by the Second Amendment.   The Supreme Court has long

held that the right protected by the Second Amendment does not include the carrying of concealed weapons. *See Robertson v. Baldwin*, 165 U.S. 275, 281-82 (1897) ("the right of the people to keep and bear arms (article 2) is not infringed by laws prohibiting the carrying of concealed weapons"); *see also Heller*, 554 U.S. at 626 ("the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues"); *Peterson v. Martinez*, 707 F.3d 1197, 1211 (10th Cir. 2013) ("the Second Amendment does not confer a right to carry concealed weapons").

Courts have also consistently held that there is "no Second Amendment right for members of the public to transport loaded and non-encased firearms in their vehicles without a concealed carry permit." *Clark v. City of Shawnee, Kansas*, 228 F. Supp. 3d 1210, 1232 (D. Kan. 2017); *see McKown*, 79 A.3d at 690 ("We point out that neither the Second Amendment to the United States Constitution, nor the Pennsylvania Constitution, bestows on any person the right to carry a concealed firearm or transport a loaded firearm in a vehicle."). In addition, the "Pennsylvania license requirement" for concealed weapons and transport that Plaintiffs seek to challenge in this case "has been codified" in Pennsylvania law "for more than eighty years." *McKown*, 79 A.3d at 698 (Fitzgerald, J. concurring).

Thus, the restriction on licensing in § 6109(e)(1)(viii) and the restrictions on concealed carry and transport in § 6106 that apply to people without a license do not violate the Second Amendment because they regulate conduct that is not protected by the Second Amendment.  Accordingly, Plaintiffs' claims challenging these laws fail under the first prong of the *Marzzarella* test and should be dismissed for this reason alone.

### B. The Right To Bear Arms Does Not Include The Right To Carry Weapons On Public Property And Public Streets During Declared States Of Emergency For Purposes Other Than Self-Defense

Plaintiffs also challenge § 6107, which limits people without a concealed carry license from carrying weapons on public property and public streets during declared states of emergency when they are not actively engaged in self-defense. Plaintiffs' challenge to § 6107 also fails because the conduct regulated by § 6107 falls outside the scope of the Second Amendment in multiple respects.

*First*, the Third Circuit has held that there is no broad Second Amendment right to carry weapons on public property and public streets.  In *Drake* the Court heard a Second Amendment challenge to New Jersey's Handgun Permit Law that required individuals to demonstrate a "justifiable need" to carry a handgun "openly or concealed" for self-defense in public.  724 F.3d at 433 (emphasis in original). After reviewing the "historical laws" in other states "regulating or prohibiting the carrying of weapons in public," the Court observed that the New Jersey law "does

20

not go as far as some of the historical bans on public carrying; rather, it limits the opportunity for public carrying to those who can demonstrate a justifiable need to do so." *Id.* at 432–33.  Accordingly, the Court held that the law "fits comfortably within the longstanding tradition of regulating the public carrying of weapons for self-defense" and therefore "regulates conduct falling outside the scope of the Second Amendment's guarantee." *Id.* at 433–34.

Section 6107 fits even more comfortably within that tradition and also does not regulate conduct protected by the Second Amendment.  Unlike the "historical" and constitutional "bans" on public carrying in general that were discussed by the Court in *Drake* (*id*. at 433), § 6107 only limits the carrying of weapons in public by people without a license.  In addition, whereas the New Jersey law upheld in *Drake* limited the issuance of licenses to those who could demonstrate a "justifiable need," § 6109 does the opposite by requiring that a license be issued to an applicant unless "good cause exists to deny the license."  18 Pa.C.S. § 6109(e).  Further, under New Jersey law, "any person who has been convicted of any crime" is categorically prohibited from obtaining a license.   N.C.S.A. § 2C:58-3c(1).  Under Pennsylvania law, the licensing restrictions in § 6109(e)(1)(viii) only apply to those convicted of crimes that are punishable by more than one year in jail.

Thus, Pennsylvania's laws are clearly less restrictive than the historical laws that the Court considered in *Drake* as well as the New Jersey law that the Court upheld.

