# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIO SUAREZ;** | : | Civil Rights Complaint |
| **DANIEL R. BINDERUP;** | : | 42 U.S.C. § 1983 |
| **DANIEL F. MILLER;** | : | |
| **FIREARMS POLICY** | : | Docket No. 1:21-cv-00710 |
| **COALITION, INC.; and,** | : | |
| **SECOND AMENDMENT** | : | |
| **FOUNDATION,** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **COL. ROBERT EVANCHICK,** | : | |
| Commissioner of Pennsylvania | : | |
| State Police, | : | |
| Defendant. | : | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I. **Introduction** ............................................................. 1

II. **Procedural History** ................................................ 6

III. **Counter-Statement of Facts** ............................. 7

   A. <u>Facts Related to the Laws of the Commonwealth of Pennsylvania</u> ........................................................ 7

   B. <u>Facts Specific to Julio Suarez</u> ........................... 13

   C. <u>Facts Specific to Daniel Binderup</u> ................... 16

   D. <u>Facts Specific to Daniel Miller</u> ....................... 19

   E. <u>Facts Specific to All Individual Plaintiffs</u> ...... 22

   F. <u>Facts Specific to Institutional Plaintiffs</u> ......... 24

   G. <u>Facts Specific to Mr. Brian Davey</u> ................. 25

   H. <u>Defendant's Misstatement of Facts</u> ................. 26

     i. *Plaintiffs are not "felons"* ......................... 26

     ii. *Section 6109(e)(1)(viii) prohibits far more than felons* .............. 27

     iii. *The definition of "firearm" found in Section 6102 does not apply to Section 6106(b)* ........................ 27

     iv. *The Commonwealth is still under an "emergency proclaimed by a State or municipal governmental executive"* .... 28

     v. *Plaintiffs do allege a desire and intent to carry firearms in Philadelphia* ................. 30

     vi. *Section 6107 bars the open carrying of all firearms and neither Sections 6107 nor 6108 are as "location-specific" as Defendant contends* ........................ 31

IV. **Counter Statement of Questions Involved** ............................. 32

V. **Argument** ............................................................ 32

   A. <u>Introduction</u> .................................................. 32

i

B.    Defendant's Regulations Violate the Second Amendment Right to Bear Arms in Public ........................................................ 34

C.    The *Bruen* Court Did Not "Explicitly Endorse The Constitutionality" of Defendant's Regulations ............................ 43

D.    Sections 6106-6109 Are Not "Felon Dispossession Statutes" ..... 44

E.    Sections 6106 Is Not "Outside the Scope of the Second Amendment" ................................................................................. 45

F.    Plaintiffs Are Not Required to Seek A Pardon ............................ 46

G.    Plaintiffs Claims Relative to Section 6107 Are Not Moot ........... 46

H.    Plaintiffs Do Not Lack Standing to Challenge Section 6108 ...... 47

I.    Defendant Is Not Entitled to Summary Judgment ..................... 47

**VI. Conclusion** .......................................................................................... 48

# Table of Authorities

## Cases

*Binderup v. Att'y Gen. United States*, 836 F.3d 336 (3d Cir. 2016) ........................................................................ 13, 16, 46

*Caetano v. Massachusetts*, 577 U.S. 411 (2016) ........................... 2, 34, 41

*Commonwealth v. Goosby*, 380 A.2d 802 (1977) ..................................... 31

*Commonwealth v. Hawkins*, 547 Pa. 652 (1997) ...................................... 5

*Commonwealth v. Hopkins*, 747 A.2d 910 (Pa. Super. Ct. 2000) ........... 32

*Commonwealth v. Lopez*, 523 Pa. 126 (1989) ........................................... 9

*Commonwealth v. Turner*, 488 A.2d 319 (Pa. Super. Ct.1985) ............... 8

*District of Columbia v. Heller*, 554 U.S. 570 (2008)........................passim

*Malloy v. Hogan*, 378 U.S. 1 (1964) ....................................................... 37

*McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010) .................passim

*Miller v. Sessions*, 356 F.Supp.3d 472 (E.D. Pa. 2019)........................... 19

*New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022).................................................................................passim

*Ramos v. Louisiana*, 140 S.Ct. 1390 (2020) ........................................... 37

*Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498 (1911) ................. 47

*Timbs v. Indiana*, 139 S.Ct. 682 (2019).................................................. 37

## Statutes

18 Pa.C.S. § 106 ....................................................................................... 24

18 Pa.C.S. § 501 ................................................................................... 9

18 Pa.C.S. § 6102 ......................................................................... passim

18 Pa.C.S. § 6106 ......................................................................... passim

18 Pa.C.S. § 6107 ......................................................................... passim

18 Pa.C.S. § 6108 ......................................................................... passim

18 Pa.C.S. § 6109 ......................................................................... passim

18 Pa.C.S. § 6119 ............................................................................. 25

18 U.S.C. § 921 ................................................................................. 4

18 U.S.C. § 922 ............................................................................ passim

Md.Ann.Code art. 27 § 36B .......................................................... 13

## Other Authorities

Bryan A. Garner, *et al.*, The Law of Judicial Precedent 44
    (2016) ..................................................................................... 43

Plaintiffs Julio Suarez, Daniel Binderup, Daniel Miller, Firearms Policy Coalition, Inc., and the Second Amendment Foundation, by and through their counsel, hereby submit this Brief in Opposition to the Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment.

## I.   Introduction

Reflecting Defendant's absolute inability to defend the constitutionality of 18 Pa.C.S. §§ 6106(a)-(b), 6107(a), 6108, 6109(e)(1)(viii), not only does he fail to make *any* argument or cite *any* law around the time of Founding, as required by *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), that the challenged laws and regulation are consistent with the Nation's tradition of firearm regulation, but he resorts to making false allegations that Plaintiffs are "felons" and that Plaintiffs are not currently aggrieved by Section 6107 and 6108, while in outright defiance of the U.S. Supreme Court's holdings in *District of Columbia v. Heller*, 554 U.S. 570, 584 (2008) (declaring that—at the *core* of the Second Amendment—to "bear arms" means to "wear, bear, or *carry…upon the person or in the clothing or in a pocket*, for the purpose…of *being armed and ready for offensive or*

1

*defensive action* in a case of conflict with another person"), *Caetano v. Massachusetts*, 577 U.S. 411, 413-14 (2016)(Alito J., concurring) (declaring that the possession and use of *even stun guns in public* is protected by the Second Amendment, and most recently), and *Bruen*, 142 S. Ct. 2111 (declaring that the Second Amendment protects the carrying of firearms outside the home), he continues to actively enforce Sections 6106(a)-(b), 6107(a), 6108, 6109(e)(1)(viii) and the regulations, policies, enforcement practices, and actions related thereto (hereinafter collectively "regulations") that not only effectively bar the Individual Plaintiffs and the Institutional Plaintiffs' similarly situated members (hereinafter collectively "Plaintiffs") from wearing, bearing, and carrying/transporting firearms, including upon their person or in a pocket—whether openly or concealed, loaded or unloaded—outside of their homes, but also threaten Plaintiffs with draconian criminal sanctions should they do so, which if convicted for a violation thereof, would result in them being perpetually prohibited from firearm ownership under federal law, pursuant to 18 U.S.C. § 922(g)(1). But the breadth of these unconstitutional regulations goes even further, making felons out of anyone who, without a License to Carry Firearms

(hereinafter "LTCF"), stops to pick up a friend, grab a cup of coffee, or utilize a bathroom, while carrying/transporting his/her firearms to an extremely limited number of locations that are permitted by Defendant.

