# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIO SUAREZ;** | : | Civil Rights Complaint |
| **DANIEL R. BINDERUP;** | : | 42 U.S.C. § 1983 |
| **DANIEL F. MILLER;** | : | |
| **FIREARMS POLICY** | : | Docket No. 1:21-cv-00710 |
| **COALITION, INC.; and,** | : | |
| **SECOND AMENDMENT** | : | |
| **FOUNDATION,** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **COL. ROBERT EVANCHICK,** | : | |
| Commissioner of Pennsylvania | : | |
| State Police, | : | |
| Defendant. | : | |

# PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR SECOND MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I. **Argument** ................................................................. 1

  A. <u>Defendant Incorrectly Frames Plaintiffs' Challenges to Sections 6106-6109 as solely "As-Applied"</u> ................................ 1

  B. <u>Defendant, *Again*, Contends that Section 6106-6109 Are "Felon Dispossession Statutes"</u> .................................................... 2

  C. <u>Contrary to Defendant's Contention, Section 6106 Does Not Only Restrict an Unlicensed Person from Carrying Hidden Firearms on His Person or Motor Vehicle</u> ....................................... 4

  D. <u>*Caetano* is Relevant</u> .......................................................... 5

  E. <u>Plaintiffs' Challenge to Section 6107 is Not Moot</u> .......................... 6

     *i.  Section 6107 Applies to Emergencies Declared by "Municipal Governmental Executive[s]" and Triggers the Restrictions Statewide* ....................................................................... 6

     *ii. Section 6107 Constitutes an Issue Capable of Repetition and Evading Review* .................................................................. 8

  F. <u>Plaintiffs Have Standing to Challenge Sections 6106-6108</u> ........... 9

  G. <u>Defendant Cannot Regulate Philadelphia Different Than Any Other City</u> ........................................................................ 10

  H. <u>Defendant Fails to Cite Any Law Reflecting that the Challenged Laws and Regulations are Consistent with the Nation's Tradition of Firearm Regulation</u> ................................................ 10

II. **Conclusion** ............................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*Binderup v. Att'y Gen. United States,* 836 F.3d 336 (3d Cir. 2016) ................................................................................... 2

*Caetano v. Massachusetts*, 577 U.S. 411 (2016) ................................. 5, 15

*D.C. v. Heller*, 554 U.S. 570 (2008) ........................................... 15

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ........................... 12

*Holloway v. Att'y General United States*, 948 F.3d 164 (3d Cir. 2020) ................................................................................... 3

*Illinois Ass'n of Firearms Retailers*, 961 F. Supp. 2d 928 (N.D. Ill. 2014) ...................................................................... 12

*Miller v. Sessions*, 356 F.Supp.3d 472 (E.D. Pa. 2019) ........................... 3

*New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) .............................................................................passim

*Williams v. Att'y Gen. United States*, 19-2694, 2022 WL 1499279 (3d Cir. May 12, 2022) ........................................... 3

**Statutes**

18 Pa.C.S. § 6106 ........................................................... passim

18 Pa.C.S. § 6107 ........................................................... passim

18 Pa.C.S. § 6108 ........................................................... passim

18 Pa.C.S. § 6109 ........................................................... passim

18 U.S.C. § 922 ................................................................. 7

Plaintiffs Julio Suarez, Daniel Binderup, Daniel Miller, Firearms Policy Coalition, Inc., and the Second Amendment Foundation, by and through their counsel, hereby submit this Reply Brief in Support of their Second Motion for Summary Judgment.

## I. Argument

### A. Defendant Incorrectly Frames Plaintiffs' Challenges to Sections 6106-6109 as solely "As-Applied"

Realizing that there is no way to successfully defend the constitutionality of 18 Pa.C.S. §§ 6106(a)-b), 6107(a), 6108, 6109(e)(1)(viii) – made explicitly evident, as discussed further *infra*, by his failure to cite *any* law around the time of Founding, as required by *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), that the challenged laws and regulation are consistent with the Nation's tradition of firearm regulation – Defendant resorts to seemingly reframing Plaintiffs' challenges solely to "as-applied" challenges (Doc. 44, pgs. 10-11, 16-18, 20-21, 23-24), when Plaintiffs challenge the laws facially and in the alternative, as-applied.

