## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIO SUAREZ, DANIEL BINDERUP, DANIEL MILLER, FIREARMS POLICY COALITION, INC.** *and* **SECOND AMENDMENT FOUNDATION,** | : : : : : | **No. 1:21-CV-0710** |
| **Plaintiffs** | : : | **Judge Conner** |
| **v.** | : : | **Electronically Filed Document** *Complaint Filed 04/16/21* |
| **COL. CHRISTOPHER PARIS, COMMISSIONER OF PENNSYLVANIA STATE POLICE,** | : : : : : | |
| **Defendant** | : | |

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO STAY PENDING APPEAL

Defendant Col. Christopher Paris, Commissioner of the Pennsylvania State Police, respectfully requests that this Court stay aspects of its July 24, 2024 order pending the Commissioner's appeal from that order. Specifically, Commissioner Paris seeks a stay of the portion of the order declaring the vehicle provision of 18 Pa.C.S. § 6106 facially unconstitutional in all applications and enjoining the Commissioner from enforcing that provision. (Doc. 62, ¶ 3).[1]

---

[1] Because the Commonwealth is not currently in a declared state of emergency, Commissioner Paris does not, at this juncture, seek a stay of this Court's order enjoining enforcement of 18 Pa.C.S. § 6107.

To grant a stay, this Court need not conclude that the decision it just issued was incorrect. Rather, this Court need only determine that Commissioner Paris has a "reasonable possibility" of succeeding in his appeal and that the equities warrant maintaining the status quo. First Amend. Coal. v. Jud. Inquiry & Rev. Bd., 584 F. Supp. 635, 636-38 (E.D. Pa. 1984); Arlington Indus., Inc. v. Bridgeport Fittings, Inc., 2010 WL 817519, at *6 (M.D. Pa. Mar. 9, 2010) (Conner, J., granting stay where the movant had a "reasonable possibility of success on appeal") (citing, inter alia, First Amend. Coal., supra), aff'd, 477 Fed.Appx. 740 (Fed. Cir. 2012). For the reasons that follow, that standard is met here.

## ARGUMENT

When an appeal is taken from a judgment granting injunctive relief, the district court has discretion to grant a stay or modify the injunction pending appeal. Fed.R.Civ.P. 62(c); Fed.R.App.P.8.[2] "The purpose of staying an injunction pending appeal is to preserve the status quo." Arlington Indus, 2010 WL 817519, at *5 (M.D. Pa. Mar. 9, 2010) (quoting Kawecki Berylco Indus, Inc. v. Fansteel, Inc., 517 F.Supp. 539, 542 (E.D. Pa. 1981)).

Courts consider the following factors when deciding whether to grant a stay: (1) whether the applicant has demonstrated a likelihood of success on the merits; (2)

---

[2] A request for a stay in the district court is a prerequisite to seeking a stay on appeal. Fed.R.App.P. 8.

whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other interested parties; and (4) whether a stay will serve the public interest. Arlington Indus., supra; see also Indus. Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78, 80 (3d Cir. 1996). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." Serv. Employees Int'l Union Local 1 v. Husted, 698 F.3d 341, 343 (6th Cir. 2012). But the first and second factors— i.e., likelihood of success on the merits and irreparable injury— are the "most critical." In re Revel AC, Inc., 802 F.3d 558, 568 (3d Cir. 2015) (quoting Nken v. Holder, 556 U.S. 418, 434 (2009)).

A. Commissioner Paris Has a Reasonable Possibility of Success on Appeal

"[P]redicting the likelihood of appellant's success with an appeal is a difficult inquiry for the trial judge, who already has reached the . . . merits of the controversy and rendered a conclusion unfavorable to the moving parties." Robertshaw v. Pudles, 2014 WL 1976890, at *3 (E.D. Pa. May 15, 2014) (cleaned up) (quoting Kawecki Berylco Indus, Inc. v. Fansteel, Inc., 517 F.Supp. 539, 541 (E.D. Pa. 1981)). Critically, however, the success on the merits factor does not require a court, which has just rendered its assessment and decided the merits, to determine that it "was probably in error." First Amendment Coal., 584 F.Supp. at 636-38. Rather, the court need only determine that the movant has a "*reasonable possibility*" of prevailing on appeal. Arlington Indus., 2010 WL 817519, at *6 (emphasis added) (citing, inter

alia, First Amendment Coal., supra); see also, In re Revel AC, Inc., 802 F.3d 558, 571 (3d Cir. 2015) (the moving party should make a showing that is "significantly better than negligible but not greater than 50%"). Commissioner Paris can make that showing here.

