# EXHIBIT 2

## AFFIDAVIT OF LUCAS COLLINS

I, Lucas Collins, hereby declare, under penalty of perjury in accordance with 28 U.S.C. § 1746, that the following facts are true and correct based upon my personal knowledge or from my review of records routinely maintained during the operation of the Pennsylvania State Police:

1. I am a Corporal with the Pennsylvania State Police (PSP) and work in the Bureau of Research and Development, Policy and Program Services Division.

2. I have been employed with the PSP since 2014 and worked as a Patrol Trooper in Troop H until April of 2023. I worked as the supervisor of the Statistical Services Unit from April 2023 until February 2024, when I assumed the duties of supervising the Management Information and Analysis section.

3. In my current position as supervisor of the Management Information and Analysis Section, I am responsible for supervision over the Statistical Services Unit and the Uniform Crime Reporting Unit. This position also oversees the Problem Specific Policing Initiative for the Executive Offices, the Pennsylvania Police Pursuit Reporting System (PPPRS), the State Trooper Allocation Formula (STAF), and the Pennsylvania Uniform Crime Reporting System (PAUCRS) to ensure information related to Department and personnel activities and incidents is captured appropriately.

4. My role includes the utilization of the various Departmental Information System databases to query, organize, and analyze Departmental statistical information.

5. Following the appeal in *Suarez*, I was tasked with compiling information related to PSP traffic stops and firearms offenses.

6. The statistics relating to Section 6106 derived from PSP data is detailed below.

## **Firearms concerns in Pennsylvania**

7. Over the last 5 years (2019-2023), PSP has received 2,683 reports of theft involving stolen firearms.

8. Of those reports, 928 investigations or 34.6% involved thefts from vehicles or thefts of motor vehicles.

9. PSP experienced a steady rise of these cases from 2019 through 2021, followed by a slight decrease in 2023.

10. The investigation counts by year are as follows: 190 in 2019, 198 in 2020, 213 in 2021, 164 in 2022, and 163 in 2023.

11. In my experience, stolen firearms are more likely to be used in the commission of crimes that endanger law enforcement and the public than lawfully purchased and possessed firearms.

## PSP Section 6106 Statistics

12. The PSP tracks criminal complaints in the Traffic and Criminal Software (TraCS) Criminal Complaint System. This system is utilized to electronically prepare criminal complaints and submit them to issuing authorities.

13. In 2022, PSP's criminal complaint data shows that 650 criminal incidents included Section 6106 as a charged offense. It is possible for multiple criminal complaints to be filed under a single incident number.

14. Of those incidents, Section 6106 was charged in conjunction with only summary traffic violations[1] 55 times, and was the sole charge in only 42 complaints.

15. The criminal complaint data for 2023 followed this trend with 567 criminal complaints involving Section 6106, of those complaints Section 6106 was charged with a summary vehicle code violation 56 times, and only 44 complaints with Section 6106 as the sole charge.

16. The PSP tracks its traffic stops in the Versaterm Records Management System (RMS).

17. PSP's traffic stop data shows that PSP troopers initiated 464,133 traffic stops in 2022.

---

[1] 75 Pa. C.S. §§ 101 et seq.

18. Of those traffic stops, 412 resulted in Section 6106 as a charged offense. Of those 412 incidents, 6106 was charged along with a summary vehicle code violation 47 times and was the sole charge 20 times.

19. Likewise in 2023, PSP troopers initiated 471,719 traffic stops, with 355 of the stops resulting in a charge of Section 6106. Of those 355 incidents, 6106 was charged along with a summary vehicle code violation 52 times and was the sole charge 24 times.

20. Overall, for the two-year period of 2022 and 2023, PSP traffic stops resulted in a charge of Section 6106 in 0.082% of all traffic stops or 767 stops out of the 935,852 total.

21. Overall, for the two-year period of 2022 and 2023, PSP traffic stops resulted in 6106 either as the sole charge or along with a summary traffic in 0.02% of all traffic stops or 187 stops out of the 935,852 total.

22. According to both the criminal complaint and traffic stop data maintained by the PSP, it is exceedingly rare for a simple traffic stop to result in a sole charge under Section 6106.

23. However, Section 6106 is routinely charged in conjunction with other offenses in traffic stops or non-traffic incidents involving firearms.

## Law enforcement use of Section 6106

24. Traffic stops are inherently dangerous and unpredictable.

25. Section 6106 empowers PSP troopers to ensure that a weapon is possessed by an individual who is not otherwise prohibited.

26. Upon learning that a firearm is in the vehicle, Section 6106 provides troopers with grounds to immediately inquire whether the individual has a license to carry, and, thus, whether that individual is eligible to possess a firearm.

27. In my experience, most individuals who carried weapons in a vehicle without a license as prescribed in Section 6106 were more likely to be engaged in the commission of other crimes.

28. PSP Troopers utilize Section 6106 in non-traffic stop incidents involving firearms.

## Loss of Section 6106

29. A loss of Section 6106 prevents troopers from immediately inquiring whether the person has a license to carry, and, thus, whether the person is eligible to possess a firearm.

30. Under the current scheme, it is more quickly apparent as to whether an individual is committing a crime based upon whether or not they have a license under Section 6106.

31. By taking away the ability to inquire as to whether an individual is licensed to carry in a vehicle, an individual may be able to conceal other crimes being committed concomitantly.

32. Being able to more quickly identify that a person is ineligible to possess is a safety advantage to law enforcement and can ensure they are not returning the firearm to a dangerous felon or otherwise prohibited person.

_____
**Lucas Collins, Cpl.**
**Supervisor, Management Information &**
**Analysis Section**
**Pennsylvania State Police**

**Executed on** ___August 15, 2024___ **(date)**