**Second**, the limitations in § 6107 only regulate the carrying of weapons on public property and public streets.  Because the broader and more generalized public carrying bans considered in *Drake* were constitutional, it necessarily follows that the more limited "location-specific" bans in § 6107 are also constitutional. *Lara*, 2021 WL 1432802, at *6; *see id.* at *12 (holding that § 6107 did not violate the Second Amendment because "[t]he limitations only apply to public streets and public property").

**Third**, § 6107 is not only limited with respect to place, it is also limited with respect to time.  In particular, § 6107 only applies during declared states of emergency when public property and public streets become "sensitive places" that may lawfully be subject to carrying restrictions.  *See Heller*, 554 U.S. at 626 ("nothing in our opinion should be taken to cast doubt on . . . laws forbidding the carrying of firearms in sensitive places. . . .").  Section 6107 does not regulate conduct protected by the Second Amendment for this separate reason as well.

**Fourth**, the limitations in § 6107 do not apply to anyone who is "[a]ctively engaged in a defense of that person's life or property from peril or threat. . . ."  18 Pa.C.S. § 6107(a)(1).  "[I]ndividual self-defense is 'the central component' of the

Second Amendment right." *McDonald*, 561 U.S. at 767 (quoting *Heller*, 554 U.S. at 599). Because § 6107 "expressly preserve[s] this right" its other limitations do not conflict with the Second Amendment. *Lara*, 2021 WL 1432802, at *12. Indeed, the right to self-defense preserved in § 6107 is the functional equivalent of the "justifiable need" standard upheld by the Court in *Drake*. *See* N.J. Admin. Code § 13.54-2.4(d)(1) (to show "justifiable need" applicants must "specify in detail the urgent necessity for self-protection, as evidenced by specific threats or previous attacks, which demonstrate a special danger to the applicant's life that cannot be avoided by means other than by issuance of a permit to carry a handgun"). Stated differently, the facts that applicants must present to establish "justifiable need" under New Jersey law would also establish that they are actively engaged in self-defense within the meaning of § 6107.

In sum, the conduct regulated by § 6107 is outside the scope of the Second Amendment for each of these reasons and Plaintiffs' challenge to § 6107 should also be dismissed under the first prong of the *Marzzarella* test.

## C. The Right To Bear Arms Does Not Include The Right To Carry Weapons On Public Property And Public Streets In Highly Populated Cities With High Crime Rates

Lastly, Plaintiffs challenge § 6108, which prohibits the carrying of weapons on the public property and public streets of Philadelphia by people without a license. Plaintiffs' challenge fails because, as described above, there is no broad

Second Amendment right to carry weapons on public property or public streets by people without a license. *See Drake supra.* In addition, Philadelphia is "the most populated city in the Commonwealth with a correspondingly high crime rate. . . ." *Scarborough*, 89 A.3d at 686. As a result, the public streets and public property of Philadelphia are "sensitive places" and the restrictions on unlicensed public carrying in § 6108 are "presumptively lawful" for this separate reason as well. *Heller*, 554 U.S. at 626.

## III. PENNSYLVANIA'S FIREARM LAWS SERVE A SUBSTANTIAL AND IMPORTANT INTEREST AND FIT REASONABLY WITH THAT INTEREST

As described above, the Pennsylvania laws challenged by Plaintiffs regulate conduct that is outside the scope of the protections afforded by the Second Amendment. As such, Plaintiffs' claims fail and should be dismissed for this reason alone. *See Marzzarella*, 614 F.3d at 89 (if "the challenged law imposes a burden on conduct falling [outside] the scope of the Second Amendment's guarantee" then "our inquiry is complete"). However, even if Plaintiffs' claims were to implicate the Second Amendment (which they do not), the claims would still fail as a matter of law. Claims challenging laws that regulate conduct covered by the Second Amendment are assessed by applying "intermediate scrutiny." *Id.* at 97. "Intermediate scrutiny appropriately places the burden on the government to justify its restrictions, while also giving governments considerable flexibility to

regulate gun safety." *Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1126 (10th Cir. 2015). Here, the Pennsylvania laws at issue withstand intermediate scrutiny because the Commonwealth of Pennsylvania "has, undoubtedly, a significant, substantial and important interest in protecting its citizens' safety" and there is a "reasonable fit" between that interest and the challenged laws. *Drake*, 724 F.3d at 437. Plaintiffs' Second Amendment claims should be dismissed for this separate reason as well.