Plaintiffs only desire to exercise their core, fundamental, individual right to carry and transport firearms in public and in vehicles for all lawful purposes including immediate self-defense—a right the Constitution guarantees in its text. *See McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 767 (2010)("[I]ndividual self-defense is 'the central component' of the Second Amendment right"); *Heller*, 554 U.S. at 592 (The right to keep and bear arms guarantees "the individual right to possess and carry weapons in case of confrontation."); *Bruen*, 142 S.Ct. at 2122 ("[T]he Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home."). As addressed in Plaintiffs' Brief in Support of Their Motion for Summary Judgment (Doc. 40), nothing in the Constitution's text nor the Nation's historical tradition of firearm regulation supports the categorical ban that the prior and continuing enforcement of Defendant's regulations impose on Plaintiffs. Defendant's regulations thus unconstitutionally prohibit and criminalize lawful, constitutionally

protected conduct that Plaintiffs seek to engage in, including, but not limited to, carrying and transporting firearms for self-defense, including during declarations of emergency, and merely being able to stop for a bathroom break, grab a cup of coffee or bite to eat, or pick up a friend on the way to or from a firearm shooting range.

Even though each of the individual Plaintiffs in this case previously brought constitutional challenges against the enforcement of a federal law that putatively prohibited them from possessing firearms and ammunition and in each instance, the courts determined—under the far more stringent *pre*-Bruen 2-step framework where the burden was on the Plaintiffs—that the prohibition against them was unconstitutional and that they all continued to enjoy their Second Amendment rights, Defendant continues to enforce his regulations against them—the text of which is almost verbatim that of the federal law that the Individual Plaintiffs successfully challenged [1] — depriving Plaintiffs of their right and ability to carry and transport firearms. While Respondent contends that individuals in Pennsylvania are

---

[1] *Cf.* 18 Pa.C.S. § 6109(e)(1)(viii) as defined by 18 Pa.C.S. § 6102 with 18 U.S.C. § 922(g)(1) as defined by 18 U.S.C. § 921(a)(20).

purportedly not barred from openly carrying firearms in public absent a LTCF (except in the City of Philadelphia),[2] due to a myriad of laws, multiple gubernatorially declared States of Emergency – one of which was in effect for over three and a half years, and one was in effect when Defendant submitted his Motion – and the general prohibition of utilizing any mode of conveyance while carrying or otherwise transporting a firearm, Plaintiffs are unable to exercise this fundamental right.

As the Defendant's regulations clearly, palpably, and unconstitutionally infringe on Plaintiffs' Second Amendment rights, this Court should deny Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment.

---

[2] While many cite to the Pennsylvania Supreme Court's decision in *Commonwealth v. Hawkins*, 547 Pa. 652, 657, fn. 4 (1997) for the proposition that "[e]xcept in Philadelphia, firearms may be carried openly without a license," the Court did not address the Commonwealth's draconian carry/transportation laws in relation to the open carry of firearms. However, the Superior Court has held that "circumstantial evidence" that an individual without a license "travelled at least some distance on a public street" with a firearm before reaching his destination is sufficient to place him outside the scope of the limited exceptions found in Section 6106(b); thereby, reflecting that the open carry of firearms is limited to the extremely limited, enumerated locations in Section 6106(b). *Commonwealth v. Hopkins*, 747 A.2d 910, 918 (Pa. Super. Ct. 2000)

## II.   Procedural History

Plaintiffs filed the underlying action on April 16, 2021. *See* Doc. 1. Defendant filed a motion to dismiss on June 17, 2021 (*see* Doc. 13), and a brief in support on July 15, 2021. *See* Doc. 24. Thereafter, the Parties agreed to a limited reopening of discovery and for the matter to be otherwise stayed, pending a decision from the U.S. Supreme Court in *Bruen*. *See* Doc. 31. After notifying this Court of the decision in *Bruen*, the Court directed the Parties to file a Joint Pre-Trial Schedule, which the Court approved on July 6, 2022. *See* Doc. 35. Pursuant to that Order, Plaintiffs timely filed their Motion for Summary Judgment and supportive documents (Docs. 39-40) and Defendants timely filed their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Docs. 41-43).

## III.   Counter-Statement of Facts [3]

### A.   Facts Related to the Laws of the Commonwealth of Pennsylvania

While Pennsylvania purportedly allows individuals to openly carry firearms without a license (except in Philadelphia), [4] it has broadly criminalized the carrying of loaded concealed firearms in public and in vehicles by ordinary citizens, unless they have a valid LTCF. Statement of Material Facts (Doc. 39-6, hereinafter, "SOMF"), ¶¶ 1-3. The Commonwealth also generally bars the transportation and carrying of *loaded and unloaded* firearms by law-abiding citizens in public for lawful purposes, including self-defense, unless they first acquire a LTCF to carry a firearm under 6109. *Id.*

---

[3] As Local Rule 7.8(a) prohibits incorporation, Plaintiffs respectfully notify this Court that subsections A-G, *infra*, are virtually identical to Plaintiffs' Statement of Facts in their Brief in Support of Their Motion for Summary Judgment (Doc. 40, pgs. 6-25), with the only changes being updates in the references to Defendant's current contentions in his most recent brief (Doc. 43).

However, the totality of subsection H is new and specific to Defendant's contentions in his most recent brief (Doc. 43).

[4] *See* fn 2, *supra*.

Specifically, except as provided in 18 Pa.C.S. § 6106(a)(2),[5] "any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree." SOMF, ¶ 4. Thereafter, Section 6106(b) prohibits individuals, in the absence of a LTCF, from transporting firearms, except to extremely limited locations and *only when* transported directly to and from those limited locations.[6]

---

[5] Section 6106(a)(2) reduces the penalty to a first degree misdemeanor if the person is eligible for a LTCF but regardless of whether the individual is convicted of a violation of 6106(a)(1) or (a)(2), both are prohibiting for purposes of purchasing, possessing, and utilizing firearms and ammunition, pursuant to 18 U.S.C. § 922(g)(1).

[6] For example, *inter alia*, as set forth in SOMF, ¶ 7, Plaintiffs are barred from transporting a firearm to a restaurant, a grocery store, mall, and a friend or significant other's home; just to name a few examples of the locations that individuals travel to on a daily/weekly basis that are not enumerated locations in Section 6106(b). Moreover, Plaintiffs are likewise barred from stopping for coffee or to use the bathroom when going to an enumerated location, as they must go directly to and from that enumerated location from another enumerated location. *See* 6106(b)(4),(8),(9), limiting the applicable enumerated locations to going directly to or from 1. a gun range; 2. their home or vacation home; 3. their business; 4. a gun store; and, 5. a hunting location. *See also*, *Commonwealth v. Hopkins*, 747 A.2d at 918 (holding that the open carrying of a firearm is limited to the limited locations enumerated in Section 6106(b) and *Commonwealth v. Turner*, 488 A.2d 319, 323 (Pa. Super. Ct.1985), *abrogated on other grounds,* by

SOMF, ¶ 6.  As a result, an individual, in the absence of a LTCF, is, for example, precluded from: (1) transporting a loaded or unloaded handgun, rifle, or shotgun to a family member's, significant other's or friend's home; [7,8] (2) transporting a loaded or unloaded rifle, shotgun, or handgun to stores of all forms (*e.g.* grocery store, convenience store, specialty store, department store,…etc), malls, restaurants, or Philadelphia; (3)  transporting a loaded or unloaded handgun, rifle, or

---

*Commonwealth v. Lopez*, 523 Pa. 126 (1989)(declaring that a violation of Section 6106 occurs where an individual travels to the home "of a parent, a son or daughter, or any other person with whom the defendant may have had the most close and personal relationship, so long as it is not his own abode; similarly, the crime is committed if the weapon is concealed upon his person while at a business establishment of people with whom he regularly does business, if this is not *his* 'fixed place of business'.") (emphasis in original).