B.    Defendant, *Again*, Contends that Section 6106-6109 Are
      "Felon Dispossession Statutes"

As Plaintiffs thoroughly addressed in their Brief in Opposition to

Defendant's Motion to Dismiss or in the Alternative, Motion for

Summary Judgment (Doc. 46, pgs. 44-45), contrary to the

Commissioner's continued insistence, without explanation (Doc. 44, pgs.

3-5), [1] Sections 6106-6109 are not "felon dispossession statutes" and

even if, *arguendo*, the statutes were, as Plaintiffs also previously

addressed (Doc. 46, pg. 26), they are not felons.

In Defendant's Reply Brief (Doc. 48, pgs. 2-4), he now for the first

time contends that Plaintiffs are felons based on the Third Circuit in

*Binderup v. Att'y Gen. United States,* 836 F.3d 336, 347, 356-57 (3d Cir.

2016), mentioning, in passing, that "*[t]raditionally*, 'felons' are people

who have been convicted of any crime 'that is punishable by death or

imprisonment for more than one year,'" but fails to advise this Court

that the *Binderup* Court explicitly found that Plaintiffs Binderup and

_____

[1] As Sections 6106-6108 have absolutely no bearing on "felon dispossession" – except
to the extent that a *conviction* for violating any of those sections would result in the
individual being prohibited from purchasing, possessing, and utilizing firearms and
ammunition, pursuant to 18 U.S.C. § 922(g)(1) – it would appear that Defendant
continues to utilize this phraseology, not for accuracy, but in an attempt to mislead
the Court as to the actual application of the challenged statutes.

Suarez were *not* felons in the historical sense and that they both continue to enjoy their Second Amendment rights, which is binding on this Court. 836 F.3d 336, 347, 356-57 (3d Cir. 2016). Likewise, the Commissioner fails to mention that Plaintiff Miller was also found in *Miller v. Sessions*, 356 F.Supp.3d 472 (E.D. Pa. 2019) not to be a felon and thus, to also enjoy his Second Amendment rights. Thus, there can be no dispute that Plaintiffs are not felons, as held by the federal courts.

Nevertheless, in a last ditch effort, he attempts to argue that based on the Third Circuit's decision *Holloway v. Att'y General United States*, 948 F.3d 164 (3d Cir. 2020) – which has no relevance to this matter – Plaintiffs are felons. However, once again, the Commissioner fails to advise this Court that the *Holloway* Court's decision is now extremely questionable, based on an almost identical case – *Williams v. Att'y Gen. United States*, 19-2694, 2022 WL 1499279, at *1 (3d Cir. May 12, 2022), *reh'g granted and opinion vacated sub nom. Williams v. Att'y Gen. United States*, 19-2694, 2022 WL 3544391 (3d Cir. Aug. 18, 2022) – being initially affirmed solely based on *Holloway*, and in response to a petition for reconsideration post-*Bruen*, resulted in the Third Circuit vacating its decision, vacating the district court's judgment, and

3

remanding the matter to the district court "for reconsideration in light of the United States Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2002)."

Accordingly, as all Plaintiffs have final, un-appealable, federal court decisions finding that they continue to enjoy their Second Amendment rights, they are not felons.

C.   <u>Contrary to Defendant's Contention, Section 6106 Does Not Only Restrict an Unlicensed Person from Carrying Hidden Firearms on His Person or Motor Vehicle</u>

Although the Commissioner continues to espouse that Section 6106 "<u>only</u> restricts an unlicensed person from carrying a firearm hidden on his person or carrying a loaded firearm in a motor vehicle" (Doc. 44, pgs. 5-6 (emphasis in original)), beyond Plaintiffs addressing, *ad nauseum*, the erroneous nature of this argument in their briefing (Doc. 40, pgs. 6-9, 33-36; Doc. 46, pgs. 7-10, 38-42), Defendant's argument is belied by the explicit text of Section 6106, which explicitly limits the locations, where an individual may transport a firearm to, in the absence of a license to carry firearms. Defendant even tacitly admits (Doc. 44, pg. 9) that Sections 6106-6108 are unconstitutional in citing to

*Bruen*, 142 S. Ct. at 2150, for the proposition that "states may 'lawfully eliminate one kind of public carry—concealed carry—so long as they le[ave] open the option to carry openly," when Pennsylvania law outright precludes, in the absence of a license to carry firearms, the concealed or open carry of a firearm in a vehicle and additionally precludes the transporting of firearms except to five or so applicable locations, as conceded by Defendant (Doc. 44, pg. 17). As Plaintiffs detailed in their prior briefing, they are precluded from open or concealed carrying/transporting of their firearms to 95%+ of the locations, where they would otherwise carry/transport their firearm for purposes of self-protection.