Initially, Commissioner Paris's likelihood of success on appeal is bolstered by the fact that this Court has "ruled on an admittedly difficult legal question[.]" Robertshaw, 2014 WL 1976890, at *2 (quoting Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 844-45 (D.C. Cir. 1977)); see also Arlington Indus., 2010 WL 817519 at *5-6 (granting a stay in a case involving a complex *res judicata* issue); First Amendment Coal., 584 F. Supp. at 638 (granting a stay in a case involving an "important issue" that rested "on an essentially untested constitutional analysis"); Cnty. of Butler v. Governor of Pennsylvania, 2020 WL 5868393, at *1 (3d Cir. Oct. 1, 2020) (staying order declaring Pennsylvania's COVID-19 mitigation orders unconstitutional); Prometheus Radio Project v. F.C.C., 2003 WL 22052896, at *1 (3d Cir. Sept. 3, 2003) ("Given the magnitude of this matter and the public's interest in reaching the proper resolution, a stay is warranted pending thorough and efficient judicial review.").

Indeed, this Court's opinion acknowledged the inherent difficulty of ruling in Second Amendment cases, emphasizing the need for judicial humility in this area. (Doc. 61 at 24-25 n.17) ("[T]he jurist struggling to arrive at a workable standard in

light of these lingering uncertainty will, at the very least, find themselves in good company."). This Court also highlighted the many unresolved methodological questions in this ever-changing area of the law, some of which are directly implicated by this case. Ibid.

The Third Circuit's jurisprudence—upon which this Court relied—is in a particular state of flux. This Court acknowledged that the Third Circuit's ruling in Range had been vacated by the High Court. Opinion at 22-23 (Doc. 61) (citing Range v. Attorney General, 69 F.4th 96 (3d Cir 2023), vacated sub nom Garland v. Range, 23-374 (U.S. July 2, 2024)). Nonetheless, this Court treated Range's methodology as good law, citing that vacated opinion dozens of times and relying on its analysis. See, e.g., Opinion at 22-24, 39 (Doc. 61). Respectfully, that reliance overlooks the fact that the Third Circuit's approach in Range "track[ed] precisely the Fifth Circuit's deeply disturbing opinion in United States v. Rahimi," under which "*any* difference between a historical law and contemporary regulation defeats an otherwise-compelling analogy." Range, 69 F.4th at 118, 130 (Krause, J., dissenting) (emphasis in original).

In Rahimi, the High Court expressly rejected that flawed approach in Second Amendment cases and clarified that "when a challenged regulation does not precisely match its historical precursors, 'it still may be analogous enough to pass constitutional muster.'" United States v. Rahimi, 144 S.Ct. 1889, 1897 (2024)

(quoting <u>Bruen</u>, 597 U.S. at 30). "[T]he appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." <u>Rahimi</u>, 144 S.Ct. at 1898 (citing <u>Bruen</u>, 597 U.S. at 26-31) <u>see also id.</u> at 1925 (Barrett, J., concurring) ("'Analogical reasoning' under <u>Bruen</u> demands a wider lens: Historical regulations reveal a principle, not a mold.").

Compounding this error, this Court also assumed that the Third Circuit's analysis in <u>Lara v. Comm'r Pa. State Police</u>, 91 F.4th 122 (3d Cir. 2024) remains good law following <u>Rahimi</u>. As Commissioner Paris explained in his petition for a writ of certiorari in <u>Lara</u>, however, the <u>Lara</u> panel majority specifically built upon <u>Range</u>'s flawed methodology, and wrongly required the Commissioner to produce a Founding-era twin. For this reason, the Commissioner requested that the High Court summarily vacate and remand for reconsideration in light of <u>Rahimi</u>, just as the High Court has done with eight other petitions since deciding <u>Rahimi</u> (including <u>Range</u>). <u>See Paris v. Lara, et al.</u>, Pet. for Cert. at 11-13, Dkt. 24-93 (U.S. Jul. 25, 2024).

When the Third Circuit considers the issues in this case, there is thus a significant likelihood that it will not be bound by <u>Lara</u>'s narrow approach to history, which this Court determined precluded any reliance on historical evidence from the Reconstruction era.[3] (Doc. 61 at 34 n.24) (quoting <u>Lara</u>, 91 F.4th at 134). So, the

---

[3] The Commissioner appreciates that <u>Lara</u> has not yet been vacated. But, when assessing whether the Commissioner has a "reasonable probability" of success on appeal, this Court can and should consider the likelihood that <u>Lara</u> will be vacated

Third Circuit panel in this case could readily conclude that analogous Reconstruction-era laws provide a sufficient historical basis for Pennsylvania's law. <u>See</u> Opinion at 34 (Doc. 61).