Pennsylvania's legislators "have made a policy judgment" that when an individual carries a weapon on public property and public streets during a declared state of emergency, or on the public property and public streets of a highly populated city like Philadelphia with a high crime rate, "he or she necessarily exposes members of the community to a somewhat heightened risk that they will be injured by that [weapon]." *Drake*, 724 F.3d at 439. There is also a valid concern that the public carrying of a weapon in such sensitive places may "evoke a fearful reaction on behalf of the citizenry and the possibility of a dangerous response by law enforcement officers." *Scarborough*, 89 A.3d at 687.

Pennsylvania "has decided that this somewhat heightened risk to the public may be outweighed by the potential safety benefit" to the numerous individuals who are permitted to carry weapons in these sensitive places, including anyone with a concealed carry license or people exempt from licensing under § 6109 and

those outside of Philadelphia who are actively engaged in self-defense. *Drake*, 724 F.3d at 439.  In addition, neither § 6107 nor § 6108 limit the carrying of firearms on places other than public streets and public property.  "This measured approach neither bans public handgun carrying nor allows public carrying by all firearm owners; instead, the [Pennsylvania] Legislature left room for public carrying" to numerous people in various places based on the reasonable exercise of its judgment.  *Id*. at 440.

The Court should refuse Plaintiffs' "invitation to intrude upon the sound judgment and discretion" of the Commonwealth of Pennsylvania and conclude that the challenged Pennsylvania laws "withstan[d] intermediate scrutiny." *Id*.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss should be granted and the Complaint should be dismissed.

Respectfully submitted,

**JOSH SHAPIRO**
**Attorney General**

By:   *s/ Alexander T. Korn*
                  **ALEXANDER T. KORN**
                  **Deputy Attorney General**

**Office of Attorney General**        **Attorney ID 323957**
**15th Floor, Strawberry Square**
**Harrisburg, PA 17120**
**Phone: (717) 712-2037**        **KAREN M. ROMANO**
                  **Chief Deputy Attorney General**
akorn@attorneygeneral.gov        **Civil Litigation Section**

**Date:  July 15, 2021**        **Counsel for Defendant**

27

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIO SUAREZ, DANIEL** | : | |
| **BINDERUP, DANIEL MILLER,** | : | |
| **FIREARMS POLICY COALITION,** | : | |
| **INC.** *and* **SECOND AMENDMENT** | : | **No. 1:21-CV-0710** |
| **FOUNDATION,** | : | |
| **Plaintiffs** | : | **Judge Conner** |
| | : | |
| **v.** | : | **Electronically Filed Document** |
| | : | *Complaint Filed 04/16/21* |
| **ROBERT EVANCHICK,** | : | |
| **Defendant** | : | |

## CERTIFICATE OF WORD COUNT

I, Alexander T. Korn, Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that the foregoing brief contains 6,361 words.

## CERTIFICATE OF OF SERVICE

I further certify that on July 15, 2021, I caused to be served a true and correct copy of the foregoing document titled Defendant's Brief in Support of his Motion to Dismiss to the following:

## VIA ELECTRONIC FILING

**Adam J. Kraut, Esquire**
**Firearms Policy Coalition**
**1215 K Street, 17th Floor**
**Sacramento, CA  95814**
akraut@fpclaw.org
*Counsel for Plaintiffs*

**Joshua G. Prince, Esquire**
**Prince Law Office PC**
**646 Lenape Road**
**Bectelsville, PA  19505**
joshua@princelaw.com
*Counsel for Plaintiffs*

*s/ Alexander T. Korn*
**ALEXANDER T. KORN**
Deputy Attorney General