[7] Contrary to Defendant's assertion (Doc. 43, pg. 10), per Section 6106(e)(1), for purposes of the applicable exceptions of Section 6106(b) to the Plaintiffs, a firearm is defined as "any weapon which is designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of the weapon;" thus, including all types of firearms, unlike the general definition of firearm found in 18 Pa.C.S. § 6102.

[8] Also contrary to Defendant's contention that Section 6106 only applies to "transportation of firearms in *motor vehicles*" (Doc. 43, pg. 10 (emphasis added)), Section 6106(a) regulates the "carr[ying of] a firearm in any vehicle" with the term "vehicle" defined extremely broadly in 18 Pa.C.S. § 501, as "[a] conveyance of any kind, whether or not motorized, that is designed to transport people or property." Thus, bikes, horses, rollerskates, rollerblades, and even wheelbarrows constitute "vehicles" to which Section 6106 applies.

shotgun from a successful hunt to a business that processes/butchers the successfully taken game; (4) transporting a loaded or unloaded handgun, rifle, or shotgun from a Federal Firearms Licensee (*i.e.* gun dealer) to another Federal Firearms Licensee or firing range; (5) transporting a loaded or unloaded handgun, rifle, or shotgun from a range to another range or, in the event of malfunction, to a Federal Firearms Licensee to address any mechanical issue with the firearm; and, (6) while transporting a handgun, rifle, or shotgun to or from a range or other permitted location form stopping for bathroom breaks, food, coffee, or to pick up or drop off a friend. SOMF, ¶ 7.

Pennsylvania further prohibits the "carry[ing of] a firearm [9] upon the public streets or upon any public property [10] during an emergency

---

[9] As Defendant acknowledges (Doc. 43, pg. 5-6), per Section 6107(c), a firearm is defined as "any weapon that is designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any weapon."

[10] The "public streets and property" include not only government buildings and spaces but also all roads and sidewalks "used by members of the public," *Commonwealth v. Goosby*, 380 A.2d 802, 806 (1977) (interpreting identically worded provision in 6108), and "circumstantial evidence" that an individual without a license "travelled at least some distance on a public street" with a firearm before reaching his destination is sufficient to place him outside the scope of the exceptions found in Section 6106(b), *Commonwealth v. Hopkins*, 747 A.2d at 918.

proclaimed by a State *or municipal governmental executive*" unless the

individual possesses a valid LTCF. 18 Pa.C.S. § 6107 (emphasis added).

SOMF, ¶ 8. Because of Opioid and COVID-19 [11] declarations of

---

Thus, when Section 6107 is triggered, it constitutes a *de facto* ban on carrying operable firearms without a LTCF in any place that one can only access via a public street or sidewalk—which is to say, virtually any place outside one's own home.

[11] While Defendant is correct (Doc. 43, pg. 6) that during the pendency of this matter, the COVID emergency was ended on June 19, 2021 by the General Assembly and that the opioid emergency was in effect through August 25, 2021, beyond the fact that Governor Wolf's emergency declaration related to the Pittsburgh Fern Hollow Bridge collapse was in effect after his filings (Docs. 41-43) through September 30, 2022 (*see*, https://www.wtae.com/article/bridge-collapse-pittsburgh-gov-wolf-signs-proclamation-of-disaster-emergency/38928541, last visited September 21, 2022), declarations of emergency are extremely common, as reflected on the Pennsylvania Emergency Management Agency ("PEMA") website, which depicts 10 separate states of emergency in 2021 alone. SOMF, ¶¶ 9-12; https://www.pema.pa.gov/Governor-Proclamations/Pages/default.aspx. Even though the opioid and COVID declarations are no longer active, and the Fern Hollow Bridge emergency proclamation ended a mere two weeks ago, there can be no dispute that Plaintiffs are still currently restricted by Section 6107, as it is also triggered by "an emergency proclaimed by a ... municipal governmental executive" and, as just one example of Section 6107's current applicability to Plaintiffs, Philadelphia recently renewed its emergency declaration on April 14, 2022. *See* https://www.phila.gov/media/20220414150539/2022-April-Masking-Order-Executed.pdf.

Even if, *arguendo*, there was not a current state emergency declaration, Plaintiffs' Complaint in relation to Section 6107 is not moot, as not only does it constitutes an issue capable of repetition and

emergency by Governor Wolf, Pennsylvania was under multiple states of emergency during the pendency of this litigation, one of which was in effect for more than 3.5 years and the Fern Hollow Bridge emergency proclamation ended less than two weeks ago. SOMF, ¶ 9-12. Moreover, due to proclamations by a "municipal executive" also triggering the prohibition – for example, Philadelphia's recent renewal of its emergency declaration on April 14, 2022 [12] – Section 6107 continues to restrict the Plaintiffs, and all those similarly situated, from transporting or carrying firearms in public, and upon public streets and public property, even for lawful purposes, including self-defense. SOMF, ¶ 13. Governor Wolf had an opportunity to lift this unconstitutional restriction but vetoed an act passed by the Commonwealth's Legislature, House Bill 1747. SOMF, ¶ 14.

Moreover, 18 Pa.C.S. § 6108 further provides that: "No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless: (1)

---

evading review, per *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911).

[12] *See*, https://www.phila.gov/media/20220414150539/2022-April-Masking-Order-Executed.pdf

such person is licensed to carry a firearm; or (2) such person is exempt from licensing under section 6106(b) of this title." SOMF, ¶ 15. Unless a law-abiding person has a valid LTCF, he or she is further specifically prohibited from carrying firearms in Philadelphia under State law, since it is the only "city of the first class." SOMF, ¶ 16.

### B.   Facts Specific to Julio Suarez

In 1990, Plaintiff Suarez was convicted of a violation of Md.Ann.Code art. 27 § 36B(b), carrying a handgun without a license, for which he received one year probation, as well as 180 days' imprisonment and a $500 fine, which both were suspended. SOMF, ¶ 19. Plaintiff Suarez was only once otherwise charged and convicted of another misdemeanor[13]—and never of a felony offense—prior to or since the charge in 1990. SOMF, ¶20.  He is not disqualified from exercising his Second Amendment rights, as held by the Third Circuit in *Binderup v. Att'y Gen. United States*, 836 F.3d 336 (3d Cir. 2016) (*en banc*). SOMF, ¶ 22. As a result, Plaintiff Suarez lawfully owns and possesses

---

[13] In 1998, over two decades ago, Plaintiff Suarez was convicted in Maryland of a state law misdemeanor for driving under the influence of alcohol. SOMF, ¶ 21.

rifles, shotguns, and handguns, and desires to exercise his right to bear arms by carrying loaded, operable firearms on his person, in public, for lawful purposes including self-defense. SOMF, ¶¶ 23-24.

As he has at all times desired to exercise his right to bear arms by carrying loaded, operable firearms on his person, in public, for lawful purposes including self-defense, in November of 2017, Plaintiff Suarez applied for a LTCF with his County Sherriff and was denied that license by Defendant's Pennsylvania State Police ("PSP"). SOMF, ¶ 25. He subsequently filed a challenge, to which Defendant's PSP responded, stating that he was denied because of his 1990 conviction for "handgun on person: carry/wear" in the State of Maryland was putatively prohibiting under 6109(e)(1)(viii) as a crime punishable by imprisonment for a term exceeding one year. SOMF, ¶ 26.