D.    *Caetano* is Relevant

Defendant contends (Doc. 44, pg. 10, fn. 2) that "Plaintiffs also cite to the inapposite case of *Caetano v. Massachusetts*, 577 U.S. 411, 411 (2016)," when *Caetano* is directly on point, as it involved the U.S. Supreme Court finding that Ms. Caetano's carry/transport and possession of a stun gun in public was protected by the Second Amendment. No different than in *Caetano*, Plaintiffs carry/transport and possession of firearms in public is protected by the Second

Amendment; thereby, resulting in Sections 6106(a)-b), 6107(a), and 6108 being unconstitutional.

E.   Plaintiffs' Challenge to Section 6107 is Not Moot

Contrary to the Commissioner's contention (Doc. 44, pgs. 11-15), as addressed by Plaintiffs' prior briefing (Doc. 46, pgs. 11, 46-47), Plaintiffs' challenge to Section 6107 is not moot, as beyond there being emergencies proclaimed and currently in effect by municipal governmental executives, even if, *arguendo*, such was not the case, Section 6107 constitutes an issue capable of repetition and evading review.

i.   *Section 6107 Applies to Emergencies Declared by "Municipal Governmental Executive[s]" and Triggers the Restrictions Statewide*

While Defendant tacitly admits as he must (Doc. 44, pg. 12-13) that, per Section 6107, an emergency proclamation by a "municipal governmental executive" triggers the prohibitions of Section 6107, he takes a very curious and textually unsupportable position (*id*. at 12, fn. 3; 15, fn. 4) that declarations of emergency at the municipal level do not trigger the restrictions of Section 6107 statewide and that declarations

of emergency at the state level can limit the geographic reach of Section 6107, even though Section 6107 is devoid of any language supporting this contention. Rather, Section 6107 is explicit that "[n]o person shall carry a firearm upon the public streets or upon any public property during an emergency proclaimed by a State or municipal governmental executive…" If the General Assembly had desired to limit the geographic reach of Section 6107 – either limiting it to the geographic scope of the emergency proclaimed by the State or limiting it to the boundaries of the municipal government, instead of it triggering a statewide prohibition – it would have included such a limiting clause or language. But even if, *arguendo*, this Court believes that municipal declarations of emergency are limited, per Section 6107, to the municipal boundaries, as Plaintiffs previously explained, Philadelphia is currently under an emergency declaration (Doc. 46, pgs. 11, fn. 11; 12) and Plaintiffs Suarez and Miller travel to Philadelphia (*id*. at 15-16; 21-22); whereby, they are currently subjected to Section 6107.

ii.   *Section 6107 Constitutes an Issue Capable of Repetition and Evading Review*

In no better example that this is an issue capable of repetition and evading review, the Commissioner admits (Doc. 44, pg. 13) that at the time of filing the underlying complaint on April 16, 2021 through September 30, 2022, Plaintiffs were aggrieved by Section 6107; and yet, this Court has not yet had opportunity to rule on the constitutionality of Section 6107 in the year and six months that this case has been pending. And as Plaintiffs detailed (Doc. 46, pg. 29), declarations of emergency are very common, with 10 occurring in 2021, alone.

Moreover, while Defendant attempts (Doc. 44, pg. 14) to lull this Court into accepting that a 21 day infringement on Plaintiffs' and the residents of this Commonwealth's right to keep and bear arms is acceptable – which it is not – the Commissioner glosses over that a proclamation of the Governor can be extended indefinitely, provided the General Assembly issues a concurrent resolution. And, as the resident of this Commonwealth recently witnessed and were subjected to in relation to the Fern Bridge proclamation, the General Assembly issued a concurrent resolution; whereby, the proclamation – and therefore

Section 6107 – was in effect for 265 days, which Defendant admits (Doc. 44, pg. 12, fn 3).