Finally, this Court determined that the vehicle provision of Pennsylvania's law is facially unconstitutional in *all applications*, even though the Supreme Court in <u>Rahimi</u> disfavored facial challenges in Second Amendment cases and emphasized that it is the "most difficult challenge to mount successfully." <u>Rahimi</u>, 144 S.Ct. at 1903; <u>id.</u> at 1907 (Gorsuch J., concurring). That difficulty stems from the fact that a challenger asserting a facial challenge must demonstrate that "no set of circumstances exists" under which the law would be valid. <u>Rahimi</u>, 144 S.Ct. at 1903.

Plaintiffs fell well short of satisfying that high burden. Plaintiffs failed to demonstrate that the vehicle provision could not be constitutionally applied against someone who committed a serious violent felony like aggravated assault, or against someone who has been adjudicated mentally ill. <u>See</u> <u>District of Columbia v. Heller</u>, 554 U.S. 570, 626-27 (2008) (stating that prohibitions on the possession of firearms by "felons and the mentally ill" are "presumptively lawful"). Because it cannot be

---

by the Supreme Court.

said that "no set of circumstances exists" under which the vehicle provision is valid, this Court should not have enjoined all enforcement of that provision.[4]

Reasonable jurists may disagree on these points. In fact, judges in the Third Circuit have done just that. See, e.g., Lara, 91 F.4th 140 (Restrepo, J., dissenting); see also Lara v. Comm'r Pa. State Police, 95 F.4th 156, 157-66 (3d Cir. 2024) (Krause, J., dissenting from the denial of en banc) (criticizing the panel majority's "novel methodology" and stating that its pronouncements "cannot bind future panels of this Court" without en banc review). This is a difficult and unsettled area of law, and courts are calling out for guidance from the High Court. See, e.g., Rahimi, 144 S.Ct. at 1926-30 (Jackson, J., concurring); Barris v. Stroud Twp., 310 A.3d 175, 215 (Pa. 2024) (there is an "ever-growing chorus of courts across the country" calling on the High Court to answer important, unresolved questions following Bruen). For all of these reasons, Commissioner Paris has at least a reasonable possibility of succeeding in this appeal.

> B. The Commissioner and the Public Will Suffer Irreparable Harm if a Stay is Denied

In Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec., the Third Circuit clarified how federal courts should balance the equities when deciding whether to maintain the status quo in Second Amendment

---

[4] If the Court does not stay its order, it should at least modify it to apply only to Plaintiffs.

cases. __ F.4th__, 2024 WL 3406290 (3d Cir. July 15, 2024).[5] There, the Third Circuit recognized that when the government is a party, its interests "merge" with the public's interests, and emphasized that "'[t]here is always a public interest in prompt execution' of the laws." Id. at *8 (quoting Nken, 556 U.S. at 436). The Third Circuit thus called for "caution" before enjoining gun laws, particularly when "federal courts are asked to block states from enforcing their laws" because it "threatens federalism and the separation of powers[.]" Ibid. (citing, *inter alia*, Younger v. Harris, 401 U.S. 37, 53-54 (1971)).

These are not mere abstract principles. Without a stay, the State Police and law enforcement officials throughout the Commonwealth will encounter more danger and will be stripped of a critical tool for combating crime.

This Court's ruling will naturally have the effect of increasing the number of motorists who travel with loaded, operable firearms, but who have not undergone the same background checks as those with licenses. And in the case of 18-to-20-year-olds, they do not even undergo background checks before possessing handguns

---

[5] Although Delaware State Sportsmen's Ass'n involved a preliminary injunction, the equitable considerations for issuance of a preliminary injunction and issuance of a stay overlap considerably, and the underlying purpose of both is to preserve the status quo while litigation proceeds. See, e.g., In re Revel AC, 802 F.3d at 568 (discussing the "overlap" between the factors for a stay pending appeal and a preliminary injunction).

given that federal law prohibits 18-to-20-year-olds from purchasing handguns from federally-licensed dealers.  See 18 U.S.C. § 922(b)(1).

More firearms being transported in vehicles threatens officer safety, as traffic stops are already one of the most dangerous tasks that an officer performs.  Decl. of Cpl. Collins at ¶ 24. Without Section 6106's vehicle provision, officers making good faith traffic stops will be more likely to encounter a motorist with a gun who has not undergone the any background check.  Decl. of ADA Gonzalez at ¶¶ 6-7.