It is his present intention and desire to be able to lawfully transport and carry all of his firearms within the Commonwealth, including but not limited to being able to, regardless of whether during or in the absence of an emergency proclaimed by a State or municipal governmental executive, travel in a mode of transportation and carry on the public streets and public property throughout the Commonwealth a

loaded, operable firearm on his person for self-defense, defense of his family and others, and in case of confrontation in public requiring defensive action, including transporting and carrying that loaded and operable firearm to, but not limited to: (1) grocery stores, including ones that he frequents, such as GIANT at 455 Eisenhower Dr, Hanover, PA 17331, which is approximately 5 miles from his home; Walmart Supercenter at 495 Eisenhower Dr, Hanover, PA 17331, which is approximately 5 miles from his home; and Weis Markets at 1424 Baltimore St, Hanover, PA 17331, which is approximately 6 miles from his home; (2) stores, including ones that he frequents, such as Sam's Club at 261 Wilson Ave, Hanover, PA 17331, which is approximately 6 miles from his home; (3) malls, including ones that he frequents, such as North Hanover Mall at 1155 Carlisle St, Hanover, PA 17331, which is approximately 6 miles from his home; (4) restaurants, including ones that he frequents, such as C&D Bar & Grill at 6465 York Rd, New Oxford, PA 17350, which is approximately 6 miles from his home; (5) friends' and family members' houses, including ones that he frequents, such as his son's in Gettysburg, PA 17325, which is approximately 14 miles from his home; and Philadelphia for dinner and other activities,

as his wife works for Lockheed Martin and is required to monthly travel to the Philadelphia-area for purposes of her employment and he will be joining her on these trips. SOMF, ¶ 27. Due to the location of his home in relation to all the aforementioned locations, he is unable to transport or carry a firearm on his person, whether concealed or openly, while walking or otherwise traversing on foot the distances between his home and those locations, especially in the event of any purchases at those locations and the need to additionally carry those purchases back to his home. SOMF, ¶ 28.

### C.   Facts Specific to Daniel Binderup

In 1997, Plaintiff Binderup pled guilty to corruption of a minor, as a result of a consensual sexual relationship with a seventeen-year-old employee at his bakery, for which he received three years of probation and a $300.00 fine, plus costs and restitution. SOMF, ¶ 42. He has never been charged with or convicted of any other misdemeanor or felony offense. SOMF, ¶ 43. He is not disqualified from exercising his Second Amendment rights, as held by the Third Circuit in *Binderup v. Att'y Gen. United States*, 836 F.3d 336 (3d Cir. 2016) (*en banc*). SOMF, ¶

44. As a result, Plaintiff Binderup lawfully owns and possesses rifles, shotguns, and handguns and desires to exercise his right to bear arms by carrying loaded, operable firearms on his person, in public, for lawful purposes including self-defense. SOMF, ¶¶ 45-46.

As he has at all times desired to exercise his right to bear arms by carrying loaded, operable firearms on his person, in public, for lawful purposes including self-defense, in March of 2018, Plaintiff Binderup applied for a LTCF with his County Sherriff and was denied that license by Defendant's PSP. Doc. SOMF, ¶¶ 46-47. Plaintiff Binderup subsequently filed a challenge, to which Defendant's PSP responded, stating that he was denied because of his 1997 conviction for corruption of a minor was putatively prohibiting under 6109(e)(1)(viii), as a crime punishable by imprisonment for a term exceeding one year. SOMF, ¶ 48.

It is his present intention and desire to be able to lawfully transport and carry all of his firearms within the Commonwealth, including but not limited to being able to, regardless of whether during or in the absence of an emergency proclaimed by a State or municipal governmental executive, travel in a mode of transportation and carry on

the public streets and public property throughout the Commonwealth a loaded, operable firearm on his person for self-defense, defense of his family and others, and in case of confrontation in public requiring defensive action, including transporting and carrying that loaded and operable firearm to, but not limited to: (1) grocery stores, including ones that he frequents, such as Sharp Shopper at 1100 Sharp Ave, Clay Twp, PA 17522, which is approximately 11 miles from his home; (2) stores and malls, including ones that he frequents, such as Red Rose Commons at 1700 Fruitville Pike, Lancaster, PA 17601, which is approximately 12 miles from his home; (3) restaurants, including ones that he frequents, such as Kountry Kitchen Family Restaurant, 944 Lebanon Rd, Manheim, PA 17545, which is approximately 2 miles from his home; and (4) friends' and family members' houses, including ones that he frequents, such as his friend Scott Secrest, in Manheim, PA 17545, which is approximately 5 miles from his home. SOMF, ¶ 49. Due to the location of his home in relation to all the aforementioned locations, he is unable to transport or carry a firearm on his person, whether concealed or openly, while walking or otherwise traversing on foot the distances between his home and those locations, especially in

the event of any purchases at those locations and the need to additionally carry those purchases back to his home. SOMF, ¶ 50.

D.    Facts Specific to Daniel Miller

In 1998, Plaintiff Miller pled guilty to unsworn falsifications to authorities, and use of an altered PennDot window tint exemption certificate, as a result of his use of the altered certificate during a court proceeding, for which he received a year of probation, plus court costs and restitution. SOMF, ¶ 31. Plaintiff Miller has never been charged with or convicted of any other misdemeanor or felony offense, prior to or since that charge in 1998. SOMF, ¶ 32. He is not disqualified from exercising his Second Amendment rights, as held by the District Court in *Miller v. Sessions*, 356 F.Supp.3d 472 (E.D. Pa. 2019). SOMF, ¶ 33. As a result, Plaintiff Miller lawfully owns and possesses rifles, shotguns, and handguns and desires to exercise his right to bear arms by carrying loaded, operable firearms on his person, in public, for lawful purposes including self-defense. SOMF, ¶¶ 34-35

As, he has at all times desired to exercise his right to bear arms by carrying loaded, operable firearms on his person, in public, for lawful

purposes including self-defense, in April of 2019, Plaintiff Miller applied for a LTCF with his County Sherriff and was denied that license by Defendant's PSP. SOMF, ¶¶ 35-36. Plaintiff Miller subsequently filed a challenge, to which Defendant's PSP responded, stating that he was denied because of his 1998 conviction for use of an altered PennDot window tint exemption certificate that was putatively prohibiting under 6109(e)(1)(viii) as a crime punishable by imprisonment for a term exceeding one year. SOMF, ¶ 37.

It is his present intention and desire to be able to lawfully transport and carry all of his firearms within the Commonwealth, including but not limited to being able to, regardless of whether during or in the absence of an emergency proclaimed by a State or municipal governmental executive, travel in a mode of transportation and carry on the public streets and public property throughout the Commonwealth a loaded, operable firearm on his person for self-defense, defense of his family and others, and in case of confrontation in public requiring defensive action, including transporting and carrying that loaded and operable firearm to, but not limited to: (1) grocery stores, including ones that he frequents, such as ShopRite of Bensalem at 2200 Bristol Rd,

Bensalem, PA 19020, which is approximately 5 miles from his home; and, GIANT at 4001 New Falls Rd, Levittown, PA 19056, which is approximately 4 miles from his home; (2) stores, including ones that he frequents, such as Penn Jersey Auto Store at 4912 New Falls Rd, Levittown, PA 19056, which is approximately 4 miles from his home; (3) malls, including ones that he frequents, such Neshaminy Mall at 707 Neshaminy Mall, Bensalem, PA 19020, which is approximately 6.5 miles from his home; Oxford Valley Mall at 2300 Lincoln Hwy, Langhorne, PA 19047, which is approximately 8 miles from his home; and, The Crossings Premium Outlets at 1000 Premium Outlets Dr, Tannersville, PA 18372, which is approximately 81 miles from his home; (4) restaurants, including ones that he frequents, such as Macaroni's at 9315 Old Bustleton Ave, Philadelphia, PA 19115, which is approximately 11.2 miles from his home; Cafe Antonio Bistro & Bar at 107 E Trenton Ave, Morrisville, PA 19067, which is approximately 12.6 miles from his home; The Grey Stone Fine Food and Spirits at 552 Washington Crossing Rd, Newtown, PA 18940, which is approximately 14 miles from his home;  and, Louie's Prime Steak House at 244 Lake Harmony Rd, Lake Harmony, PA 18624, which is approximately 90

miles from his home; (5) friends' and family members' houses, including ones that he frequents, such as his fiancé's sister in Tunkhannock, PA 18657, which is approximately 114 miles from his home; and, his good friend, Keith Bertam, in Levittown, PA 19054, approximately 5 miles from his home; and, (6) Philadelphia with his fiancé to pick up the rent from her brother, whom rents a house from her in Philadelphia, and for dinner and other activities with a great friend of his, Richard Castagna, who lives in Philadelphia, PA 19145. SOMF, ¶ 38. Due to the location of his home in relation to all the aforementioned locations, he is unable to transport or carry a firearm on his person, whether concealed or openly, while walking or otherwise traversing on foot the distances between his home and those locations, especially in the event of any purchases at those locations and the need to additionally carry those purchases back to his home. SOMF, ¶ 39.