F.    Plaintiffs Have Standing to Challenge Sections 6106-6108

Even though Plaintiffs have explicitly detailed how their desired conduct would violate Sections 6106-6108 (Doc. 46, pgs. 2-5, 7-26, 38-42) and thereby is sufficient for standing purposes under even the precedent cited by the Commissioner, [2] he audaciously contends (Doc. 44, pgs. 17-24) that Plaintiffs' compliance with the laws is a "minor inconvenience" and that they lack standing because they have not gone forth and violated the laws they challenge. Laws that if violated, as Plaintiffs previously explained (Doc. 46, pgs. 24-25), would result in them being, at a minimum, prohibited in perpetuity under 18 U.S.C. § 922(g)(1) from being able to purchase, possess, and utilized firearms and ammunition in perpetuity. Thus, Plaintiffs' only option – other than to allow their Second Amendment rights to be rendered meaningless – is to challenge Sections 6106-6109.

---

[2] Curiously, the Commissioner in his Reply Brief (Doc. 48, pg. 13), for the first time, contends that Plaintiffs never contended in their Complaint that they have a desire

G.  Defendant Cannot Regulate Philadelphia Different Than Any Other City

Forgetting the *Bruen* Court's chastisement of New York, Defendant contends (Doc. 44, pg. 22) that since "Philadelphia is Pennsylvania's largest City[, ] Plaintiffs cannot challenge a law that has far more direct, immediate and personal consequences for each of the city's more than 1.5 million residents than it does for Plaintiffs." But *Bruen* explicitly rejected this argument, holding instead that "there is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the New York City Police Department." 142 S. Ct. at 2134. Likewise, neither can Pennsylvania treat Philadelphia differently than the rest of the state, as there exists no historical basis – and Defendant cites to none – to declare Philadelphia a sensitive place.

H.  Defendant Fails to Cite Any Law Reflecting that the Challenged Laws and Regulations are Consistent with the Nation's Tradition of Firearm Regulation

As Plaintiffs previously addressed (Doc. 40, pgs. 26-36; Doc. 46, pgs. 32-42), the *Bruen* Court explicitly held that that "when the Second Amendment's plain text covers an individual's conduct, the Constitution

10

presumptively protects that conduct" and to counter this presumptive protection, the government must "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2126-2127. [3]

Here, consistent with *Bruen*, there can be no dispute that Second Amendment's plain text covers Plaintiffs' desired conduct of carrying and transporting loaded and unloaded firearms throughout the Commonwealth. Thus, the burden is on the Defendant to establish a historical tradition. While the historical tradition need not be a "historical twin," the tradition of a state, [4] around the time of Founding, must, at a minimum, be a historical analogue to be relevant. *Id*. at 2126, 2133. But a single historical analogue around the time of Founding of a state is not a tradition; rather, it is a mere aberration or

---

[3] *See also, id.* at 2130 ("The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."); *id.* at 2135 (explaining "the burden falls on respondents"); *id.* at 2138 (holding that "respondents have failed to meet *their burden* to identify an American tradition" (emphasis added)).

[4] *See, Bruen*, 142 S. Ct. at 2154-55 (finding the statutes of territories deserving of "little weight" because they were "localized," and "rarely subject to judicial scrutiny").

anomaly, with no followers. [5] Even two or three historical analogues of

the states around the time of Founding are at best a trend and not a

tradition,[6] especially when short-lived. [7]

And what laws of the states, around the time of Founding, does

the Commissioner contend are consistent with the "Nation's historical

tradition of firearm regulation"? **None.**

He fails to cite a single state law, around the time of Founding,

that is consistent with the challenged laws. He does not even cite a

single law in the 1800s. Rather, he resorts to pre-*Bruen* case law [8] that

existing laws are "presumptively lawful" (Doc. 44, pgs. 2-5), but that

has no bearing on a post-*Bruen* analysis, as the sole deciding factor of

whether a law or regulation is constitutional under the Second

---

[5] *See, D.C. v. Heller*, 554 U.S. 570, 632 (2008) ("[W]e would not stake our
interpretation of the Second Amendment upon a single law ... that contradicts the
overwhelming weight of other evidence.")