A halt on all enforcement of Section 6016 will also complicate, and potentially jeopardize, hundreds of prosecutions throughout the Commonwealth. As the attached affidavits demonstrate, a violation of Section 6016's vehicle provision is not what causes a motorist to be pulled over in the first place. Rather, 6106 violations are observed only *after* an initial traffic violation is observed. And even then, a stand-alone Section 6106 charge is rare, as Section 6106 charges are typically brought in conjunction with various other criminal charges, *e.g.*, drug offenses, DUI, aggravated assault, or discharging firearms into occupied structures. Decl. of Cpl. Collins at ¶ 27; Decl. of ADA Gonzalez at ¶¶ 8, 11; Decl. of ADA Rees at ¶¶ 8-13.

Between 2022 and 2023, PSP initiated 935,852 total traffic stops, 767 of which resulted in Section 6106 charges. Decl. of Cpl. Collins at ¶¶ 17-21. In 580 of those cases (or 75.7%), Section 6106 charges were brought alongside other serious criminal offenses. Id. In Lancaster County—where Plaintiff Daniel Binderup

resides—6106 charges were brought 173 times in 2023, 158 of which (or 91.3%) were accompanied by other serious criminal charges. Decl. of ADA Gonzalez at ¶ 13. In Bucks County—where Plaintiff Daniel Miller resides—Section 6106 charges were brought 91 times in the past year, 80 of which (or 87.9%) were accompanied by other serious criminal charges. Decl. of ADA Rees at ¶¶ 9-11. And in Philadelphia, there were 20,069 arrests for Section 6016 violations between 2019 and 2023, 20,050 of which (or 99.9%) included additional charges. Decl. of G. Kikuchi at ¶¶ 6-7.[6]

This Court's ruling will thus complicate hundreds of prosecutions throughout the Commonwealth—particularly if the Section 6106 violation provided the initial probable cause to further investigate for other offenses. Decl. of ADA Gonzalez at ¶ 14; Decl. of ADA Rees at ¶¶ 14-15. And, moving forward, law enforcement officials will not even be uncover those other offenses in the first place. Decl. of Cpl. Collins at ¶¶ 29-31.

Perhaps the most alarming aspect of this Court's ruling is that enjoining all enforcement of Section 6106's vehicle provision will exacerbate the growing problem of criminals stealing firearms from vehicles and then using those stolen guns to commit violent crimes. Decl. of Cpl. Collins at ¶ 11. As the ATF noted last

---

[6] Although Philadelphia, Bucks, and Lancaster are not parties to this action and are not bound by this Court's injunction, the Court's published opinion will undoubtedly impact litigation throughout the Commonwealth.

year, "[t]heft is a significant avenue through which firearms are illegally diverted from lawful commerce and ownership into criminal hands." *National Firearms Commerce and Tracking Assessment*, "Firearm Thefts," Vol. II – Part V, Bureau of Alcohol, Tobacco, Firearms and Explosives, 01/11/2023.[7] Between 2019 and 2023, the State Police received nearly 1,000 reports of firearms being stolen from vehicles. Decl. of Cpl. Collins at ¶¶ 8, 9.

This problem is particularly acute in Philadelphia. Over the past five years, the Philadelphia Police department has received reports of 2,509 being stolen out of vehicles. Decl. of G. Kikuchi at ¶ 4. This trend—which is getting worse each year— is directly contributing to the flow of crime guns in Philadelphia, which just set an all-time record for homicides in 2021. Decl. of G. Kikuchi at ¶ 5; *see also* 2021 Crimes Report, Philadelphia Police Department, 01/03/2022.[8] The Court recognized the unique local interests of Philadelphia implicated by this case and correctly declined to wade into those aspects that impacted Philadelphia the most. Opinion at 10-11 (Doc. 61). But enjoining all enforcement of Section 6106's vehicle provision will have a disproportionate impact on criminal activity in Philadelphia. The last

---

[7]   Available at: https://www.atf.gov/firearms/docs/report/nfcta-volume-ii-part-v-firearm-thefts/download.

[8] Available at: https://www.phillypolice.com/crimestats/.

thing Pennsylvania's largest city needs is scores of motorists traveling with guns in their cars without first undergoing background checks.

Respectfully, if this Court's order is not stayed, it will give criminals more opportunities to steal guns from vehicles and then use them to commit violent crimes.