E.    Facts Specific to All Individual Plaintiffs

Individual Plaintiffs are all residents and citizens of the Commonwealth of Pennsylvania and members of Firearm Policy Coalition and the Second Amendment Foundation. SOMF, ¶¶ 18, 30,

41. As the federal courts have held, Plaintiffs are not disqualified from exercising their Second Amendment rights. SOMF, ¶¶ 22, 33, 44. The constitutionally protected conduct the Plaintiffs and their members seek to engage in while exercising their right to bear arms exceeds the limited exceptions contained in 18 Pa.C.S. §§ 6106, 6107, and 6108. SOMF, ¶ 51. Specifically, Plaintiffs desire to exercise their right to bear arms by carrying loaded, operable firearms on their person, in public, for lawful purposes, including self-defense. SOMF, ¶¶ 24, 35, 46, 52. Plaintiffs also desire to lawfully transport and carry loaded and unloaded firearms within the Commonwealth during a proclaimed emergency or during periods where an emergency is not proclaimed. SOMF, ¶¶ 27, 38, 49, 53. This includes constitutional protected conduct, which exceeds the limited exceptions contained in 6106-6108. *Id*. Plaintiffs all lawfully own and possess handguns, rifles, and shotguns. SOMF, ¶¶ 23, 34, 45. Plaintiffs have abstained from carrying or otherwise transporting loaded and unloaded firearms on their persons and in vehicles in public, for lawful purposes including self-defense, based on their reasonable fear of arrest, prosecution, incarceration,

and/or fine under the Commonwealth's regulations as they are actively being enforced by Defendant. SOMF, ¶¶ 57.

### F.   Facts Specific to Institutional Plaintiffs

The Individual Plaintiffs are members of Firearm Policy Coalition and the Second Amendment Foundation. SOMF, ¶ 60. As a result of Defendant's enforcement of 18 Pa.C.S. §§ 6106, 6107, 6108, and 6109, Firearm Policy Coalition and Second Amendment Foundation members and supporters, including the Individual Plaintiffs and those similarly situated to them, must choose between exercising their Second and Fourteenth rights or being subject to criminal sanction where, pursuant to 18 Pa.C.S. § 6106(a), a violation is either a misdemeanor of the first degree [14] or a felony of the third degree [15] that would impose upon them a lifetime ban on firearms and ammunition pursuant to 18 U.S.C. § 922(g)(1). SOMF, ¶ 61. Furthermore, because of Defendant's enforcement of 18 Pa.C.S. §§ 6106-6109, Firearm Policy Coalition and Second Amendment Foundations members and supporters, including

---

[14] Pursuant to 18 Pa.C.S. § 106(b)(6), a conviction of a misdemeanor of the first degree can be punished by up to five years in jail.

[15] Pursuant to 18 Pa.C.S. § 106(b)(4), a conviction of a felony of the third degree can be punished by up to seven years in jail.

the Individual Plaintiffs and those similarly situated to them, must choose between exercising their Second and Fourteenth Amendment rights or be subject to criminal sanction, where, pursuant to 18 Pa.C.S. § 6119, a violation of Section 6107 is a misdemeanor of the first degree that would impose upon them a lifetime ban on the possession of firearms and ammunition pursuant to 18 U.S.C. § 922(g)(1). SOMF, ¶ 62. Firearm Policy Coalition and Second Amendment Foundation members and supporters, including Individual Plaintiffs and those similarly situated, reasonably fear arrest, prosecution, fine, incarceration, loss of liberty, and loss of their fundamental right to keep and bear arms if they do not comply with 18 Pa.C.S. §§ 6106, 6107, 6108, and 6109. SOMF, ¶ 63.

### G.   Facts Specific to Mr. Brian Davey

In the absence of a LTCF, on his way to the range with all firearms unloaded in his vehicle in compliance with 18 Pa.C.S. § 6106, Mr. Briand Davey received a call from a family friend, who is a victim of domestic violence, and although she's called the police, because of the rural location in which she lives, the police have responded that they

are only 30 minutes away, and accordingly, he immediately diverts to her home to get her out of the dangerous situation, without going home first to divest himself of his firearms. SOMF, ¶ 65. As a result of that conduct, Mr. Brian Davey was charged with violating Section 6106. SOMF, ¶ 66.

H.    Defendant's Misstatement of Facts

As Defendant's Statement of Material Facts (Doc. 42) and Brief in Support of his Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 43) contain multiple incorrect facts, Plaintiffs address those seriatim, herein:

i.    *Plaintiffs are not "felons"*

Defendant audaciously contends that "each of the Individual Plaintiffs has been previously convicted of engaging in felony criminal conduct" (Doc. 43, pg. 28), when he is acutely aware, that none of the Plaintiffs have been convicted of a felony and that each of their respective convictions was for a misdemeanor. Compl., Doc. 1, ¶¶ 39, 56, 74; SOMF, Doc. 39-6, ¶ 20, 32, 43.

### ii. *Section 6109(e)(1)(viii) prohibits far more than felons*

While Defendant contends that Section 6109(e)(1)(viii) only "prohibits people who have been convicted of felony criminal offenses from obtaining a license to carry firearms" (Doc. 43, pg. 1) and that it does "not apply to people convicted of lesser offenses (*id*., pg. 11), he later acknowledges the falsity of these contentions (*id*., pg. 7-8), when he cites to text of Section 6109(e)(1)(viii), which prohibits anyone who has been "convicted of a crime punishable by imprisonment for a term exceeding one year," regardless of whether that crime is a misdemeanor or a felony. In fact, as Plaintiffs have only ever been convicted of misdemeanors, if Section 6109(e)(1)(viii) only applied to felons, Plaintiffs all would have been approved for their LTCFs, which Defendant denied them, based on Section 6109(e)(1)(viii). SOMF, Doc. 39-6, ¶ 26, 37, 48.

### iii. *The definition of "firearm" found in Section 6102 does not apply to Section 6106(b)*

Defendant again falsely contends (Doc. 43, pg. 10) that "the

licensure requirement and restrictions in § 6106 only apply to 'firearms,' which are defined as short-barreled weapons such as handguns;" however, per Section 6106(e)(1), for purposes of the applicable exceptions of Section 6106(b) to the Plaintiffs, a firearm is defined as "any weapon which is designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of the weapon;" thus, including all types of firearms, unlike the general definition of firearm found in Section 6102.