[6] *See, Ezell v. City of Chicago*, 651 F.3d 684, 706 (7th Cir. 2011) (finding that two
historical statutes "falls far short of establishing that [a regulated activity] is wholly
outside the Second Amendment as it was understood" in 1791; *Illinois Ass'n of
Firearms Retailers*, 961 F. Supp. 2d 928, 937 (N.D. Ill. 2014) ("[C]itation to a few
isolated statutes—even to those from the appropriate time period—fall[s] far short
of establishing that gun sales and transfers were historically unprotected by the
Second Amendment") (internal quotation marks omitted).

[7] *See, Bruen*, 142 S. Ct. at 2155 ("[T]hese territorial restrictions deserve little weight
because they were . . . short lived.")

[8] All of which, like Defendant's brief, fail to analyze whether the laws were
consistent with the Nation's tradition of firearm regulation.

Amendment is whether the laws are consistent with our Nations *tradition* of firearm regulation.

And of course, the reason his briefing is devoid of any national tradition consistent with the challenged laws is because there is none; rather, his regulations are directly contrary to the Nation's historical tradition of firearm regulation. As *Bruen* has already held that, pursuant to the Second Amendment, individuals who retain their Second Amendment rights have a right to carry firearms in public and the federal courts have already found that the Plaintiffs in this matter all enjoy their Second Amendment rights (SOMF, ¶¶ 22, 33, 44), the *Bruen* decision mandates the outcome – that 18 Pa.C.S. §§ 6106(a)-(b), 6107(a), 6108, 6109(e)(1)(viii) are all unconstitutional – because Defendant is actively precluding Plaintiffs from being able to carry firearms in public. More specifically, except for a favored few anomalously excluded – law-enforcement officers, military personnel, or the like, *see* Section 6106(b) – pursuant to Section 6107, given the current states of emergency declared by local municipal executives, *all* adult Pennsylvania citizens are, at present, in the absence of a LTCF, *absolutely prohibited* from carrying an operable firearm in public for

self-defense or transporting a firearm, except as limitedly permitted by Section 6106(b) and then only directly to and from an enumerated location. Plaintiffs individually and collectively challenge, facially and, alternatively, as-applied, the effect of Defendant's actively enforced regulations, including: (1) Defendant's restrictions on carrying and transporting loaded and unloaded firearms, including on the public streets and property, without a LTCF – Sections 6106, [9, 10] 6108; (2) Defendant's requirement that during a declared emergency, a law-abiding citizen can *only* carry weapons in case of confrontation outside the home, *if* they obtain a LTCF – Section 6107; [11] and (3) Defendant's

---

[9] This includes, but is not limited to, simply transporting a firearm in a way that Section 6106(b) criminalizes in the absence of a LTCF, such as stopping to utilize a bathroom or to pick up a friend or coffee on the way to one of the extremely limited locations. In fact, the absurdity of Section 6106 even prevents a hunter, in the absence of a LTCF, from stopping at a business that processes/butchers the successfully taken game on his/her way home, in the absence of the hunter first returning home, divesting him/herself of his/her firearms, and then proceeding back to the processor/butcher

[10] And there can be no dispute as to Plaintiffs' fear of arrest and prosecution for violating Section 6106, as Mr. Davey was prosecuted for not going directly to and from the range, because he stopped to try to help a family friend, who was the victim of domestic violence. SOMF, ¶¶ 65-66.

[11] To the extent the Commissioner renews his prior argument (Doc. 24, pgs. 17-18) that the false door of Section 6107(a)(1) permits Plaintiffs,

rule *barring* Plaintiffs from obtaining LTCFs the – Section 6109(e)(1)(viii). These provisions, by eliminating Plaintiffs' ability to obtain a LTCF, while maintaining a state of emergency in one occasion in excess of three and a half years, in addition to the local municipal ones currently in effect, and enforcing the draconian carry/transportation restrictions, effectively preclude Plaintiffs from carrying loaded firearms outside their home in any manner, as well as, carry/transporting loaded or unloaded firearms for lawful purposes not enumerated by extremely limited allowances of Section 6106, in direct contravention of *Heller*, *McDonald*, *Caetano,* and *Bruen*.