### C. Maintaining the Status Quo Will not Injure Plaintiffs

In contrast to the concrete, irreparable injury to the Commonwealth and the public if a stay is not granted, Plaintiffs will suffer no imminent injury if the Commonwealth's decades-old law remains intact during the Commissioner's appeal.

As noted, stand-alone charges for violating Section 6106's vehicle provision are rare, so Plaintiffs' likelihood of being arrested and prosecuted is low. Decl. of ADA Gonzalez at ¶ 8; Decl. of ADA Rees at ¶¶ 8-13. And Plaintiffs still have ample room to exercise their rights to keep and bear arms by possessing and carrying loaded firearms in their homes and places of business, and openly in public throughout the Commonwealth. They simply have to keep their guns unloaded and secured while traveling in a vehicle.

Plaintiffs' request for an injunction prohibiting Commissioner Paris from enforcing the vehicle provision against *anyone* in the Commonwealth is based on nothing more than their broad "desire" to carry loaded firearms in their vehicles.

See, e.g., Decl. of Julio Suarez ¶ 13 (Doc. 39-1). But, in Delaware State Sportsmen's Ass'n, the Third Circuit rejected similar claims of harm by plaintiffs seeking to enjoin Delaware from enforcing its law. 2024 WL 3406290 at *7-8. There, the plaintiffs' claim of imminent harm was based on a series of vague affidavits expressing a broad desire to obtain the banned gun in question, but failed to allege that the state had "tried to enforce the disputed laws against them" or that they had a "time-sensitive need" for the guns. Ibid. The Third Circuit determined that this evidence was not necessary to preserve the status quo and did not outweigh the state and public interests in enforcing the law. Plaintiffs' proffered evidence here is equally weak, and does not support upending a decades-old status quo while the Commissioner appeals.

## CONCLUSION

This Court should maintain the status quo during Commissioner Paris's appeal and stay its order enjoining enforcement of the vehicle provisions in 18 Pa.C.S. § 6106 pending appeal.

Respectfully submitted,

**MICHELLE A. HENRY**
**Attorney General**

By:   *s/ ERICH T. GREINER*

**Office of Attorney General**            **ERICH T. GREINER**
**15ᵗʰ Floor, Strawberry Square**          **Deputy Attorney General**
**Harrisburg, PA 17120**                  **Attorney ID 331601**
**Phone: (717) 783-6301**

**egreiner@attorneygeneral.gov**          **NICOLE R. DITOMO**
                                          **Chief Deputy Attorney General**
                                          **Civil Litigation Section**

                                          **DANIEL B. MULLEN**
                                          **Deputy Attorney General**
                                          **Appellate Litigation Section**

**Date:  August 16, 2024**                **Counsel for Defendant**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JULIO SUAREZ, DANIEL          :
BINDERUP, DANIEL MILLER,      :
FIREARMS POLICY               :
COALITION, INC. *and* SECOND     :     No. 1:21-CV-0710
AMENDMENT FOUNDATION,         :
                 Plaintiffs   :     **Judge Conner**
                              :
        v.                    :     **Electronically Filed Document**
                              :     *Complaint Filed 04/16/21*
COL. CHRISTOPHER PARIS,       :
COMMISSIONER OF               :
PENNSYLVANIA STATE            :
POLICE,                       :
                 Defendant    :

## INDEX OF EXHIBITS CITED WITHIN DEFENDANT'S BRIEF IN SUPPORT OF STAY

Defendant, through counsel, hereby files this Index of Exhibits which do not

appear already on the docket in the above-captioned matter that he cites within his

Brief in Support of Stay:

1. Decl. of ADA Gonzalez
2. Decl. of Cpl. Collins
3. Decl. of ADA Rees
4. Decl. of G. Kikuchi

<u>**CERTIFICATE OF SERVICE**</u>

I, Erich Greiner, Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on August 16, 2024, I caused to be served a true and correct copy of the foregoing document titled Brief in Support of Stay to the following:

<u>**VIA ELECTRONIC FILING**</u>

**Adam J. Kraut, Esquire**
**Firearms Policy Coalition**
**1215 K Street, 17th Floor**
**Sacramento, CA  95814**
akraut@fpclaw.org
*Counsel for Plaintiffs*

**Joshua G. Prince, Esquire**
**Prince Law Offices PC**
**646 Lenape Road**
**Bectelsville, PA  19505**
joshua@princelaw.com
*Counsel for Plaintiffs*

*s/ ERICH T. GREINER*
**ERICH T. GREINER**
Deputy Attorney General