> iv.   *The Commonwealth is still under an "emergency proclaimed by a State or municipal governmental executive"*

Defendant disingenuously contends (Doc. 43, pgs. 6, 24-25) that at the time of his filings "the Commonwealth [was] not currently under a declared state of emergency and the public carry restrictions in § 6107 are not in effect" and that Plaintiffs do not "make any allegation that other emergency declarations are likely to occur at any time in the future such that the Individual Plaintiffs will again be subject to the public carrying restrictions in § 6107," beyond the fact that Governor Wolf's emergency declaration related to the Pittsburgh Fern Hollow Bridge collapse was in effect prior to and after his filings (Docs. 41-43)

through September 30, 2022 (SOMF, Doc. 39-6, ¶ 11), [16] declarations of

emergency are extremely common, as reflected on the Pennsylvania

Emergency Management Agency ("PEMA") website, which depicts 10

separate states of emergency in 2021 alone. *Id.* ¶ 12;

https://www.pema.pa.gov/Governor-Proclamations/Pages/default.aspx.

Even though the opioid, COVID, and Fern Hollow Bridge declarations

are no longer active, there can be no dispute that Plaintiffs are still

currently restricted by Section 6107. Specifically, while there may not

be a current *state* emergency declaration, due to the language in Section

6107 that it is additionally triggered by "an emergency proclaimed by a

… municipal governmental executive", the restrictions of Section 6107

are still currently in place due to, as just one example, Philadelphia

renewing its emergency declaration on April 14, 2022. (Doc. 40, pgs. 10-

11, fn. 12; *see also,* https://www.phila.gov/media/20220414150539/2022-

April-Masking-Order-Executed.pdf).

---

[16] *See*, https://www.wtae.com/article/bridge-collapse-pittsburgh-gov-
wolf-signs-proclamation-of-disaster-emergency/38928541, last visited
September 21, 2022.

v.   *Plaintiffs do allege a desire and intent to carry firearms in Philadelphia*

Contrary to Defendant's contention (Doc. 43, pgs. 9, 26-27) that Plaintiffs "do not allege any desire – let alone any intent – to ever carry firearms in Philadelphia," Plaintiff Suarez intends and desires to "lawfully transport and carry all of his firearms" when he goes to "Philadelphia for dinner and other activities, as his wife works for Lockheed Martin and is required to monthly travel to the Philadelphia-area for purposes of her employment and he will be joining her on these trips" (SOMF, Doc. 39-6, ¶ 27., f.) and Plaintiff Miller intends and desires to "lawfully transport and carry all of his firearms," when, in addition to going to Macaroni's restaurant in Philadelphia, he goes to "Philadelphia with his fiancé to pick up the rent from her brother, whom rents a house from her in Philadelphia" and desires to go "for dinner and other activities with a great friend of his, Richard Castagna, who lives in Philadelphia, PA 19145." *Id.*, ¶¶ 38, d. and f.

vi. *Section 6107 bars the open carrying of all firearms and neither Sections 6107 nor 6108 are as "location-specific" as Defendant contends*

As Defendant acknowledges (Doc. 43, pg. 5-6), for purposes of Section 6107, pursuant to Section 6107(c), a firearm is defined as "any weapon that is designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any weapon." Thus, it applies to the open carry of all types of firearms during an "emergency proclaimed by a State or municipal governmental executive," and as discussed *supra*, at the time Defendant filed his Motion to Dismiss, there was a state of emergency through September 30, 2022, in addition to the current emergencies proclaimed by municipal governmental executives; thereby, currently triggering the limitations of Section 6107.

While Defendant correctly states that Sections 6107 and 6108 only apply to the "public streets and property" (Doc. 43, pg. 10-11), he fails to advise this Court of how "public streets and property" have been interpreted by the courts. Specifically, "public streets and property" include not only government buildings and spaces but also all roads and sidewalks "used by members of the public," *Goosby*, 380 A.2d at 806

(interpreting identically worded provision in 6108), and "circumstantial evidence" that an individual without a license "travelled at least some distance on a public street" with a firearm before reaching his destination is sufficient to place him outside the scope of the exceptions found in Section 6106(b), *Hopkins*, 747 A.2d at 918.

IV.   **Counter Statement of Questions Involved**

    1.    Whether this Court should deny Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and grant Plaintiffs' Motion for Summary Judgment?

        Suggested Answer in the *Affirmative*.

V.   **Argument**

    A.   <u>Introduction</u>

The Second Amendment provides that "the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. And there can be no dispute that all of the Plaintiffs' Second Amendment rights remain intact, as each of them was successful in having the federal courts declare such in their favor, under a much more rigorous pre-*Bruen*, two-step analysis, where the burden was on

the Plaintiffs, as compared to the post-*Bruen*, single-step analysis, [17]
where the burden is on the Government. SOMF, ¶¶ 22, 33, 44. There
also can be no dispute, post-*Bruen*, that there is nothing in the
Constitution's text nor the Nation's historical tradition of firearm
regulation – as already established by the *Bruen* decision – that
supports the categorical ban that the prior and continuing enforcement
of Defendant's regulations imposes on the Plaintiffs. In fact,
Defendant's brief is wholly devoid of *any* argument or citation to *any*
law around the time of Founding that support that his regulations are
consistent with the Nation's tradition of firearm regulation. Thus, as

---

[17] *Bruen* unequivocally rejected means-end scrutiny in the Second
Amendment context, holding instead that public-carry regulations that
the government cannot prove to be closely analogous to Founding-era
historical restrictions are unconstitutional categorically. As Plaintiffs
have maintained throughout this litigation, application of a means-ends
balancing scrutiny test to the Second Amendment was already
foreclosed by *District of Columbia v. Heller*'s directions that "[t]he very
enumeration of the right takes out of the hands of government—even
the Third Branch of Government—the power to decide on a case-by-case
basis whether the right is *really worth* insisting upon." 554 U.S. 570,
634 (2008). But the Court's decision in *Bruen* removes any conceivable
doubt: the "two-step approach" previously applied by many lower courts
"is one step too many," "applying means-end scrutiny in the Second
Amendment context" is not appropriate, and if the government cannot
affirmatively prove that a challenged restriction is consistent with the
text and history of the Second Amendment, the restriction must fall.
142 S. Ct. at 2127; *see also id.* at 2129–30

the burden rests on the Commissioner and he has failed to provide any evidence of his regulations being consistent with the Nation's tradition, it is uncontestable that his regulations are violative of the Second Amendment.

> B.   Defendant's Regulations Violate the Second Amendment Right to Bear Arms in Public

Prior to the Court's decision in *Bruen*, it had already explicitly held that the Second Amendment protects one's right to "wear, bear, or carry…upon the person or in the clothing or in a pocket, for the…of being armed and ready for offensive or defensive action" and "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Heller*, 554 U.S. at 584, 592; *see also Caetano*, 577 U.S. at 413-14 (holding that the Second Amendment also protects the right to possess and use stun guns in public). It also had held that Second Amendment is incorporated against the states through the Fourteenth Amendment. *McDonald*, 561 U.S. at 778. The issue that predominated the federal courts, *pre*-Bruen, was the appropriate analysis or framework a court was to utilize when assessing a Second Amendment challenge.

The Court in *Bruen*, beyond declaring on several occasions that the Second Amendment was the codification of "a pre-existing right" (142 S.Ct. at 2127, 2130, 2135, 2145) and consistent with that pre-existing right that New York's "may issue" licensing regime was violative of that right because the right to carry a firearm for purposes of self-defense is generally available to all individuals (*id.* at 2122, 2134-2135, 2156), explained that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." 142 S.Ct. at 2126. To counter this presumptive protection, the government must "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127. In fact, *Bruen* could not be clearer in its holding that it is *the government* that bears the burden of justifying its firearm regulations. *See id.* at 2130 ("The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."); *id.* at 2135 (explaining "the burden falls on respondents"); *id.* at 2138 (holding that "respondents have failed to meet *their burden* to identify an American tradition" (emphasis added)).