---

during a state of emergency, to carry a firearm when "actively engaged" in defense of their life or property, such fails to recognize that merely carrying a firearm for purposes of self-defense is not being "[a]ctively engaged in a defense of that person's life or property from peril or threat." Thus, a law-abiding individual, who, in compliance with Pennsylvania law, *leaves her firearm at home* – or unloaded in her car, provided she has gone directly to an enumerated location from an enumerated location specified in Section 6106(b)—and who suddenly finds herself "actively engaged" in self-defense outside the home will find little comfort in the thought that *at that point* Section 6107 would allow her to carry a loaded firearm – a firearm which she does not have, as her wearing, bearing, and carrying of it, prior to that point, would have been a felonious violation of the law. Thus, the exception found in Section 6107(a)(1) is of no solace to Plaintiffs.

Plaintiffs have extensively detailed in this and the prior briefing their intent and desire to be able to lawfully transport and carry all of their firearms within the Commonwealth, including but not limited to being able to, regardless of whether during or in the absence of an emergency proclaimed by a State or municipal governmental executive, travel in a mode of transportation and carry on the public streets and public property throughout the Commonwealth a loaded, operable firearm on their persons for self-defense, defense of their families and others, and in case of confrontation in public requiring defensive action, including transporting and carrying that loaded and operable firearm to, but not limited to, grocery stores, general types of stores, malls, restaurants, friends' and family members' homes, and Philadelphia. Moreover, even if, *arguendo*, this Court were to somehow find that Plaintiffs may openly carry and transport loaded firearms to locations not enumerated in Section 6106(b), Plaintiffs have explained *supra* that due to the location of their homes in relation to all the aforementioned locations, they are unable to transport or carry a firearm on their persons, whether concealed or openly, while walking or otherwise traversing on foot the distances between their homes and those

locations, especially in the event of any purchases at those locations and the need to additionally carry those purchases back to their homes; thereby, necessitating that they utilize a vehicle to travel to those locations.

Therefore, as Defendant's regulations currently restrict the Plaintiffs from transporting or carrying firearms in public, and upon public streets and public property, even for lawful purposes, including self-defense, his ongoing enforcement of them violates the Second Amendment.

## II.  Conclusion

As Defendant's regulations are violative of the Second Amendment, Plaintiffs respectfully request that this Court grant Plaintiffs' Second Motion for Summary Judgment and (1) declare that 18 Pa.C.S. §§ 6106(a)-(b), 6107(a), 6108, 6109(e)(1)(viii), and all of the derivative regulations, policies, enforcement practices, and actions violate Plaintiffs', their members' and supporters', and those who are similarly situated's, right to Keep and Bear Arms as guaranteed by the Second Amendment to the United States Constitution and (2) enjoin

Defendant and his officers, agents, servants, employees, all persons in concert or participation with them, and all who have notice of the injunction, from enforcing 18 Pa.C.S. §§ 6106(a)-(b), 6107(a), 6108, 6109(e)(1)(viii), as well as, all of the derivative regulations, policies, enforcement practices, and actions that individually and/or collectively prevent Plaintiffs, Plaintiffs' members and supporters, and similarly situated individuals who are not disqualified from exercising Second Amendment rights, from carrying or otherwise transporting loaded and unloaded, operable firearms in public on their person and in their vehicles, for all lawful purposes including self-defense.

Respectfully Submitted,

Joshua Prince, Esq.
Attorney Id. No. 306521
Civil Rights Defense Firm, P.C.
646 Lenape Road
Bechtelsville, PA 19505
(888) 202-9297 ext 81114
(610) 400-8439 (f)
Joshua@CivilRightsDefenseFirm.com

18

**CERTIFICATE OF WORD COUNT COMPLIANCE**

I, the undersigned, certify that the foregoing brief complies with the Court's Order of July 6, 2022, Doc. 35, permitting the Plaintiffs up to and including 5,000 words. This brief contains 3,607 words, as calculated by the word processing system used to prepare this brief.

Joshua Prince, Esq.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed electronically through the Middle District of Pennsylvania Electronic Filing System. Notice of these filing will be sent by operation of the Court's Electronic Filing System to all registered users in this case.

Joshua Prince, Esq.