35

While the burden is clearly on the Commissioner to establish that his regulations are consistent with the Nation's historical tradition of firearm regulation, beyond the fact that his brief is wholly devoid of any citation to any law in existence around the time of Founding that is consistent with his regulations, there is simply no way for him to establish any historical tradition, as his regulations are directly contrary to the Nation's historical tradition of firearm regulation, as already held by *Bruen*.

In addressing what constitutes the Nation's historical tradition of firearm regulation, *Bruen* explains that "when it comes to interpreting the Constitution, not all history is created equal." *Id*. at 2136. That is why courts "must . . . guard against giving postenactment history more weight than it can rightly bear." *Id.* "As [the Court] recognized in *Heller* itself, because post-Civil War discussions of the right to keep and bear arms came '75 years after the ratification of the Second Amendment, they do not provide as much insight into its original meaning as earlier sources.'" *Id.* at 2137 (quoting *Heller*, 554 U.S. at 614); *see also Sprint Communications Co. v. APCC Servs., Inc.,* 554 U.S. 269, 312 (Roberts, C.J., dissenting) ("The belated innovations of the mid- to late-19th-

century courts come too late to provide insight into the meaning of [the Constitution in 1787]"). In fact, "post-ratification adoption or acceptance of laws that are inconsistent with the original meaning of the constitutional text obviously cannot overcome or alter that text." *Bruen*, 142 S. Ct. at 2137 (quoting *Heller v. District of Columbia*, 670 F.3d 1244, 1274, n. 6 (D.C. Cir. 2011) (Kavanaugh, J., dissenting)).

*Bruen* thus establishes that this Court must prioritize Founding era evidence, while evidence from around the "mid- to late- 19th century" is at most "secondary." *Id.* at 2137. "19th-century evidence [is] treated as mere confirmation of what the Court thought had *already been established*" in the Founding era. *Id.* (emphasis added). This makes sense because the "individual rights enumerated in the Bill of Rights and made applicable against the States through the Fourteenth Amendment *have the same scope* as against the Federal Government." *Id.* (citing *Ramos v. Louisiana*, 140 S.Ct. 1390, 1397 (2020); *Timbs v. Indiana*, 139 S.Ct. 682, 686–687 (2019); *Malloy v. Hogan*, 378 U.S. 1, 10–11 (1964)). And regardless of any other debate, there is no dispute that 1791 is when the Bill of Rights limited the Federal Government. Thus, in order to ensure uniformity of incorporated rights with respect

to the Federal Government and the States, 1791 is the relevant time to "peg[] . . . the public understanding of the right." *Bruen*, 142 S. Ct. at 2137; *see also McDonald v. City of Chicago*, 561 U.S. 742, 765 (2010) (noting the Court's "decisive[]" holding "that incorporated Bill of Rights protections 'are all to be enforced against the States . . . according to the same standards that protect those personal rights against federal encroachment'" (quoting *Malloy*, 378 U.S. at 10)).[18]

As *Bruen* has already held that, pursuant to the Second Amendment, individuals who retain their Second Amendment rights have a right to carry firearms in public and the federal courts have already found that the Plaintiffs in this matter all enjoin their Second Amendment rights (SOMF, ¶¶ 22, 33, 44), this Court need not embark on any historical analysis, as the *Bruen* decision mandates the outcome – that 18 Pa.C.S. §§ 6106(a)-(b), 6107(a), 6108, 6109(e)(1)(viii) are all unconstitutional – because Defendant is actively precluding Plaintiffs from being able to carry firearms in public. More specifically, except for

---

[18] As the extensive historical analysis of the Reconstruction period in *McDonald* shows, the evidence around Reconstruction is most relevant to determining *whether* a right has been incorporated, 561 U.S. at 777, while the content of that right is the public understanding in 1791.

a favored few anomalously excluded – law-enforcement officers, military personnel, or the like, *see* Section 6106(b) – pursuant to Section 6107, given the recent states of emergency declared by the Governor and local municipal executives, *all* adult Pennsylvania citizens are, at present, in the absence of a LTCF, *absolutely prohibited* from carrying an operable firearm in public for self-defense or transporting a firearm, except as limitedly permitted by Section 6106(b) and then only directly to and from an enumerated location.[19] Plaintiffs individually and collectively challenge the effect of Defendant's actively enforced regulations, including: (1) Defendant's restrictions on carrying and transporting loaded and unloaded firearms, including on the public streets and property, without a LTCF – Sections 6106, [20, 21] 6108 [22]; (2) Defendant's

---

[19] *See* fn 6, *supra*.

[20] This includes, but is not limited to, simply transporting a firearm in a way that Section 6106(b) criminalizes in the absence of a LTCF, such as stopping to utilize a bathroom or to pick up a friend or coffee on the way to one of the extremely limited locations. In fact, the absurdity of Section 6106 even prevents a hunter, in the absence of a LTCF, from stopping at a business that processes/butchers the successfully taken game on his/her way home, in the absence of the hunter first returning home, divesting him/herself of his/her firearms, and then proceeding back to the processor/butcher

[21] And there can be no dispute as to Plaintiffs' fear of arrest and prosecution for violating Section 6106, as Mr. Davey was prosecuted for

requirement that during a declared emergency, a law-abiding citizen can *only* carry weapons in case of confrontation outside the home, *if* they obtain a LTCF – Section 6107; [23] and (3) Defendant's rule *barring* Plaintiffs from obtaining LTCFs – Section 6109(e)(1)(viii). These provisions, by eliminating Plaintiffs' ability to obtain a LTCF, while

---

not going directly to and from the range, because he stopped to try to help a family friend, who was the victim of domestic violence. SOMF, ¶¶ 65-66.

[22] No different than as *Bruen,* 142 S. Ct. at 2134, declared that "there is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the New York City Police Department," neither can Pennsylvania treat Philadelphia differently than the rest of the state, as there exists no historical basis to declare Philadelphia a sensitive place.

[23] To the extent the Commissioner renews his prior argument (Doc. 24, pgs. 17-18) that the false door of Section 6107(a)(1) permits Plaintiffs, during a state of emergency, to carry a firearm when "actively engaged" in defense of their life or property, such fails to recognize that merely carrying a firearm for purposes of self-defense is not being "[a]ctively engaged in a defense of that person's life or property from peril or threat." Thus, a law-abiding individual, who, in compliance with Pennsylvania law, *leaves her firearm at home* – or unloaded in her car, provided she has gone directly to an enumerated location from an enumerated location specified in Section 6106(b)—and who suddenly finds herself "actively engaged" in self-defense outside the home will find little comfort in the thought that *at that point* Section 6107 would allow her to carry a loaded firearm – a firearm which she does not have, as her wearing, bearing, and carrying of it, prior to that point, would have been a felonious violation of the law. Thus, the exception found in Section 6107(a)(1) is of no solace to Plaintiffs.

maintaining a state of emergency in one occasion in excess of three and a half years, in addition to the municipal proclamations currently in effect, and enforcing the draconian carry/transportation restrictions, effectively preclude Plaintiffs from carrying loaded firearms outside their home in any manner, as well as, carry/transporting loaded or unloaded firearms for lawful purposes not enumerated by extremely limited allowances of Section 6106, in direct contravention of *Heller*, *McDonald*, *Caetano,* and *Bruen*.

Plaintiffs have extensively detailed *supra* their intent and desire to be able to lawfully transport and carry all of their firearms within the Commonwealth, including but not limited to being able to, regardless of whether during or in the absence of an emergency proclaimed by a State or municipal governmental executive, travel in a mode of transportation and carry on the public streets and public property throughout the Commonwealth a loaded, operable firearm on their persons for self-defense, defense of their families and others, and in case of confrontation in public requiring defensive action, including transporting and carrying that loaded and operable firearm to, but not limited to, grocery stores, general types of stores, malls, restaurants,

friends' and family members' homes, and Philadelphia. Moreover, even if, *arguendo*, this Court were to somehow find that Plaintiffs may openly carry and transport loaded firearms to locations not enumerated in Section 6106(b), Plaintiffs have explained *supra* that due to the location of their homes in relation to all the aforementioned locations, they are unable to transport or carry a firearm on their persons, whether concealed or openly, while walking or otherwise traversing on foot the distances between their homes and those locations, especially in the event of any purchases at those locations and the need to additionally carry those purchases back to their homes; thereby, necessitating that they utilize a vehicle [24] to travel to those locations.

Therefore, as Defendant's regulations currently restrict the Plaintiffs from transporting or carrying firearms in public, and upon public streets and public property,[25] even for lawful purposes, including self-defense, his ongoing enforcement of them violates the Second Amendment.

---

[24] *See* fn 8, *supra*.
[25] *See* fn 11, *supra*.

C.   <u>The *Bruen* Court Did Not "Explicitly Endorse The
     Constitutionality" of Defendant's Regulations</u>

In a mindboggling wonder of the world, Defendant contends (Doc

43, pg. 11-12) that because the *Bruen* Court, in dicta,[26] stated that

Pennsylvania's licensing statute is "shall issue," the Court "explicitly

endorsed the constitutionality of Pennsylvania's regime."  First and

foremost, Pennsylvania's licensing statute was not before the *Bruen*

Court and as such, contrary to Defendant's contention, the Court did

not "explicitly endorse" Section 6109 as constitutional, let alone even

mention Section 6106-6108. In fact, although still dicta, the Court only

declared:

> To be clear, nothing in our analysis should be interpreted to
> suggest the unconstitutionality of the 43 States' "shall-issue"
> licensing regimes, under which "a general desire for self-defense is
> sufficient to obtain a [permit]." Because these licensing regimes do

---

[26] Anything not in the "court's determination of a matter of law pivotal
to its decision" is dicta. Bryan A. Garner, *et al*., The Law of Judicial
Precedent 44 (2016) (quoting *Black's Law Dictionary* 849 (Bryan A.
Garner ed., 10th ed. 2014). Dicta is therefore "entitled to little deference
because they are essentially ultra vires pronouncements about the law."
*Id*. Or, as Francis Bacon put it, dicta is only the "vapours and fumes of
law." *Id.* (quoting Francis Bacon, "The Lord Keeper's Speech in the
Exchequer" (1617) in *2 The Works of Francis Bacon* 477, 478 (Basil
Montagu ed., 1887)).

not require applicants to show an atypical need for armed self-defense, they do not necessarily prevent "law-abiding, responsible citizens" from exercising their Second Amendment right to public carry… That said, because any permitting scheme can be put toward abusive ends, *we do not rule out constitutional challenges to shall-issue regimes* where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry.

*Bruen*, 142 S.Ct. at 2138, fn. 9 (emphasis added and internal citations omitted).

In this matter, the federal courts have already ruled that Plaintiffs enjoy their Second Amendment rights and yet, Defendant is abusing the permitting scheme to preclude them from obtaining a license; thereby, subjecting them to all of his regulations, which, as discussed *supra*, currently results in a virtual ban on transporting and carrying firearms in public.

D.    Sections 6106-6109 Are Not "Felon Dispossession Statutes"

In what can only be explained as pure applesauce, Defendant contends (Doc. 43, pgs. 17-20) that Sections 6106-6109 are "felon dispossession statutes," even though Sections 6106-6108 only address the carrying and transportation of firearms for everyone in the Commonwealth – regardless of criminal history – and Section 6109

44

addresses licensing. But, even if, *arguendo*, Sections 6106-6109 were all felon dispossession statutes, they could not apply to Plaintiffs, as they all enjoy their Second Amendment rights, as held by the federal courts, and the text of the previously contended putative prohibition – 18 U.S.C. § 922(g)(1) – is virtually verbatim the text of the currently contended putative prohibition – Section 6109(e)(1)(viii).

E. <u>Sections 6106 Is Not "Outside the Scope of the Second Amendment"</u>

Even though the Court stated in *Heller*, [27] repeated in *McDonald*, [28] and thricely declared in *Bruen* [29] that "individual self-defense is 'the *central component*' of the Second Amendment right" and that the right to "bear arms" refers to the right to "wear, bear, or carry ... *upon the person or in the clothing or in a pocket*, for the purpose ... of *being armed and ready for offensive or defensive action in a case of conflict with another person*" [30] Defendant, in some bizarro world, contends (Doc. 43, pg. 21-22) that the Second Amendment does not

---

[27] 554 U.S. at 599.
[28] 561 U.S. at 767.
[29] 142 S.Ct. at 2133.
[30] *Id*. at 2134.

protect the carrying or transport of loaded firearms and relies on pre-*Bruen* jurisprudence for the proposition. Clearly, Defendant's argument has been unequivocally dispelled by *Bruen*.

F.    <u>Plaintiffs Are Not Required to Seek A Pardon</u>

Contrary to Defendant's implication (Doc. 43, pg. 9) that the Plaintiffs should be required to first seek a pardon before bringing the underlying challenge to Defendant's regulations, the Third Circuit has already held, specifically in relation to Plaintiffs Suarez and Binderup, that "it is hardly reasonable to treat the absence of a pardon—rare by any measure—as adequate proof of a continuing need to disarm them indefinitely." *Binderup*, 836 F.3d at 356.

G.    <u>Plaintiffs Claims Relative to Section 6107 Are Not Moot</u>

As addressed *supra*, contrary to Defendant's contention (Doc. 43, pgs. 23-25), Plaintiffs claims relative to Section 6107 are not moot, as there are declarations of emergency currently in force and triggering Section 6107. Furthermore, even if, *arguendo*, there were not any current declarations triggering Section 6107, it would constitutes an issue

capable of repetition and evading review, per *Southern Pacific Terminal Co*, 219 U.S. at 515, especially in light of the frequency with which declarations of emergency are issued.

H.    Plaintiffs Do Not Lack Standing to Challenge Section 6108

As discussed *supra*, contrary to Defendant's contention (Doc. 43, pgs. 25-27), while both Plaintiffs Suarez and Miller have intent and desire to carry all types of firearms in Philadelphia, they have refrained from such conduct for fear of prosecution. Thus, there can be no dispute that they and the Organizational Plaintiffs, for which they are members, have standing to challenge Section 6108.

I.    Defendant Is Not Entitled to Summary Judgment

For all the reasons specified herein and in Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment, Plaintiffs, not Defendants, are entitled summary judgment.

## VI.    Conclusion

As Defendant's regulations are violative of the Second Amendment, Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss or in the alternative, Motion for Summary Judgment and grant Plaintiffs' Motion for Summary Judgment.

Respectfully Submitted,

Joshua Prince, Esq.
Attorney Id. No. 306521
Civil Rights Defense Firm, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(888) 202-9297 ext 81114
(610) 400-8439 (f)
Joshua@CivilRightsDefenseFirm.com

## CERTIFICATE OF WORD COUNT COMPLIANCE

I, the undersigned, certify that the foregoing brief complies with the Court's Order of October 13, 2022, Doc. 35, permitting the Plaintiffs up to and including 10,000 words. This brief contains 9,729 words, as calculated by the word processing system used to prepare this brief.

_____
Joshua Prince, Esq.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed electronically through the Middle District of Pennsylvania Electronic Filing System. Notice of these filing will be sent by operation of the Court's Electronic Filing System to all registered users in this case.

_____
Joshua Prince, Esq.